UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v.-

AHMAD KHAN RAHIMI,
    a/k/a "Ahmad Khan Rahami,"

                       Defendant.

16 Cr. 760 (RMB)

## THE GOVERNMENT'S MOTIONS *IN LIMINE*

JOON H. KIM
Acting United States Attorney
Southern District of New York
*Attorney for the United States*
*of America*

Emil J. Bove III
Shawn G. Crowley
Andrew J. DeFilippis
Nicholas J. Lewin
    Assistant United States Attorneys
    *Of Counsel*

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ............................................................................................................... 1

  I. The Charges and Elements .......................................................................................... 2

  II. The Evidence............................................................................................................... 3

DISCUSSION .................................................................................................................... 5

  I. Evidence of the Defendant's 2012 Interest in Jihad, Anwar al-Aulaqi, and
  Acts of Terrorism Is Admissible as Direct Evidence and Pursuant to Rule 404(b) ................. 5

    A. Relevant Facts .......................................................................................................... 6

    B. Applicable Law ....................................................................................................... 7

      1. Direct Evidence of the Defendant's Guilt........................................................... 7

      2. "Other Acts" Evidence Pursuant to Rule 404(b) ............................................. 8

    C. Argument.................................................................................................................. 8

  II. Evidence Relating to the New Jersey Bombings Phase of the Defendant's
  Terrorist Attack Is Admissible as Direct Evidence and Pursuant to Rule 404(b) ................... 11

    A. Relevant Facts ........................................................................................................ 11

    B. Argument................................................................................................................ 14

  III. Evidence Relating to the Shootout Phase of the Defendant's Terrorist Attack and
  His Subsequent Arrest Is Admissible as Direct Evidence, Including Proof of
  Consciousness of Guilt, and Pursuant to Rule 404(b) ............................................................. 16

    A. Relevant Facts ........................................................................................................ 16

    B. Argument................................................................................................................ 17

  IV. Aaron Zelin's Limited Expert Testimony on Terrorism-Related Topics Is Admissible.... 21

  V. The Court Should Preclude the Defense from Cross-Examination or Argument
  Regarding Inappropriate or Irrelevant Issues Serving as an Invitation to Nullify.................... 21

    A. Penalties Faced by the Defendant .......................................................................... 22

    B. Nullification Relating to Counts Seven and Eight ................................................. 23

    C. The Defendant's Post-Arrest Statements and Interviews ...................................... 23

    D. The Collection of the December 28, 2016 DNA Sample ................................... 24

    E. Other Irrelevant Arguments................................................................................... 24

CONCLUSION................................................................................................................. 25

## TABLE OF AUTHORITIES

### Cases

*Costantino* v. *Herzog*, 203 F.3d 164 (2d Cir. 2000) ..................................... 8

*Shannon* v. *United States*, 512 U.S. 573 (1994) ............................... 22, 23, 25

*United States* v. *Ahmed*, No. 14 Cr. 277,
    2016 WL 3647686 (E.D.N.Y. July 1, 2016) .................................... 9

*United States* v. *Al-Sadawi*, 432 F.3d 419 (2d Cir. 2005) ........................... 18

*United States* v. *Amuso*, 21 F.3d 1251 (2d Cir. 1994) .......................... 18, 19

*United States* v. *Concepcion*, 983 F.2d 369 (2d Cir. 1992) .......................... 18

*United States* v. *Curley*, 639 F.3d 50 (2d Cir. 2011) ................................ 8

*United States* v. *Fawwaz*, No. 98 Cr. 1023 (S.D.N.Y.) (LAK) ..................... 22

*United States* v. *Fiumano*, No. 14 Cr. 518 (JFK),
    2016 WL 1629356 (S.D.N.Y. Apr. 25, 2016) ................................. 7

*United States* v. *Gohari*, --- F. Supp. 3d ----,
    No. 16 Cr. 246 (JSR), 2017 WL 52675 (S.D.N.Y. Jan. 4, 2017) ............ 7

*United States* v. *Gonzalez*, 110 F.3d 936 (2d Cir. 1997) ............... 7, 9, 14, 18

*United States v. Grandmont*, 680 F.2d 867 (1st Cir. 1982) ........................ 19

*United States* v. *Hsu*, 669 F.3d 112 (2d Cir. 2012) ................................. 9

*United States* v. *Kadir*, 718 F.3d 115 (2d Cir. 2013) ............................... 21

*United States* v. *Kassir*, No. 04 Cr. 356 (JFK),
    2009 WL 976821 (S.D.N.Y. Apr. 9, 2009) ...................... 10, 14, 15, 21

*United States* v. *Lights*, No. 15 Cr. 721 (RWS),
    2016 WL 7098633 (S.D.N.Y. Dec. 5, 2016) ................................... 8

*United States* v. *Mostafa*, 16 F. Supp. 3d 236 (S.D.N.Y. 2014) ................... 10

*United States* v. *Mostafa*, No. 04 Cr. 356 (S.D.N.Y.) (KBF) ..................... 22

*United States* v. *Mustafa*, 406 F. App'x 526 (2d Cir. 2011)..................................................... 10, 21

*United States* v. *Polouizzi*, 564 F.3d 142 (2d Cir. 2009) ........................................................ 22, 25

*United States* v. *Quinones*, 511 F.3d 289 (2d Cir. 2007)............................................................ 18

*United States* v. *Rahman*, 189 F.3d 88 (2d Cir. 1999)............................................................... 10

*United States* v. *Robinson*, 702 F.3d 22 (2d Cir. 2012) .............................................................. 9

*United States* v. *Roldan-Zapata*, 916 F.2d 795 (2d Cir. 1990)................................................... 20

*United States* v. *Salameh*, 152 F.3d 88 (2d Cir. 1998) .............................................................. 18

*United States* v. *Sanchez*, 790 F.2d 245 (2d Cir. 1986) ............................................................. 18

*United States* v. *Thomas*, 116 F.3d 606 (2d Cir. 1997) ......................................................... 23, 25

*United States* v. *Towne*, 870 F.2d 880 (2d Cir. 1989) ............................................................... 18

*United States* v. *Ulbricht*, 79 F. Supp. 3d 466 (S.D.N.Y. 2015)................................................... 8

## **Statutes**

18 U.S.C. § 844 ......................................................................................................................... 2

18 U.S.C. § 924 ......................................................................................................................... 2

18 U.S.C. § 2332a ...................................................................................................................... 2

18 U.S.C. § 2332f ................................................................................................................... 2, 8

## **Federal Rules of Evidence**

Rule 401 ............................................................................................................................... 7, 20

Rule 403 .......................................................................................................................... 11, 15, 25

Rule 404(b) ....................................................................................................................... 8, 10, 20

Rule 611(a)............................................................................................................................... 25

Rule 801(d)(2)........................................................................................................................... 23

## INTRODUCTION

The Government respectfully submits these motions *in limine* seeking the following pretrial rulings with respect to the upcoming trial of defendant Ahmad Khan Rahimi:

1. Radicalization:  A subset of the defendant's communications from 2012 relating to terrorist propaganda, jihad, Anwar al-Aulaqi, and criminal charges against individuals supporting al Qaeda is admissible as direct evidence and pursuant to Rule 404(b).

2. New Jersey Bombings:  Evidence of the defendant's bombings on September 17 and 18, 2016 in Seaside Park and Elizabeth, New Jersey is admissible as direct evidence and pursuant to Rule 404(b).

3. Shootout and Arrest Evidence:  Evidence relating to the defendant's shooting at the Linden, New Jersey police and subsequent arrest on September 19, 2016—including the journal containing the defendant's letter to "USA Governmen[t]" that described his attack, intent, and motivations—is admissible as direct evidence, including with respect to consciousness of guilt, and pursuant to Rule 404(b).

4. Terrorism Expert:  Limited expert testimony from Aaron Zelin is admissible to facilitate the jury's understanding of the terrorism-related terms, concepts, organizations, and names reflected in the evidence.

5. Improper Defense Topics:  The defendant should be precluded from presenting issues to the jury that are irrelevant, inappropriate, or designed to encourage juror confusion or nullification, such as the potential penalties he faces if convicted.

## BACKGROUND[1]

The defendant's bombings in Manhattan were part of a three-phase terrorist attack targeting the United States and its residents.  The attack was the product of the defendant's years-long intention to engage in violent jihad motivated by propaganda and other directives from terrorist leaders, and a multi-month planning process that involved obtaining a firearm and ammunition in

---

[1] The Government currently plans to offer in its case-in-chief evidence relating to the following events and materials, without prejudice to its ability to offer additional proof at trial and irrespective of whether *in limine* rulings are currently being sought with respect to evidence, information, and materials described in this submission.

Virginia and making a series of bombs in pursuit of so-called "martyrdom."  As the defendant wrote in his letter to the "USA Governmen[t]" (the "Letter"), he planned and perpetrated this "Attack" on "The Kuffar In the[ir] [b]ack Yard" involving:  (i) "[Pressur]e Cooker Bom[bs]," *i.e.*, the bombs from 23rd and 27th Streets in Manhattan; (ii) "[Pi]pe Bomb[s]," *i.e.*, the bombs from Seaside Park and Elizabeth, New Jersey, including in the "streets they plan to Run a Mile" in Seaside Park; and (iii) firing "Gun shots to your Police" in Linden, New Jersey.

## I.  The Charges and Elements

The charges in the eight-count Indictment present several issues for which evidence relating to the defendant's 2012 emails, his bombings in New Jersey, and his shootout and arrest (including the Letter) is probative of, among other things, the defendant's intent, motive, and plan. For example:

- Counts One and Two.  The Government must prove, *inter alia*, that the defendant knowingly used or attempted to use weapons of mass destruction.  *See* 18 U.S.C. § 2332a(a).

- Count Three.  One of the jurisdictional bases alleged in the Indictment requires proof that the defendant acted in an "attempt to compel another state or the United States to do or abstain from doing any act." *Id.* § 2332f(b)(1)(B).  The Government must also prove, *inter alia*, that the defendant acted "with intent to cause death or serious bodily injury" or "to cause extensive destruction." *Id.* § 2332f(a)(1).

- Counts Four and Five.  The Government must prove, *inter alia*, that the defendant acted maliciously—*i.e.*, intentionally or with willful disregard of the likelihood that damage would result—in using or attempting to use an explosive to damage or destroy property. *Id.* § 844(i).

- Count Six.  The Government must prove, *inter alia*, that the defendant acted with knowledge or intent that an explosive would be used to injure or intimidate a person, or to damage or destroy a building.  *Id.* § 844(d).

- Counts Seven and Eight.  The Government must prove, *inter alia*, that the defendant knowingly used or carried a destructive device.  *See id.* § 924(c).

2

As discussed in more detail below, the defendant's intent to use bombs in Manhattan to harm and kill others, to destroy property, and to attempt to influence decisions of the United States—as relevant to these charges—is reflected in the defendant's long-term commitment to violent jihad, his adherence to the pronouncements of terrorists who advocated and committed similar acts of violence, and his overall plan to inflict as much harm as possible through his terrorist attack.

## II.  The Evidence

By at least 2012, the defendant began to research the terrorist ideology that motivated his plan for the September 2016 attack.  He reviewed materials relating to terrorism, violent jihad, a group of men charged in the United States in connection with a plot to travel to Afghanistan to fight for al Qaeda, and Anwar al-Aulaqi, a now-deceased senior member of al Qaeda in the Arabian Peninsula ("AQAP") who encouraged his followers to "go to Jihad" and to commit acts of martyrdom.  *See infra* Discussion, Part I (discussing evidence relating to the defendant's review of terrorist propaganda in 2012).  In 2015 and 2016, the defendant continued to study these topics, as reflected in his Internet searches relating to jihad, *Inspire* Magazine, a propaganda publication by AQAP, and *Dabiq*, a propaganda publication by the Islamic State of Iraq and al-Sham ("ISIS").

In June and July 2016, the defendant purchased bomb components on the Internet, including circuit boards, citric acid, ball bearings, and igniters.  He purchased other types of items later used in his bombs at physical store locations in New Jersey and Virginia, such as pipes from Home Depot and "hobby fuse" used as part of the fusing systems for certain of his bombs.  In early July 2016, the defendant also obtained the Glock pistol (the "Glock") that he later used to try to murder the police from Linden who ultimately arrested him.

3

In text messages on August 28, 2016, a relative ("Relative-1") wrote to the defendant that she did not want to "find any bomb plans," and the defendant indicated during the exchange that "this [is] not the place to joke" and he was "making sure my fone aint hacked."  (Ex. A at 2). Videos from September 15, 2016 show the defendant testing some of the bomb components in his backyard in Elizabeth, New Jersey, in the presence of Relative-1, resulting in a load noise, flames, smoke—and laughter.

On September 17, 2016, beginning at approximately 5:00 a.m., the defendant commenced his attack with a series of bombs, first in Seaside Park, New Jersey (the "Seaside Device"), and then in Manhattan on 23rd Street (the "23rd Street Device") and 27th Street (the "27th Street Device").  The detonation of the 23rd Street Device injured approximately 31 people and caused millions of dollars in property damage.  The defendant returned to New Jersey on the afternoon of September 18, leaving additional bombs in a backpack near the train station in Elizabeth (the "Elizabeth Devices").[2]  *See infra* Discussion, Part II (discussing evidence of the defendant's bombings).

The defendant was arrested in New Jersey on the morning of September 19, 2016, after firing the "Gun shots to your Police" promised in the Letter, and nearly killing several officers. *See infra* Discussion, Part III (discussing evidence of defendant's shootout and arrest).  The FBI seized from the defendant's home in Elizabeth a laptop computer (the "Laptop") that contained, among other things:  (i) images relating to jihad-themed songs referred to as nasheeds;

---

[2] The Elizabeth Devices consisted of six improvised explosive devices ("IEDs") placed in a backpack.

(ii) approximately 14 issues of *Inspire* Magazine, including issues with bomb-making articles by "The AQ Chef," such as "Make a bomb in the kitchen of your Mom" and "The Hidden Bomb"; (iii) a document entitled "The Book of Jihad"; and (iv) instructions for making explosives involving ammonium nitrate, hexamethylene triperoxide diamine ("HMTD"), and triacetone triperoxide ("TATP"). The FBI also found traces of black powder explosive material and HMTD in the defendant's house, as well as chemicals that can be used in the production of, among other things, HMTD.

## DISCUSSION

### I. Evidence of the Defendant's 2012 Interest in Jihad, Anwar al-Aulaqi, and Acts of Terrorism Is Admissible as Direct Evidence and Pursuant to Rule 404(b)

The Government seeks to offer three emails from 2012 that demonstrate the defendant's interest in violent jihad, al-Aulaqi, and supporters of al Qaeda. This extremely limited sample of the extensive evidence available[3] is not unduly prejudicial in light of the conduct at issue, and is admissible: (i) as direct evidence of the defendant's intent with respect to the charges; (ii) as background evidence that completes the story of the crimes on trial; and (iii) pursuant to Rule 404(b) as evidence of the defendant's intent, motive, and plan for the 23rd Street and 27th Street Devices.

---

[3] The defendant maintained an extensive collection of extremist propaganda that the Government does not currently intend to offer at trial except as appropriate to respond to arguments or evidence presented by the defense. For example, the Government is not currently seeking to offer materials sent or viewed by the defendant involving graphic murders—such as videos titled "It's Time For a Beheading" and "muslim beheading Christian"—and at least one other terrorist attack.

### A.  Relevant Facts

On January 7, 2012, the defendant sent an email to himself with subject "nasheed," which contained links to YouTube videos of songs with titles such as "Jihad Nasheed" and "Jihadi Nasheed."  (Ex. B at 1, 3, 6).  One video depicted two men in headscarves armed with an assault rifle and a rocket-propelled-grenade launcher.  (Ex. B at 6).  Another video with English subtitles urged:  "So let us make jihad, and battle, and fight from the start."  (Ex. B at 4).

On July 22, 2012, the defendant sent an email to himself and a relative with subject "Anwar al awlaki," which attached a copy of the same piece titled "The Book of Jihad" that was seized from the Laptop in the defendant's house in September 2016.  (Ex. C).  "The Book of Jihad" contained admonishments such as "Jihad against *Kufar* is among the greatest of deeds.  Indeed it is the greatest voluntary deed a human could do."  (Ex. C at 11).

On November 21, 2012, the defendant emailed himself a copy of a Criminal Complaint containing a terrorism charge in *United States* v. *Kabir, et al.*, No. 12 Mag. 431, 12 Cr. 92 (C.D. Cal. Nov. 16, 2012).  (Ex. D).  The Complaint charged four men with participating in a conspiracy to provide material support and resources for use in crimes of terrorism, in violation of Title 18, United States Code, Section 2339A.  (Ex. D at 2).[4]  The Complaint alleged that defendant Sohiel Omar Kabir recruited co-defendants Ralph Kenneth Deleon and Miguel Alejandro Santana Vidriales, who in turn recruited co-defendant Arifeen David Gojali, to travel to Afghanistan to

---

[4] Two of the defendants subsequently pleaded guilty, and two were convicted at trial.  *See* U.S. Dep't of Justice, *Two Men Who Provided Material Support to Terrorists and Plotted to Kill American Targets in Afghanistan Receive 25-Year Prison Terms* (Feb. 23, 2015), *available at* https://www.justice.gov/opa/pr/two-men-who-provided-material-support-terrorists-and-plotted-kill-american-targets (last accessed July 13, 2017).

receive terrorist training from the Taliban and to fight for al Qaeda in 2012.  (Ex. D at 8-11).  The Complaint also contained details regarding al Qaeda, the Taliban, al-Aulaqi, terrorist propaganda available online such as *Inspire* Magazine, and law enforcement techniques such as the use of confidential sources and undercover agents.  (*E.g.*, Ex. D at 8, 15-18, 23-26).

### B.   Applicable Law

#### 1.   Direct Evidence of the Defendant's Guilt

Relevant evidence "need only tend to prove the government's case," such as "evidence that adds context and dimension to the government's proof of the charges."  *United States* v. *Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997).  Thus, background evidence is relevant and admissible, pursuant to Rule 401, where it tends "'to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed.'"  *Id.* (quoting *United States* v. *Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991)).  Evidence is also admissible if it relates to conduct that:   (i) "'arose out of the same transaction or series of transactions as the charged offense'"; (ii) "'is inextricably intertwined with the evidence regarding the charged offense'"; or (iii) "'is necessary to complete the story of the crime on trial.'"  *United States* v. *Gohari*, --- F. Supp. 3d ----, No. 16 Cr. 246 (JSR), 2017 WL 52675, at *3 (S.D.N.Y. Jan. 4, 2017) (quoting *United States* v. *Robinson*, 702 F.3d 22, 36-37 (2d Cir. 2012)).  "Evidence fitting within one of these three categories is considered direct evidence and Rule 404 is not applicable." *United States* v. *Fiumano*, No. 14 Cr. 518 (JFK), 2016 WL 1629356, at *3 (S.D.N.Y. Apr. 25, 2016).

### 2. "Other Acts" Evidence Pursuant to Rule 404(b)

Under Rule 404(b), courts "may allow evidence of other acts by the defendant if the evidence is relevant to an issue at trial other than the defendant's character and if the risk of unfair prejudice does not substantially outweigh the probative value of the evidence." *United States* v. *Ulbricht*, 79 F. Supp. 3d 466, 479 (S.D.N.Y. 2015). "This Circuit follows the inclusionary approach, which admits all other act evidence that does not serve the sole purpose of showing the defendant's bad character and that is neither overly prejudicial under Rule 403 nor irrelevant under Rule 402." *United States* v. *Curley*, 639 F.3d 50, 56 (2d Cir. 2011) (internal quotation marks omitted). "Rule 403 does not bar evidence of other bad acts that 'did not involve conduct any more sensational or disturbing than the crimes with which [the defendant] was charged.'" *United States* v. *Lights*, No. 15 Cr. 721 (RWS), 2016 WL 7098633, at *2 (S.D.N.Y. Dec. 5, 2016) (quoting *United States* v. *Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990)).[5]

### C. Argument

The three emails that the Government seeks to offer are probative of the defendant's intention, dating back to 2012, to cause "death or serious bodily injury" and "extensive destruction," and to "attempt to compel the United States to do or abstain from doing any act," 18 U.S.C. §§ 2332f(a)(1), (b)(1)(B), as alleged in Count Three. The continuity of this plan over time is reflected by, among other things, the fact that the defendant stored on the Laptop a copy of "The

---

[5] All evidence of guilt is prejudicial, in that it disadvantages the defense. But not all prejudice is unfair prejudice. *See, e.g.*, *Costantino* v. *Herzog*, 203 F.3d 164, 174 (2d Cir. 2000) ("Because virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice must be *unfair*." (emphasis in original)).

Book of Jihad" that he sent himself in 2012. Therefore, the emails are admissible as direct evidence of the defendant's guilt with respect to Count Three of the Indictment.

This narrowly tailored evidence is also admissible as background relating to all of the charges, and in order to complete the story of the crimes on trial. *E.g.*, *United States* v. *Robinson*, 702 F.3d 22, 36-37 (2d Cir. 2012). These emails are "connected" to the offenses charged in the Indictment because they are probative of the origin of the defendant's plan, and they help to explain the defendant's focus on jihad and propaganda from al Qaeda, al-Aulaqi, *Inspire* Magazine, and *Dabiq*, which are further reflected in the defendant's Internet searches in 2015 and 2016, materials from the Laptop, and the Letter. *See United States* v. *Hsu*, 669 F.3d 112, 118 (2d Cir. 2012) (holding that one "legitimate rationale for the relevance" of other acts evidence exists where the acts are "connected"); *see also United States* v. *Ahmed*, No. 14 Cr. 277, 2016 WL 3647686, at *5-6 (E.D.N.Y. July 1, 2016) (evidence relating to billing practices between 2004 and 2007 "necessary to complete the story of the crime" charged between 2011 and 2013 where the "expected testimony include[d] key facts that shed light on the possible origins of Defendant's alleged crime"). This "[b]ackground evidence may be admitted . . . to furnish an explanation of the understanding or intent with which certain acts were performed" in September 2016. *United States* v. *Gonzalez*, 110 F.3d at 941. The emails help to show that the defendant committed the bombings in New York as part of an attack intended as a form of violent jihad, as taught, advocated, and practiced by the members of al Qaeda, AQAP, and ISIS the defendant emulated, to harm Americans and other perceived enemies and exact retribution for perceived harms arising from U.S. policy. Thus, the three emails are admissible as direct evidence of all of the crimes charged in the Indictment.

For similar reasons, the three emails are also admissible pursuant to Rule 404(b) as evidence of the defendant's intent, motive, and plan. In *United States* v. *Mostafa*, for example, the court found that a defendant's "statements regarding the importance of violent jihad" were "probative of the defendant's knowledge of jihad, motive to support jihad, absence of mistake in taking actions that might be construed as supporting jihad, and intent to support jihad." 16 F. Supp. 3d 236, 257 (S.D.N.Y. 2014). Although the statements at issue in *Mostafa* were "undated," the court found that "the fact that 'other act' evidence occurred well before a charged crime or even well after the crime did not defeat the required finding of similarity and connection" and "does not eliminate its probative value, though it may go to weight." *Id.* In *United States* v. *Kassir*, where the defendant was charged with providing material support to al Qaeda, the court held that evidence of the defendant's previous associations with other terrorist groups was "admissible to prove Defendant's motive, intent, preparation, knowledge, and absence of mistake or accident." No. 04 Cr. 356 (JFK), 2009 WL 976821, at *5 (S.D.N.Y. Apr. 9, 2009), *aff'd*, *United States* v. *Mustafa*, 406 F. App'x 526, 528 (2d Cir. 2011) (holding that other acts evidence was "highly probative of [defendant's] state of mind, including his 'intent and knowledge'"). And charges alleging the provision of material support to a particular terrorist organization are not necessary to rely on these theories of admissibility. In *United States* v. *Rahman*, which did not involve material support charges, the Second Circuit held that "[t]he Government was free to demonstrate [defendant's] resentment and hostility toward the United States in order to show his motive for soliciting and procuring illegal attacks against the United States." 189 F.3d 88, 118 (2d Cir. 1999). So too here. Therefore, the defendant's three emails from 2012 are also admissible pursuant to Rule 404(b).

Finally, the limited amount of evidence that the Government seeks to offer from 2012 is not unduly prejudicial. The defendant's interest in 2012 in jihad, supporters of al Qaeda, and guidance from terrorists such as al-Aulaqi is highly probative of relevant, permissible issues at trial, and no more inflammatory than the defendant's conduct in September 2016. Accordingly, the Government should be permitted to offer the three emails from 2012.

## II.  Evidence Relating to the New Jersey Bombings Phase of the Defendant's Terrorist Attack Is Admissible as Direct Evidence and Pursuant to Rule 404(b)

The defendant's bombings in Manhattan were part of a terrorist attack intended to injure, kill, and destroy property in at least two states over less than 72 hours. This entire course of conduct, including the defendant's bombings and other activities in New Jersey, is admissible as direct proof of the defendant's guilt. Specifically, the New Jersey bombings are admissible as background, because the defendant's use of the Seaside and Elizabeth Devices was inextricably intertwined with his bombings in New York and necessary to complete the story of the crimes on trial. Evidence from the Seaside and Elizabeth Devices, including the defendant's fingerprints, DNA, and overlapping design elements, also tends to establish the defendant's identity as the perpetrator of the charged bombings in New York. In the alternative, this evidence is admissible pursuant to Rule 404(b) to prove the defendant's intent, motive, plan, and absence of accident or mistake. And Rule 403 does not serve as a bar to this evidence in light of the charges and evidence relating to the 23rd Street and 27th Street Devices.

### A.  Relevant Facts

Just after 5:00 a.m. on September 17, 2016, the defendant was captured on a surveillance camera leaving his home in Elizabeth, New Jersey, carrying two duffel bags and wearing a

11

backpack. Two photographs seized from an iCloud account used by the defendant reflect driving instructions from Elizabeth to the Sawmill Cafe in Seaside Park, New Jersey, via the Garden State Parkway.[6] At approximately 5:30 a.m., a car used by the defendant entered the Garden State Parkway, southbound, at the Raritan South Toll Plaza near Perth Amboy. At approximately 6:05 a.m., the same vehicle exited the Garden State Parkway near Toms River, less than 10 miles from Seaside Park. At approximately 9:35 a.m., the Seaside Device detonated approximately one mile from the Sawmill Cafe, along the route of the Seaside Semper Five Marine Corps Charity 5K Race. The anticipated 9:00 a.m. start of the race had been delayed due to other law enforcement activity, and no one was injured from the blast.

At approximately 10:45 a.m., the defendant was again captured on surveillance video near his home in Elizabeth. At approximately 5:00 p.m., video shows the defendant entering his family's restaurant, which was connected to the home, and tossing one or more keys to a relative behind the counter. Based on surveillance footage from New York Penn Station, the defendant arrived in Manhattan at approximately 6:30 p.m. on the evening of September 17, wearing a fanny pack around his shoulder (the "Fanny Pack"), carrying a backpack, and dragging two roller bags. Additional footage shows the defendant walking south on Eighth Avenue with the bomb-laden luggage, and eventually east on 23rd Street where he left the 23rd Street Device near 135 West 23rd Street between approximately 7:50 and 8:00 p.m.

---

[6] Also stored in the same iCloud account was, *inter alia*, an electronic version of an issue of *Dabiq* magazine, which the Government also intends to introduce at trial.

After leaving the first bomb on 23rd Street, the defendant was captured on video walking north on Seventh Avenue—now, with only one roller bag—toward 27th Street. At approximately 8:30 p.m., the 23rd Street Device detonated, causing injuries to approximately 31 people and millions of dollars in property damage across a crime scene that spanned approximately 650 feet. Around the same time, video reflects the defendant leaving the roller bag containing the 27th Street Device near 131 West 27th Street. At approximately 8:50 p.m., two men took the 27th Street Device out of the roller bag used by the defendant; they took the bag, and left the Device on the street. At approximately 10:00 p.m., a 911 call alerted law enforcement to the presence of the 27th Street Device.[7]

Video from September 18, 2016 shows the defendant in Penn Station in Manhattan at approximately 2:15 p.m., and at Newark Penn Station in Newark, New Jersey—apparently changing trains on New Jersey Transit—at approximately 3:30 p.m. At approximately 7:45 p.m., a backpack in the vicinity of Broad Street near the New Jersey Transit station in Elizabeth was reported as a suspicious package. The backpack was recovered by law enforcement and found to contain the Elizabeth Devices, consisting of six IEDs, one of which detonated as law enforcement tried to recover and render safe the bombs.

---

[7] Law enforcement seized the 27th Street Device and rendered it safe at secure premises controlled by the New York City Police Department.

13

### B. Argument

Evidence of the New Jersey-bombings phase of the defendant's terrorist attack, during the same timeframe as the charged bombings in New York, is admissible as direct proof of the defendant's intent to injure, kill, destroy, and retaliate against the U.S. government with the 23rd Street and 27th Street Devices. Thus, the defendant's New Jersey bombings "provide crucial background evidence that [gives] coherence to the basic sequence of events," are "inextricably intertwined with the evidence regarding the charged offense," and are "necessary to complete the story of the crime on trial." *Gonzalez*, 110 F.3d at 942. This evidence is also admissible, in the alternative, pursuant to Rule 404(b) as proof of the defendant's intent, motive, plan, and absence of mistake or accident. *See United States* v. *Mostafa*, 16 F. Supp. 3d at 257; *United States* v. *Kassir*, 2009 WL 976821, at *5-6. The defendant's bombings in New Jersey are probative of his intent and plan to kill others by engaging in violent jihad, and the motivation to do so that the defendant obtained from the terrorists he referenced in the Letter, such as bin Laden, al-Aulaqi, former ISIS-leader Abu Mohammed al-Adnani, and Fort Hood shooter Nidal Hasan.

For example, the fact that the defendant detonated a bomb in Seaside Park on the morning of September 17 before traveling to Manhattan tends to show that his detonation of the 23rd Street Device was motivated by terrorist advocacy for violent jihad and therefore intentional—and designed to injure, kill, and damage—rather than an accident or mistake. The Seaside Park bombing and the subsequent attempted bombing in Elizabeth on September 18, also demonstrate that the defendant intended to, and attempted to, detonate the 27th Street Device in Manhattan as charged in Counts Two, Five, Six, and Eight. In other words, the continuity of the three-phase attack tends to show that the defendant intended that the 27th Street Device would kill others as

14

well, and that this component of his plan was thwarted rather than abandoned (or non-existent).

Indeed, as discussed below, *see infra* Part III, the defendant continued with the final phase of his

attack on September 19 by trying to murder police officers.

Overlapping features of the bombs and bomb-related evidence serve as additional, critical

evidence of the defendant's guilt.  The defendant used black powder, modified Christmas tree

lights, and modified cellphones—all consistent with terrorist guidance from, *inter alia*, the issues

of *Inspire* Magazine saved on the Laptop—to construct the Seaside Device and the 27th Street

Device.  The defendant placed a coil of green hobby fuse in the 27th Street Device, and used

similar green hobby fuse as part of the fusing system for the Elizabeth Devices.  Traces of HMTD

were identified on the 27th Street Device and the Elizabeth Devices, as well as in the defendant's

home.  These and other features of the bombs underscore that there was a single attack committed

by the defendant between September 17 and September 19, 2016.  Thus, this evidence tends to

demonstrate that the defendant followed and was motivated by terrorist guidance in constructing

his bombs, that he planned and intended to achieve terrorist objectives, and therefore that he acted

with culpable intent with respect to the 23rd Street and 27th Street Devices.

Finally, admitting evidence of the defendant's bombings in New Jersey is not prohibited

by Rule 403.  The bombings in Seaside Park and Elizabeth are no more sensational than those in

Manhattan.  *See Kassir*, 2009 WL 976821, at *7 (holding that testimony relating to uncharged

murders in material support case does not violate Rule 403 where other acts evidence "relevant for

purposes of proving [defendant's] motive, preparation, and absence of mistake or accident").  Nor

would this evidence unduly lengthen the trial.  The Government will establish the defendant's role

in the New Jersey bombings principally through limited surveillance video from New Jersey,

15

physical evidence from the crime scenes, and testimony from the same forensic experts who will explain to the jury the components and other evidence relating to the 23rd Street and 27th Street Devices.   Therefore, the Government should be permitted to offer proof of the New Jersey bombings at trial.

### III.   Evidence Relating to the Shootout Phase of the Defendant's Terrorist Attack and His Subsequent Arrest Is Admissible as Direct Evidence, Including Proof of Consciousness of Guilt, and Pursuant to Rule 404(b)

The Government seeks to offer the following limited evidence relating to the shootout phase of the defendant's terrorist attack, and his subsequent arrest, in Linden, New Jersey on September 19, 2016 (the "Linden Evidence"):  (i) testimony from an officer ("Officer-1") with the Linden Police Department ("Linden PD") regarding his interactions with the defendant, including the shots the defendant fired at him and others; (ii) approximately five minutes of law enforcement video footage reflecting Officer-1's conversation with the defendant and the defendant's subsequent shots at multiple police officers; and (iii) physical evidence recovered in connection with the defendant's arrest, including the Glock, 40 rounds of ammunition from the Fanny Pack, and the Letter.   The Linden Evidence is admissible as direct evidence, including to show the defendant's consciousness of guilt, and pursuant to Rule 404(b) because it is probative of the defendant's intent, motive, and plan to commit the charged crimes in connection with a multi-phase terrorist attack consisting of several acts of violent jihad.

#### A.   Relevant Facts

On September 19, 2016, at approximately 10:45 a.m., Officer-1 responded to a report from an unidentified man sleeping outside a bar located at 700 Elizabeth Avenue in Linden, New Jersey (the "Bar").   In response to questioning from Officer-1, the defendant claimed falsely that he was

16

homeless and then—as Officer-1 repeatedly directed him to stop—slowly unzipped his jacket, placed his right hand inside, and reached for the Fanny Pack, which was strapped to his chest. The defendant removed the Glock from the Fanny Pack, pointed it at Officer-1, and they exchanged fire. One of the defendant's shots struck Officer-1, who fortunately was wearing a bulletproof vest, in the abdomen. The defendant then ran away, continuing to fire at Officer-1 and multiple additional responding officers.

Members of the Linden PD arrested the defendant in the vicinity of 536 East Elizabeth Avenue in Linden. The officers recovered the Glock and the Fanny Pack, which contained approximately 40 rounds of live ammunition. While the defendant was receiving medical treatment, the notebook containing the Letter was recovered from his pants pocket. The notebook was damaged during the shootout, but forensic analysis and reconstruction by the FBI revealed the defendant's Letter written across eight consecutive pages of the notebook.

### B. Argument

The "Gun shots to your Police" that the defendant fired in Linden and described in the Letter seized following his arrest were the final component of the terrorist attack that the defendant planned for months and carried out between September 17 and 19, 2016, in an effort to engage in violent jihad and achieve the so-called "martyrdom" that he had studied since at least 2012. (*See, e.g.*, Ex. C at 112-14 (section in "The Book of Jihad" describing purported "Virtues of Martyrdom")). The defendant purchased the Glock in July 2016 in contemplation of this phase of the attack, and carried extra ammunition with him in the Fanny Pack on September 19 so that he could maximize the harm that he intended to cause. In light of the defendant's reference to the shootout in the Letter—in which he also referred to his bombings in New York and New Jersey—

it is manifest that the Linden Evidence is "part of the very act[s] charged," *United States* v. *Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992), "inextricably intertwined" with the defendant's use of the 23rd and 27th Street Devices, *United States* v. *Quinones*, 511 F.3d 289, 309 (2d Cir. 2007), and necessary to "complete the story of the crime on trial," *United States* v. *Towne*, 870 F.2d 880, 886 (2d Cir. 1989). Thus, because the defendant's conduct on September 19 is part of the "same . . . series of transactions as the charged offense[s]," *Gonzalez*, 110 F.3d at 942, the Linden Evidence should be admitted as direct evidence and pursuant to Rule 404(b).

Evidence relating to the defendant's efforts to kill and flee from members of the Linden PD is also admissible to demonstrate his consciousness of guilt. "[I]t is universally conceded that the fact of an accused's flight . . . is admissible as evidence of consciousness of guilt." *United States* v. *Sanchez*, 790 F.2d 245, 252 (2d Cir. 1986); *United States* v. *Harley,* 682 F.2d 398, 400 (2d Cir. 1982); *see also United States* v. *Salameh*, 152 F.3d 88, 157 (2d Cir. 1998) (reasoning that where defendant "made arrangements to flee the country," "[t]he jury was entitled to infer consciousness of guilt from the facts surrounding [the defendant's] flight").[8] So long as the evidence "passes the threshold inquiry of relevance, '[t]he accepted technique is for the judge to receive the evidence and permit the defendant to bring in evidence in denial or explanation.'" *United States* v. *Amuso*, 21 F.3d 1251, 1258 (2d Cir. 1994) (quoting *United States* v. *Ayala*, 307 F.2d 574, 576 (2d Cir. 1962)). The defendant's efforts to avoid arrest and flee from the Linden

---

[8] In general, the probative value of flight as circumstantial evidence of guilt turns upon "the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." *United States* v. *Al-Sadawi*, 432 F.3d 419, 424 (2d Cir. 2005).

18

PD clearly pass that threshold. Two days after planting bombs in New York and New Jersey, and in the midst of a massive public manhunt to secure his arrest, the defendant was discovered by the police. When Officer-1 attempted to ascertain the defendant's identity, the defendant provided false information, sought to kill Officer-1 and others, and tried to flee. The jury can infer from this evidence that the defendant knew that law enforcement was searching for him because he had in fact committed the crimes with which he is charged in this case, and he attempted to flee in an effort to avoid arrest, prosecution, and conviction. *See United States* v. *Amuso*, 21 F.3d at 1258; *United States* v. *Grandmont*, 680 F.2d 867, 869 (1st Cir. 1982) ("It is well established that flight and efforts at concealment or falsification of identity may be admitted at trial as bearing upon the guilt of the accused, so long as there is an adequate factual predicate."). Accordingly, the Linden Evidence is also admissible on the basis that it demonstrates the defendant's consciousness of guilt.

Moreover, under Rule 404(b), the Letter itself is extremely probative of the defendant's knowledge, intent, motive, plan, and absence of mistake or accident with respect to all phases of the attack, including the 23rd Street and 27th Street Devices. The Letter was directed to "You (USA Governmen[t])," and complained of U.S. policies resulting in "slaught[er]" by the United States in Afghanistan, Iraq, Syria, and the Palestinian territories. (Ex. E at 1). The defendant wrote that "Brother Osama Bin Laden offered you truce," and referred to "guidence" from al-Aulaqi and al-Adnani, including to "stay behind" in the United States and follow the example of Nidal Hasan by conducting a lone-wolf attack against "The Kuffar in the[ir] [b]ack yard." (Ex. E at 2, 4). The defendant expressed concern that law enforcement was "Looking for" him and "pray[ed]" to "wise Allah" to "Not take jihad away from" him. (Ex. E at 3). The defendant wrote that he acted "Quietly" and "had to Lie to Cov[er] [his] Tracks," referring to his long-term planning. (Ex. E at

19

5).  The defendant also described the different phases of his attack:  the "[pi]pe bombs" he detonated and attempted to detonate in New Jersey, the "[pressur]e Cooker Bom[bs]" he detonated and attempted to detonate in New York, and the "Gun shots to your Police."  (Ex. E at 7-8).  And the defendant made clear that the attack was undertaken in an effort to cause "Death to Your OPPRESSION," referring back to complaints about U.S. policies that he hoped to influence through his actions.  (Ex. E at 8).  The jury is entitled to consider the contents of the Letter, and to know how it was recovered, why it was damaged (by a gunshot), and why it is covered in blood.

This highly probative Linden Evidence, including evidence relating to the defendant's shootout, is no more violent, sensational, or disturbing than his use of the shrapnel-laden 23rd Street and 27th Street Devices in a manner designed to maximize harm to victims and increase the likelihood of fatalities.  *See United States* v. *Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990) (noting that other act evidence no "more sensational" or "disturbing" than the charged crimes will not be deemed unfairly prejudicial).  The Linden Evidence is also a limited subset of the available proof relating to the events of September 19 that will not unduly prolong the trial.[9]  Accordingly, the Government should be permitted to offer this proof pursuant to Rule 401 and/or Rule 404(b).

_____

[9] At least five officers from the Linden PD were involved in the shootout, and at least four civilians witnessed it.  (*See* Ex. F (Order and Decision denying defendant's motion in Union County)).  Law enforcement recovered a 17-round magazine near the Bar, as well as at least 20 shell casings fired from the Glock.  (Ex. F at 6-7).  In addition, investigators collected surveillance footage from multiple residences and businesses on East Elizabeth Avenue, as well as the videos recorded on the police officers' body and dashboard cameras.  (Ex. F at 8).  At this time, the Government seeks to introduce only a fraction of this evidence in its case-in-chief, but reserves the right to offer additional evidence as the theory of the defense becomes more apparent and evolves during the course of the trial.

**IV.    Aaron Zelin's Limited Expert Testimony on Terrorism-Related Topics Is Admissible**

The foregoing discussion in Parts I, II, and III, *supra*, further illustrates that the jury's understanding of the terrorism-related terms, concepts, organizations, and names reflected in evidence spanning from 2012 to the Letter recovered on September 19, 2016, is critical to evaluating the Government's anticipated proof at trial.  The Government should be permitted to offer limited expert testimony to adduce a basis in the record for the jury's understanding of these topics.  *E.g.*, *United States* v. *Mustafa*, 406 F. App'x at 528; *United States* v. *Kadir*, 718 F.3d 115, 121-22 (2d Cir. 2013); *Kassir*, 2009 WL 910767, at *4.  The proposed testimony of Aaron Zelin relating to these issues, as described in prior submissions (Dkt. No. 81 at 15-17; Dkt. No. 95), should be permitted for this purpose.

**V.    The Court Should Preclude the Defense from Cross-Examination or Argument Regarding Inappropriate or Irrelevant Issues Serving as an Invitation to Nullify**

In public filings and other correspondence, the defense has foreshadowed arguments at trial regarding a host of irrelevant or inappropriate topics that appear to be designed to distract the jury or persuade jurors to engage in nullification, such as arguments relating to penalties faced by the defendant, the defense's legal position regarding the violations of Section 924(c) charged in Counts Seven and Eight, and investigative techniques.  The Court should exercise its discretion to preclude the defense from injecting these issues into the trial.

As part of the parties' separately-filed joint submissions relating to jury instructions and voir dire, the Government has also presented a series of objections and alternatives, including a schedule for administering juror questionnaires, to the defendant's proposed procedures for jury selection.  As explained therein:  (i) the attorneys should not be permitted to ask potential jurors

questions, which would contravene long-standing practices in this District; and (ii) the Court should reject the defendant's proposed questionnaire, which contains numerous inappropriate, irrelevant, and/or prejudicial questions, and instead adopt an approach to jury selection similar to that taken during recent trials in this District in *United States* v. *Fawwaz*, No. 98 Cr. 1023 (LAK), and *United States* v. *Mostafa*, No. 04 Cr. 356 (KBF).

## A.  Penalties Faced by the Defendant

In a proposed jury questionnaire and proposed jury instructions, the defense signaled its intention to inform the jury of the potential penalties associated with the charges, and, in particular, the mandatory term of life imprisonment the defendant faces if convicted on both Counts Seven and Eight.  He should not be permitted to do so.

"[T]he 'jury is to base its verdict on the evidence before it, without regard to the possible consequences of the verdict.'"  *United States* v. *Polouizzi*, 564 F.3d 142, 161 (2d Cir. 2009) (quoting *Shannon* v. *United States*, 512 U.S. 573, 576 (1994)).  Where, as here, "a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'"  *Shannon* v. *United States*, 512 U.S. at 579 (quoting *Rogers* v. *United States*, 422 U.S. 35, 40 (1975)).

> Information regarding the consequences of a verdict is . . . irrelevant to the jury's task. Moreover, providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion.

*Id.*

In *Shannon*, the Supreme Court recognized that there may be "certain limited circumstances" where instructing the jury regarding the consequences of its verdict "may be

necessary." *Id.* at 587. The *Shannon* Court was focused, however, on circumstances where "a witness or prosecutor" suggests to the jury "that a particular defendant would 'go free'" if found not guilty. *Id.* The Government will not cross that line at trial, and has requested an instruction to the jury indicating that "possible punishment of the defendant is of no concern to the jury and it should not, in any sense, enter into or influence your deliberations." (Dkt. No. 102 at 66). Accordingly, this case will not present the "limited circumstances" that concerned the *Shannon* Court, and the jury should not be informed by the defense or the Court of the potential penalties faced by the defendant.

### B.  Nullification Relating to Counts Seven and Eight

On June 22, 2017, the Court ruled that "Counts Seven and Eight readily withstand the Defense motion to dismiss" (Dkt. No. 94 at 5), which was based on the argument that these charges "allege Mr. Rahimi's use of a bomb while using a bomb" and therefore do not constitute "distinct offense[s]." (Dkt. No. 60 at 8, 10). The Court will instruct the jury regarding the elements of Counts Seven and Eight, and any suggestion by the defendant that these charges are inappropriate or duplicative would be an improper request for jury nullification. *See United States* v. *Thomas*, 116 F.3d 606, 614 (2d Cir. 1997) ("We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent."). The Court should preclude the defendant from extending such an invitation to the jury.

### C.  The Defendant's Post-Arrest Statements and Interviews

The defense cannot offer the defendant's statements to law enforcement, *see* Fed. R. Evid. 801(d)(2), and the Government has elected not to use the defendant's post-arrest statements for

any purpose at trial.  As a result, the defense should not be permitted to cross-examine any witness or make arguments to the jury regarding any statements by the defendant or the circumstances of the interviews that led to those statements.  Moreover, any such arguments would open the door to the statements themselves.

### D.  The Collection of the December 28, 2016 DNA Sample

Similarly, the Government has elected not to offer, for any purpose, the DNA sample collected from the defendant pursuant to a search warrant on December 28, 2016, any evidence related to or derived from the sample, or the defendant's statements to law enforcement during the collection of the sample.  The collection of the sample is therefore irrelevant to the issues at trial. Thus, the defense should be precluded from cross-examining witnesses or making arguments to the jury regarding the sample or its collection.

### E.  Other Irrelevant Arguments

The defendant's proposed questionnaire for jury selection further portends an effort to inject a variety of issues into the trial that are categorically irrelevant, and would principally confuse the jury or invite jury nullification, including: (i) the immigration policy of the United States; (ii) gun control; (iii) the religious practices of jurors; (iv) the foreign, military and national security policy of the United States, such as whether the United States is "doing enough in the 'war on terror' to combat terrorism" and whether "the 'war on terror' is overblown or exaggerated"; and (v) "prosecutorial charging decisions," "'overcharging' by prosecutors," and the appropriateness of "the use of government resources to pursue as many charges as possible or to seek the most serious penalty."  None of these issues bears in any meaningful way on the central question for the jury at this trial:  whether the Government has proven the defendant's guilt beyond

a reasonable doubt. Rather, these issues would serve only to confuse the jury and to promote

nullification. *See generally United States* v. *Thomas*, 116 F.3d at 614; *United States* v. *Polouizzi*,

564 F.3d at 142; *Shannon*, 512 U.S. at 576; *see also* Fed. R. Evid. 403, 611(a). Accordingly, the

defendant should be precluded from arguing or raising these topics with the jury.

## <u>CONCLUSION</u>

For the foregoing reasons: (i) the Government should be permitted to offer the three emails

from 2012 (Exs. B, C, D), evidence relating to the defendant's bombings in Seaside Park and

Elizabeth, New Jersey, and the Linden Evidence, as well as expert testimony from Aaron Zelin;

and (ii) the defense should be precluded from cross-examination or argument relating to the issues

discussed in Part V, *supra*.

Dated: New York, New York
　　　　July 13, 2017

Respectfully submitted,

JOON H. KIM
Acting United States Attorney
Southern District of New York

By:　　　 /s/　　　　　　　　　　　
　　　　Emil J. Bove III
　　　　Shawn G. Crowley
　　　　Andrew J. DeFilippis
　　　　Nicholas J. Lewin
　　　　Assistant United States Attorneys

Cc:　　Defense Counsel
　　　　(Via ECF)

25