UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v.-

AHMAD KHAN RAHIMI,
    a/k/a "Ahmad Khan Rahami,"

              Defendant.

16 Cr. 760 (RMB)

**THE GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S MOTIONS *IN LIMINE***

JOON H. KIM
Acting United States Attorney
Southern District of New York
*Attorney for the United States
    of America*

Emil J. Bove III
Shawn G. Crowley
Andrew J. DeFilippis
Nicholas J. Lewin
    Assistant United States Attorneys
      *Of Counsel*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ......................................................................................................... 1

DISCUSSION ............................................................................................................... 2

   I. The Government Has Complied with Its Discovery Obligations ............................ 2

     A. Applicable Law ............................................................................................... 2

     B. Argument ......................................................................................................... 3

       1. The Government Has Complied with Its Rule 16 Obligations ..................... 3

       2. The Request for Early Production of an Exhibit List Should Be Denied ..................... 3

       3. The Request for Early Production of a Witness List Should Be Denied ...................... 6

       4. The Government Will Provide Translations on August 14, 2017 ................. 6

       5. The Government Is in Compliance with Rule 404(b) ................................... 6

       6. The Government Is in Compliance with Its Expert-Notice Obligations ........................ 7

       7. The Request for Early Production of Jencks Act and *Giglio* Materials
       Should Be Denied ............................................................................................ 7

       8. The Government Is in Compliance With Its *Brady* Obligations .................... 8

   II. The Defendant's Motion to Preclude Evidence Is Meritless ............................... 8

     A. Applicable Law ............................................................................................... 9

     B. Argument ......................................................................................................... 10

       1. The New Jersey Bombings: The Seaside and Elizabeth Devices ................. 10

       2. The Shootout Phase of the Defendant's Attack and His Arrest ................... 11

       3. The Defendant's Letter ................................................................................ 12

       4. Video Evidence and the Previously Produced "Montage" Videos .............. 13

       5. Electronic Evidence:  "The Book of Jihad," *Inspire* Magazine, and *Dabiq* ............. 13

         a. The Defendant's First Amendment Claim Is Foreclosed ......................... 15

         b. "The Book of Jihad" Is Admissible ......................................................... 15

         c. The Defendant's Issues of *Inspire* Magazine and *Dabiq* Are Admissible ............. 16

   III. The Defendant's Challenges to the Government's Experts Fail ......................... 17

   IV. No Undue Prejudice Will Result from Accurately Characterizing the
   Defendant's Acts of Terrorism Before the Jury ...................................................... 19

V. The Defendant's Proposed Procedures for Jury Selection
Contravene Well-Established Practices ...................................................................... 20

    A. The Defendant's Proposed Questionnaire Is Inappropriate and Overbroad ................... 20

    B. The Court Should Not Permit Attorney-Directed Questioning of Potential Jurors ........ 22

    C. The Defendant's Proposed Schedule Should Be Rejected ............................................ 24

CONCLUSION .......................................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*United States* v. *Abu-Jihaad*, 553 F. Supp. 2d 121 (D. Conn. 2008)............................................ 18

*United States* v. *Barnes*, 604 F.2d 121 (2d Cir. 1979)..................................................... 23

*United States* v. *Berry*, 318 F. App'x 569 (9th Cir. 2009)............................................... 7

*United States* v. *Campo Flores*, No. 15 Cr. 765 (PAC),
    2016 WL 5946472 (S.D.N.Y. Oct. 12, 2016) ...................................... 8

*United States* v. *Conyers*, No. 15 Cr. 537 (VEC),
    2016 WL 7189850 (S.D.N.Y. Dec. 9, 2016) ....................................... 2

*United States* v. *Coppa*, 267 F.3d 132 (2d Cir. 2001) ................................................ 7

*United States* v. *Dennis*, 183 F.2d 201 (2d Cir. 1950)................................................. 23

*United States* v. *Diaz*, 878 F.2d 608 (2d Cir. 1989) ................................................ 10

*United States* v. *Fawwaz*, No. 98 Cr. 1023 (LAK),
    2015 WL 400621 (S.D.N.Y. Jan. 20, 2015) ...................................... 24

*United States* v. *Felton*, 417 F.3d 97 (1st Cir. 2005) .............................................. 19

*United States* v. *Fennell*, 496 F. Supp. 2d 279 (S.D.N.Y. 2007).................................... 7

*United States* v. *Gates*, No. 98 Cr. 1496 (LMM),
    2000 WL 739571 (S.D.N.Y. June 8, 2000) ...................................... 5

*United States* v. *Giffen*, 379 F. Supp. 2d 337 (S.D.N.Y. 2004) ................................. 5, 6

*United States* v. *Gonzalez*, 110 F.3d 936 (2d Cir. 1997) ........................................ 16

*United States* v. *Gottlieb*, 493 F.2d 987 (2d Cir. 1974) ......................................... 2

*United States* v. *Jacques Dessange, Inc.*, No. 99 Cr. 1182 (DLC),
    2000 WL 280050 (S.D.N.Y. Mar. 14, 2000) ................................... 8

*United States* v. *Kadir*, 718 F.3d 115 (2d Cir. 2013)............................................. 18

iii

*United States* v. *Kassir*, No. 04 Cr. 356 (JFK),
    2009 WL 910767 (S.D.N.Y. Apr. 2, 2009)................................................................. 18

*United States* v. *Louis*, No. 04 Cr. 203 (LTS),
    2005 WL 180885 (S.D.N.Y. Jan. 27, 2005) .............................................................. 2

*United States* v. *Meszaros*, No. 06 Cr. 290 (JFB),
    2008 WL 5113425 (E.D.N.Y. Nov. 25, 2008)............................................................ 5

*United States* v. *Milan-Colon*, No. 91 Cr. 685 (SWK),
    1992 WL 236218 (S.D.N.Y. Sept. 8, 1992)............................................................... 5

*United States* v. *Nixon*, 418 U.S. 683 (1974) ............................................................... 7

*United States* v. *Ozsusamlar*, 428 F. Supp. 2d 161 (S.D.N.Y. 2006) ........................... 9

*United States* v. *Paracha,* No. 03 CR. 1197 (SHS),
    2006 WL 12768 (S.D.N.Y. Jan. 3, 2006) ................................................................ 18

*United States* v. *Pierce*, 785 F.3d 832 (2d Cir. 2015)................................................... 15

*United States* v. *Pugh*, 162 F. Supp. 3d 97 (E.D.N.Y. 2016) ....................................... 14

*United States* v. *Quinones*, 511 F.3d 289 (2d Cir. 2007)............................................. 21

*United States* v. *Rahman*, 189 F.3d 88 (2d Cir. 1999).................................... 14, 20, 22

*United States* v. *Rigas*, 258 F. Supp. 2d 299 (S.D.N.Y. 2003) .................................... 2

*United States* v. *Rittweger*, 259 F. Supp. 2d 275 (S.D.N.Y. 2003)............................... 5

*United States* v. *Rivera*, No. 16 Cr. 175 (LGS),
    2017 WL 1843302 (S.D.N.Y. May 8, 2017) ............................................................ 6

*United States* v. *Romain*, No. 13 Cr. 724 (GEL),
    2014 WL 1410251 (S.D.N.Y. Apr. 11, 2014)............................................................ 5

*United States* v. *Russo*, 483 F. Supp. 2d 301 (S.D.N.Y. 2007)..................................... 5

*United States* v. *Sabir*, No. 05 Cr. 673 (LAP),
    2007 WL 1373184 (S.D.N.Y. May 10, 2007) ......................................................... 18

*United States* v. *Salameh*, 152 F.3d 88 (2d Cir. 1998) ....................................... 15, 22

*United States* v. *Scott-Emuakpor*, No. 99 Cr. 138,
  2000 WL 288443 (W.D. Mich. 2000) ................................................... 7

*United States* v. *Sheehan*, 838 F.3d 109 (2d Cir. 2016) ............................ 20

*United States* v. *Treacy*, 639 F.3d 32  (2d Cir. 2011) ............................ 21, 22

*United States* v. *Tsarnaev*, 780 F.3d 14 (1st Cir. 2015) ............................ 24

*United States* v. *Ulbricht*, 79 F. Supp. 3d 466 (S.D.N.Y. 2015) ................... 10

*United States* v. *Valerio*, 737 F. Supp. 844 (S.D.N.Y. 1990) ....................... 5

*United States* v. *Wilson*, 571 F. Supp. 1422 (S.D.N.Y. 1983) ...................... 23

## Statutes

18 U.S.C. § 2332a ....................................................................... 19

18 U.S.C. § 2332b ....................................................................... 19

18 U.S.C. § 2332f ................................................................... 13, 19

## Federal Rules of Evidence

Rule 401 ............................................................................ 9, 15

Rule 402 ............................................................................... 9

Rule 403 .............................................................................. 10

Rule 404(b) ......................................................................... 6, 10

Rule 801 .............................................................................. 12

Rule 1006 ............................................................................. 13

## INTRODUCTION

The Government respectfully submits this memorandum of law in opposition to the defendant's motions *in limine* ("Def. Mem." (Dkt. No. 99)), and his proposals for jury selection (Dkt. No. 104). For the reasons set forth below, these applications should be denied.

1. <u>Discovery Issues</u>: The defendant's discovery-related contentions are meritless, as the Government's disclosures to date have provided him with all that is required and necessary to plan his defense and prepare for trial. The Government has also agreed to disclose anticipated exhibits, witnesses, and Jencks Act and *Giglio* material by September 22, 2017, more than 10 days prior to trial. The defendant's efforts to compel further, and earlier, disclosures should be denied.

2. <u>Evidentiary Arguments</u>: The defendant's scattershot evidentiary arguments ignore facts and law, operating principally as attacks on the weight of the Government's proof rather than admissibility. The admissibility of much of the challenged evidence is addressed in the Government's July 13, 2017 motions *in limine* ("Gov't MILs" (Dkt. No. 103),[1] and his objections are meritless.

3. <u>Terrorism Expert</u>: The defendant's renewed efforts to preclude testimony from Aaron Zelin are contrary to authority from the Second Circuit and this District.

4. <u>Preclusion of Terrorism- and IED-Related Terms</u>: The defendant committed a terrorist attack using homemade improvised explosive devices packed with shrapnel, which were designed to maximize deaths, injuries, and damage. As a result, he is charged with terrorism offenses. Thus, the Government should not be precluded from using terms that accurately characterize his conduct.

5. <u>Jury Selection</u>: The defendant's proposed procedures for jury selection seek to depart, without sufficient justification, from established practices in the District, including for high-profile terrorism trials that receive pretrial publicity. The Court should reject the defendant's efforts to contaminate the venire by referring to potential sentencing consequences and other irrelevant matters, to turn decades of prudent jury-selection practice on its head by engaging in attorney-driven *voir dire*, and to further delay and prolong the trial with a proposed schedule that would likely extend the trial into mid- or late-November 2017.

---

[1] The Government respectfully incorporates by reference the defined terms from its motions *in limine*, such as the 23rd Street and 27th Street Devices, the defendant's Letter, the Laptop that contained issues of *Inspire* Magazine, and the Glock that he used to try to kill members of the Linden PD. All such terms used herein have the meaning established in the prior submission.

## DISCUSSION

### I.  The Government Has Complied with Its Discovery Obligations

The Government has satisfied its discovery obligations, and will remain in compliance with those obligations as the case proceeds.  The deadline for pretrial motions lapsed on May 4, 2017 and, tellingly, the defendant did not seek a Bill of Particulars.  In light of the Government's extensive disclosures to the defense during discovery, the Court should deny the defendant's motions for, *inter alia*, an exhibit list, witness list, and Jencks Act and *Giglio* material nearly 60 days prior to trial.

#### A.  Applicable Law

The Government's discovery obligations are defined by Rule 16, *Brady*, and *Giglio*, rather than requests or demands from defendants.  *E.g.*, *United States* v. *Louis*, No. 04 Cr. 203 (LTS), 2005 WL 180885, at *2 (S.D.N.Y. Jan. 27, 2005).  The Government is "not required to disclose its evidence in advance of trial," *United States* v. *Gottlieb*, 493 F.2d 987, 994 (2d Cir. 1974), and defendants "may not use the vastness or complexity of [an] alleged conspiracy and its attendant documentary evidence as a sword against the government, when the Indictment, discovery, and other information provided by the government adequately notify Defendants of the charges against them," *United States* v. *Rigas*, 258 F. Supp. 2d 299, 305 (S.D.N.Y. 2003).  The issue is "whether the information sought is necessary, not whether it is helpful."  *United States* v. *Conyers*, No. 15 Cr. 537 (VEC), 2016 WL 7189850, at *7 (S.D.N.Y. Dec. 9, 2016).

### B.  Argument

In light of the Government's disclosures to date, as well as the schedule implemented by the Court to facilitate defense review of the evidence, the defendant has not identified a sufficient basis to warrant compelling the Government to make the additional disclosures he seeks.

### 1.  The Government Has Complied with Its Rule 16 Obligations

The Government did not "ignore[]" the defendant's June 16, 2017 discovery demand (the "Demand" (Dkt. No. 101-1)).  (Def. Mem. at 2).  Upon receiving the Demand, the Government worked with the FBI to obtain necessary authorizations to disclose the sensitive personal identifying information included in the Government's response (the "Response" (Dkt. No. 101-2)).  After completing that process, the Government confirmed to the defense that it was in compliance with its discovery obligations, and made additional disclosures to facilitate the defendant's preparation for trial.

In an effort to suggest that the Response was insufficient, the defendant refers to the need to "adequately prepare for trial," the defense he is "constitutionally guaranteed," and his right to "effective assistance of counsel."  (Def. Mem. at 1, 3).  But he cites no case suggesting that the Government's disclosures to date have deprived him of what the Constitution requires.  Nor could he, as there are none.  Accordingly, the defendant's motion to compel a further response to the Demand should be denied as moot.

### 2.  The Request for Early Production of an Exhibit List Should Be Denied

The defendant's motion for an order directing the Government to "specify the evidence" is moot, and his motion for an exhibit list by August 10, 2017 should be denied.  (Def. Mem. at 2-3).

The Government has already sufficiently specified its evidence.  Since September 20, 2016, the defense has had access to the detailed 13-page criminal complaint describing the evidence and the Government's theory of the case (including the New Jersey bombings and the defendant's shootout).  In December 2016, the Government produced, *inter alia*:  (i) the "montage" videos, which identify and aggregate some of the most pertinent excerpts of video obtained during the investigation; and (ii) 14 search warrant affidavits that provide additional detail regarding the Government's evidence and theory of the case, including the particular facts or evidence that led the Government to be focused on the accounts at issue.  In January 2017, the Court indicated that it expected the defense to complete its review of discovery by the end of the month, and counsel informed the Court on January 30 that they had "reviewed massive quantities of discovery already" and added a third attorney to the defense team.  (Jan. 4, 2017 Tr. 5:8, 18:10-14; Jan. 30, 2017 Tr. 10:4-5, 16:11-12).  In January and March 2017, the Government produced expert reports relating to forensic analyses by the FBI, including reports reflecting expert opinions regarding the components and construction of the bombs and analyses of the defendant's DNA and fingerprints on the bombs, as well as nearly all of the Jencks Act material for those experts.[2]

More recently, the Government described in the Response the electronic accounts and devices upon which it currently intends to rely.  The defendant complains that the Government has not agreed to restrict its offerings based on these early disclosures, but even the cases he cites expressly allowed the Government to supplement its "preliminary" exhibit list before and during

---

[2] The Government's productions of contents of electronic accounts and devices were accompanied by detailed indices.  All of the Government's productions were sent to both defense counsel and the defendant, and the defendant has been provided with a laptop to use to review discovery.

4

trial. *See, e.g.*, *United States* v. *Giffen*, 379 F. Supp. 2d 337, 344 (S.D.N.Y. 2004). Finally, the Government's motions *in limine* and this submission, *see infra* notes 6 and 8, contain substantial additional information regarding the evidence the Government plans to offer in its case-in-chief.

It is "well established that witness lists and exhibit lists need not be provided in advance of trial." *United States* v. *Robles*, No. 04 Cr. 1036 (GEL), 2005 WL 957338, at *1 (S.D.N.Y. 2005).[3] The Government's proposal of identifying anticipated exhibits 10 days prior to trial is consistent with other cases in the District. *E.g.*, *United States* v. *Russo*, 483 F. Supp. 2d 301, 309-10 (S.D.N.Y. 2007) (citing *United States* v. *Falkowitz*, 214 F. Supp. 2d 365 (S.D.N.Y. 2002) and *United States* v. *Earls*, No. 03 Cr. 364, 2004 WL 350725 (S.D.N.Y. Feb. 25, 2004)); *United States* v. *Rittweger*, 259 F. Supp. 2d 275, 294 (S.D.N.Y. 2003); *see also United States* v. *Meszaros*, No. 06 Cr. 290 (JFB), 2008 WL 5113425, at *1 (E.D.N.Y. Nov. 25, 2008). Thus, based on the Government's disclosures and the time allotted to the defense to review discovery, there is no basis to require the Government to identify exhibits until September 25, 2017, which is well in advance of its statutory and ethical obligations to do so.[4]

---

[3] *Accord United States* v. *Romain*, No. 13 Cr. 724 (GEL), 2014 WL 1410251, at *3 (S.D.N.Y. Apr. 11, 2014) ("[T]he Government has already provided Defendant with evidence that it intends to introduce at trial, and is not required to submit a narrower exhibit list at this time."); *see also United States* v. *Valerio*, 737 F. Supp. 844, 847 (S.D.N.Y. 1990) (denying motion for exhibit list because request "falls outside the scope of" Rule 16); *United States* v. *Gates*, No. 98 Cr. 1496 (LMM), 2000 WL 739571, at *2 (S.D.N.Y. June 8, 2000) ("Defendant is not entitled to an exhibit list in advance of trial . . . ."); *United States* v. *Milan-Colon*, No. 91 Cr. 685 (SWK), 1992 WL 236218, at *45 (S.D.N.Y. Sept. 8, 1992) (denying motion for exhibit and witness lists).

[4] Consistent with *Giffen* and other authority, the Government reserves its right to supplement the exhibit list in advance of and during trial, and in no way commits to offering each exhibit it identifies as a potential exhibit prior to trial.

### 3.    The Request for Early Production of a Witness List Should Be Denied

"A defendant is not entitled to the Government's witness list prior to trial." *United States* v. *Giffen*, 379 F. Supp. 2d at 345.   "Courts in the Second Circuit typically deny motions for the early disclosure of witness lists where, as here, Defendants have not made a specific showing of need." *United States* v. *Rivera*, No. 16 Cr. 175 (LGS), 2017 WL 1843302, at *2 (S.D.N.Y. May 8, 2017).   The defendant committed violent crimes, based on guidance from violent terrorist organizations, and several of the witnesses at issue are victims of his attack.   The defendant offers no basis for his demand for a witness list, and his request should be denied.

### 4.    The Government Will Provide Translations on August 14, 2017

In the Response, the Government informed the defendant that the Letter is the only piece of evidence containing a foreign language that it currently intends to offer in its case-in-chief.   The Government agreed to provide a draft transcription and translation of the Letter by August 14, 2017, and to provide any subsequently prepared translations on a rolling basis.   Particularly in light of the very limited amount of evidence at issue—essentially, a few words written by the defendant himself—the defense request for production of "all final foreign language translations" by August 10 should be denied.

### 5.    The Government Is in Compliance with Rule 404(b)

The Government's motions *in limine* identify the evidence that the Government currently seeks to offer pursuant to Rule 404(b) and other authority.   Rule 404(b) requires "reasonable notice," "before trial," of the "general nature" of evidence to be offered.   Fed. R. Evid. 404(b)(2). "The rule establishes no minimum time, however, because the evidence the government wishes to offer may well change as the proof and possible defenses crystalize." *United States* v. *Fennell*,

496 F. Supp. 2d 279, 284 (S.D.N.Y. 2007).  As in *Fennell*, because the Government acknowledges these requirements and agrees to abide by them, *see id.*, no further relief is warranted.

### 6.  The Government Is in Compliance with Its Expert-Notice Obligations

The Government has provided extensive disclosures regarding forensics experts it expects to call in its case-in-chief.  The Government also supplemented its expert notice with respect to the only expert challenged to date by the defense, Aaron Zelin.  (*See* Dkt. No. 95).  By August 14, 2017, the Government will identify the specific expert witnesses it intends to call to testify regarding the foreign-language portions of the Letter and searches of one laptop computer and one cellphone seized during the investigation.[5]  The defendant has not made additional objections to the Government's disclosures to date, and therefore no relief is necessary.

### 7.  The Request for Early Production of Jencks Act and *Giglio* Materials Should Be Denied

The defendant's motion for Jencks Act and *Giglio* disclosures by August 10, 2017 should also be denied.  (*See* Def. Mem. at 3).  The Jencks Act "prohibits a District Court from ordering the pretrial disclosure of witness statements."  *United States* v. *Coppa*, 267 F.3d 132, 145 (2d Cir. 2001).  With respect to *Giglio* material, "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."  *United States* v. *Nixon*, 418 U.S. 683, 701 (1974).  For one, impeachment material "does not ordinarily require any independent

---

[5] The Government is providing expert notice relating to the searches of electronic devices in an abundance of caution.  These witnesses will testify principally about what they found during searches rather than any area of specialized knowledge relied upon during the examinations.  *See United States* v. *Berry*, 318 F. App'x 569, 569 (9th Cir. 2009) (unpublished opinion); *United States* v. *Scott-Emuakpor*, No. 99 Cr. 138, 2000 WL 288443, at *12 (W.D. Mich. 2000).

investigation in order to use it effectively at trial." *United States* v. *Jacques Dessange, Inc.*, No. 99 Cr. 1182 (DLC), 2000 WL 280050, at *9 (S.D.N.Y. Mar. 14, 2000). Also, requiring early disclosure of *Giglio* material would effectively require the Government to produce a witness list well in advance of trial. *See id.* Thus, the production of Jencks Act and *Giglio* material "shortly before trial" is the "customary rule in this district." *United States* v. *Campo Flores*, No. 15 Cr. 765 (PAC), 2016 WL 5946472, at *11 (S.D.N.Y. Oct. 12, 2016). The Government has agreed to make these disclosures by September 22, 2017. The defendant has not demonstrated why earlier disclosures are necessary, and his request for an earlier production should be denied.

### 8. The Government Is in Compliance With Its *Brady* Obligations

Where, as here, "[t]he Government represents that it is aware of its obligation under *Brady*; that it has complied; and that [it] will continue to comply," a defense motion to compel *Brady* disclosures should be denied. *United States* v. *Campo Flores*, 2016 WL 5946472, at *11.

## II. The Defendant's Motion to Preclude Evidence Is Meritless

The defendant's evidentiary motions *in limine* seek, in essence, to preclude the Government from offering any evidence at trial other than eyewitness testimony from people who personally watched him try to kill numerous people by placing two bombs in Manhattan. He repeatedly presents the frivolous argument that the Indictment somehow restricts the Rules of Evidence. (*E.g.*, Def. Mem. at 13-14, 16, 22, 30). He claims that business records, cellphone records, location data, and crime scene photographs are categorically inadmissible. (Def. Mem. at 4 n.2). Even video of the defendant committing the crimes charged is, in his view, unfairly prejudicial and thus inadmissible. (*See* Def. Mem. at 9, 30-31). The defendant also seeks to preclude evidence, and categories of evidence, that the Government has no intention of offering in

its case-in-chief, such as information relating to his travel history and evidence from his personal collection of motivational videos of terrorists beheading innocent victims and other terrorist attacks.  (Def. Mem. at 22, 31-32).[6]

Nearly all of the defendant's arguments go to the weight that a jury should afford the evidence rather than admissibility; such contentions are insufficient to preclude evidence, particularly in motions *in limine* filed long before trial.

### A.  Applicable Law

"The trial court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds."  *United States* v. *Ozsusamlar*, 428 F. Supp. 2d 161, 164-65 (S.D.N.Y. 2006) (citations omitted).  Relevant evidence, however, is generally admissible and, consequently, not subject to preclusion on a pretrial basis or at trial.  *See* Fed. R. Evid. 402. Evidence is relevant if it has "*any* tendency to make the existence of any fact that is of consequence to the determination of the action more *probable* or less probable than it would be without the evidence."  Fed. R. Evid. 401(a) (emphases added).   Under Rule 404(b), courts "may allow evidence of other acts by the defendant if the evidence is relevant to an issue at trial other than the

---

[6] The Government confirms that it will not seek to offer in its case-in-chief evidence relating to the defendant's foreign travel unless the defendant's trial presentation opens the door to such proof. The Government further confirms that, other than an extremely limited set of communications or other evidence necessary in the absence of a stipulation to establish the defendant's identity as the user of the online accounts at issue, it does not intend to offer in its case-in-chief evidence relating to "job and apartment searches; Mr. Rahimi's and his wife's immigration status; homework assignments; a car sale; tax returns; medical insurance; financial aid; and spam messages."  (Def. Mem. at 21).  Finally, other than the three emails from 2012 described in the Government's motions *in limine*, the Government does not currently intend to offer in its case-in-chief evidence relating to communications, actions, or events that occurred prior to 2015.

defendant's character and if the risk of unfair prejudice does not substantially outweigh the probative value of the evidence." *United States* v. *Ulbricht*, 79 F. Supp. 3d 466, 479 (S.D.N.Y. 2015). Alternative factual theories and similar "challenges go to weight rather than admissibility." *United States* v. *Diaz*, 878 F.2d 608, 615 (2d Cir. 1989). Relevant evidence may be excluded pursuant to Rule 403 in the event of "unfair prejudice," which "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, adv. cmte. note. But "[t]he 'logical inferences' resulting from proffered evidence do not engender the 'unfair prejudice' against which Rule 403 is directed." *United States* v. *Diaz*, 878 F.2d at 615.

### B.    Argument

The Government's motions *in limine* set forth the bases for the admissibility of certain evidence that it will seek to offer in its case-in-chief, and are directly responsive to many of the defendant's contentions. Set forth below are additional responses to some of his arguments.

### 1.    The New Jersey Bombings: The Seaside and Elizabeth Devices

Evidence relating to the defendant's placement of bombs in Seaside Park and Elizabeth is admissible as direct evidence of the charged crimes and pursuant to Rule 404(b). (*See* Gov't MILs at 11-16). The defendant placed these bombs shortly before and after his Manhattan bombings, and explained in the Letter that they were two parts of the same plot. Each device is highly probative of the defendant's identity as the maker of the Manhattan bombs because he used some of the same components to make them, such as black powder, HMTD, modified Christmas tree lights, and modified cellphones. (*See* Gov't MILs at 15). The probative value of these features is further enhanced by the presence of the defendant's fingerprints on the Seaside, 27th Street, and

Elizabeth Devices, and his DNA on the Seaside and 27th Street Devices.  There is also nothing "confus[ing]" about explaining to the jury what the defendant did, after long-term planning, between September 17 and 19, 2016.  (Def. Mem. at 15).  Each phase of his terrorist attack—as described in the Letter—is probative of his guilt with respect to his bombings in Manhattan.

Finally, presenting evidence relating to the New Jersey bombs will not unduly expand the Government's case-in-chief.  (Def. Mem. at 16).  The same forensic experts who are expected to testify regarding the 23rd Street and 27th Street Devices will testify about the Seaside and Elizabeth Devices, and the Government will limit the presentation of physical evidence from the crimes scenes to that which is necessary for the forensic experts to explain the bombs.

### 2.  The Shootout Phase of the Defendant's Attack and His Arrest

Evidence relating to the defendant's shootout and arrest in Linden, New Jersey is admissible as direct evidence and pursuant to Rule 404(b). (*See* Gov't MILs at 16-20).  For example, the Government is entitled to present evidence explaining to the jury why the Letter has bloodstains and a bullet hole.  Moreover, the defendant's murderous efforts to flee, less than 48 hours after the bombings in Manhattan, are probative of his consciousness of guilt, and the defendant cites no authority for his claim that an "ongoing or continuous offense" must be charged through the date of arrest in order for evidence to be admissible on this basis.  (Def. Mem. at 14).

The defendant concedes that "much" of the shootout and arrest was captured "in video form." (Def. Mem. at 15).  And there is no need for a "mini trial" regarding "who fired first"; that issue is irrelevant.  (Def. Mem. at 17).  What is relevant is that the defendant purchased the Glock in July 2016, carried it with him in the Fanny Pack as he placed the bombs in Manhattan, and then used it two days later to try to murder members of the Linden PD—all as he described in the Letter.

Thus, the Linden-related evidence will not unduly expand the trial, as the Government expects only to offer in its case-in-chief testimony from Officer-1, approximately two-and-half minutes of video excerpts (which are attached for the Court's review as Exhibit C),[7] and such additional testimony as is necessary to lay a foundation for the Glock, the 40 rounds of ammunition the defendant carried with him to use in the shootout phase of the attack, the videos, and the Letter.

### 3.  The Defendant's Letter

The Government need not, and will not, "introduce a handwriting exemplar or expert testimony to establish that Mr. Rahimi wrote the statements" in the Letter.  (Def. Mem. at 18). There is no "dearth of evidence" regarding the authorship of the document (*id.*), as it was seized from the defendant, contains at least five uses of the first-person "I," and makes reference to the bombings as well as the shootout that the defendant had just conducted.

Nor is the Government offering the Letter "to establish membership in a criminal organization." (*Id.* at 19).  The Letter is tantamount to a claim of responsibility, and it describes the defendant's motives, planning, and intent for the entire attack—all of which are probative of his culpable *mens rea* with respect to the charged crimes.  (*See* Gov't MILs at 19-20).

The defendant also suggests that the Letter contains "quotations" that constitute "inadmissible hearsay." (Def. Mem. at 18, 21).  There is no hearsay issue, however, because the Letter is being offered as a statement of the defendant, *see* Fed. R. Evid. 801(d)(2), and any quoted

---

[7] Because the video excerpts contain depictions of victim officers from the Linden PD, and to be consistent with the handling of these videos in the related prosecution in Union County, the Government respectfully requests that Exhibit C be maintained under seal.

statements in the Letter will be offered for the fact that the defendant wrote them (*i.e.*, as evidence of the defendant's mental state) rather than for their truth.

### 4. Video Evidence and the Previously Produced "Montage" Videos

The Government will offer at trial segments of surveillance video from New York and New Jersey that are relevant and admissible, such as segments depicting the defendant walking in Manhattan with the 23rd Street and 27th Street Devices. The Government plans to publish the video segments to the jury after they are received in evidence, at times individually and at times sequentially. The "montage" videos were produced in discovery, in December 2016, in order to facilitate the defendant's review of the video-related evidence. The Government does not plan to offer the previously produced "montage" videos at trial, but may offer one or more video exhibits that contain segments of video in evidence played sequentially along with limited text describing the vantage point of the cameras. Because the underlying video excerpts are admissible, summary exhibits aggregating the videos already in evidence are also proper and admissible at trial. *See, e.g.*, Fed. R. Evid. 1006. The Government will make available video-related demonstratives or summaries that it intends to offer by September 22, 2017.

### 5. Electronic Evidence: "The Book of Jihad," *Inspire* Magazine, and *Dabiq*

The defendant's interest in jihad, terrorist organizations, terrorist attacks, and other terrorists, is probative of his motive, intent, and plan to commit the charged crimes. This is particularly true with respect to Count Three, for which one of the jurisdictional bases alleged in the Indictment requires proof that the defendant acted in an "attempt to compel another state or the United States to do or abstain from doing any act," 18 U.S.C. § 2332f(b)(1)(B), and the Government must also prove that the defendant acted "with intent to cause death or serious bodily

injury" or "to cause extensive destruction," *id.* § 2332f(a)(1).  The absence of a material support charge is not, as the defendant continues to urge, a bar to this evidence.  *E.g.*, *United States* v. *Rahman*, 189 F.3d 88, 118 (2d Cir. 1999) ("The Government was free to demonstrate [defendant's] resentment and hostility toward the United States in order to show his motive for soliciting and procuring illegal attacks against the United States.").

Nor is there any basis to preclude the Government from offering materials that the defendant *possessed*, even in the absence of direct evidence that he reviewed them.  (*See* Def. Mem. at 23).[8]  In *United States* v. *Pugh*, for example, the court observed that evidence of terrorist propaganda "speaks directly to state of mind because it was found in [defendant's] *possession*," and the prosecutor could argue that possession "shows the media that [defendant] *consumed* before he flew to Turkey" in furtherance of the charged offenses.  *United States* v. *Pugh*, 162 F. Supp. 3d 97, 117 (E.D.N.Y. 2016) (emphases added).  The Government will only seek to offer terrorist propaganda that the defendant emailed to himself (including the three 2012 emails), that was stored on the Laptop seized from his house in September 2016, and that he searched for in 2015 and 2016 while logged into one or more of his email accounts.  With respect to this evidence, the jury can infer that:  (i) the defendant took active steps in handling the terrorism-related evidence—*i.e.*,

---

[8] Of the seven-bullet list of communications the defendant challenges in his motions *in limine* (Def. Mem. at 22), the Government does not plan to offer in its case-in-chief the 2012 Facebook communications, the July 2012 email with a link to an al-Aulaqi lecture, the September 2012 email relating to the beheading video, or the March 2013 email relating to "Powerful Truck Bombs." The Government does plan to offer in its case-in-chief, *inter alia*, a July 2012 email attaching "The Book of Jihad" and the August 2016 electronic communications, which were attached as Exhibits A and C to the Government's Motions *In Limine* (Dkt. Nos. 103-1, 103-3), as well as the issues of *Inspire* Magazine and *Dabiq* seized from the defendant's online accounts and the Laptop.

emailing, storing, and searching—because he had reviewed the materials and was motivated by their content; and (ii) the content of the materials motivated the defendant to commit the charged crimes with the requisite intent. The fact that this evidence could allow the jury appropriately to make such inferences clearly satisfies Rule 401's threshold requirement for relevance. *See* Fed. R. Evid. 401. The defendant is free to argue to the contrary, but such arguments go to the weight of the evidence rather than admissibility.

### a. The Defendant's First Amendment Claim Is Foreclosed

The defendant's First Amendment challenge to evidence of his electronic communications and activities is foreclosed by binding precedent, and was rejected recently in another terrorism case in this District. (Def. Mem. 26-27; *see also* Dkt. No. 124 at 54-55, *United States* v. *El Gammal*, No. 15 Cr. 588 (ER) (S.D.N.Y. Dec. 19, 2016) (rejecting the same defense argument in recent terrorism trial)). The Supreme Court and the Second Circuit have long permitted the evidentiary use of speech to establish the elements of a crime or to prove motive or intent. *E.g.*, *Wisconsin* v. *Mitchell*, 508 U.S. 476, 489 (1993); *United States* v. *Pierce*, 785 F.3d 832, 841 (2d Cir. 2015); *United States* v. *Salameh*, 152 F.3d 88, 112 (2d Cir. 1998) (per curiam).

### b. "The Book of Jihad" Is Admissible

The defendant emailed "The Book of Jihad" to himself in 2012. It was also stored on the Laptop at the time of the bombings in September 2016. The document is not just a "history of jihad." (Def. Mem. at 24). Rather, the text contains specific directives and guidance that are probative of the defendant's intent to kill, injure, and destroy property, and it therefore has a substantial tendency to make the existence of facts of consequence more probable. *See* Fed. R. Evid. 401. For example, the "Book of Jihad" contains entire sections titled "The Virtues of Killing

15

a Non-Believer for the Sake of Allah," and "The Virtues of Martyrdom." (Gov't MILs Ex. C at 83, 112. The "Book of Jihad" also advises that "[i]t is allowed to ambush an enemy at night"—as the defendant did in Manhattan on September 17—"even if there are women and children among them since that is a necessity of jihad." (*Id.* at 166).

### c. The Defendant's Issues of *Inspire* Magazine and *Dabiq* Are Admissible

The defendant's possession of issues of *Inspire* Magazine and *Dabiq*—again, at the time of his bombings—is admissible as direct evidence and pursuant to Rule 404(b) because it is probative of, *inter alia*, his identity, intent, absence of mistake or accident, motive, and plan to engage in violent jihad and conduct a terrorist attack that would cause death, injuries, and property destruction as charged in the Indictment.

The defendant concedes "two 'similarities'" between his bombs and the bomb-making instructions from the *Inspire* Magazine article he possessed entitled "Make a bomb in the kitchen of your Mom": (i) modified Christmas tree lights; and (ii) use of shrapnel. (Def. Mem. at 25; *see also* Ex. A at 35, 39 (the pertinent issue of *Inspire*)). That concession is an admission that such evidence satisfies the admissibility requirements of Rules 401 and 402. *See, e.g.*, *United States* v. *Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997) ("Relevant evidence is not confined to that which directly establishes an element of the crime."). The defendant then seeks to minimize the *weight* to be assigned to the article by suggesting that pressure-cooker bombs received little treatment in the piece. (Def. Mem. at 25 n.7). In fact, although the article describes how to use multiple "iron pipes"—as the defendant did in the New Jersey bombs—it describes pressure cookers—which he used in both Manhattan bombs—as "the most effective method." (Ex. A at 40).

Another issue of *Inspire* possessed by the defendant included a "Letter to the American People," which explained that "[w]e fight you because you attacked us and continue to do so." (Ex. B at 7). The issue also contained an interview with the "AQ Chef," in which he declared:

> You do not need to be a chemistry specialist or an experience[d] bomb maker to prepare lone Jihad operations. It takes much less. . . . Lone Jihad against the West, especially when intensified, will create a state of terror, anxiety, public resentment and complaint against the governments and policies that brought about lone Jihad.

(Ex. B at 10). In subsequent pages, the issue lauded the bombings in Boston charged in *United States* v. *Tsarnaev*, No. 13 Cr. 10200 (D. Mass.), and referred to one of the terrorists the defendant referenced in the Letter: "[I]t's enough to do what Nidal Hassan did." (Ex. B at 26-27). Finally, in an article entitled "Making the Hidden Bomb," the magazine included instructions for a water-bottle device similar in some respects to certain of the defendant's Elizabeth Devices. (Ex. B at 37-50). The defendant's possession of these articles—and others—is therefore probative of his identity, intent, absence of mistake or accident, motive, and plan.

## III. The Defendant's Challenges to the Government's Experts Fail

Aaron Zelin will not testify about the defendant's "mental state, intent or *mens rea*." (Def. Mem. at 32). But one entirely appropriate purpose of expert testimony is to offer evidence to facilitate jurors' understanding of unfamiliar terms and concepts, and that is precisely what the Government seeks to do through Mr. Zelin. The Letter constitutes powerful evidence of, *inter alia*, the defendant's identity, intent, absence of mistake or accident, motive, and plan, and Mr. Zelin's testimony is necessary in order to ensure that the jury can assess that evidence based on an

17

accurate understanding of the defendant's words.[9]  *E.g.*, *United States* v. *Kassir*, No. 04 Cr. 356 (JFK), 2009 WL 910767, *3 (S.D.N.Y. Apr. 2, 2009) ("'Expert witnesses are often uniquely qualified in guiding the trier of fact through a complicated morass of obscure terms and concepts.'" (quoting *United States* v. *Duncan*, 42 F.3d 97, 101 (2d Cir. 1994))).  Courts in this Circuit repeatedly have permitted experts to do just that by providing information about terrorist organizations, their membership, and activities,[10] even at trials that did not involve a material support charge.  *E.g.*, *United States* v. *Kadir*, 718 F.3d 115, 121-22 (2d Cir. 2013).

Finally, the defendant's request that the Court "require" expert witnesses to testify concerning "prevailing standards" is unnecessary and inappropriate.  (Def. Mem. at 33).  The defense will have an opportunity to cross-examine these witnesses, and no instruction from the Court on this issue is warranted.

---

[9] While expert testimony providing factual summaries to the jury is entirely appropriate, the Government will explore with defense counsel whether a stipulation can be reached that would obviate the need for Mr. Zelin's testimony.  (*See* Def. Mem. at 33).

[10] *United States* v. *El Gammal*, No. 15 Cr. 588 (ER) (S.D.N.Y. 2017); *United States* v. *Abu-Jihaad*, 553 F. Supp. 2d 121, 123-24 (D. Conn. 2008); *see also United States* v. *Kassir*, No. 04 Cr. 356 (JFK), 2009 WL 910767, *4-5 (S.D.N.Y. Apr. 2, 2009); *United States* v. *Paracha,* No. 03 Cr. 1197 (SHS), 2006 WL 12768, at *18 (S.D.N.Y. Jan. 3, 2006), *aff'd*, 313 F. App'x 347, 351 (2d Cir. 2008) (summary order); *United States* v. *Sabir*, No. 05 Cr. 673 (LAP), 2007 WL 1373184, at *7 (S.D.N.Y. May 10, 2007), *aff'd sub nom. United States* v. *Farhane*, 634 F.3d 127, 158-60 (2d Cir. 2011).

**IV.  No Undue Prejudice Will Result from Accurately Characterizing the Defendant's Acts of Terrorism Before the Jury**

The Court should deny the defendant's motion to preclude the Government from using—and to redact from the Indictment—the terms "terrorist," "extremist," "terrorism," "extremism," "improvised explosive devices," and "IEDs."  (Def. Mem. at 35).

The defendant committed a terrorist attack.  He is to be tried for the "Federal crime[s] of terrorism" charged in the Indictment, 18 U.S.C. § 2332b(g)(5), including crimes set forth in Chapter 113B of Title 18, titled "Terrorism," relating to the use of "weapons of mass destruction," *id.* § 2332a(a) (Counts One and Two), as well as "explosive[s]" and "lethal device[s]," *id.* § 2332f(a)(1) (Count Three).    Thus, the terms challenged by the defendant accurately "summarize[e] the central conduct with which the defendant[ is] charged:  a [plot] to build . . . bomb[s] to attack civilian targets to advance an ideological cause."  *United States* v. *Felton*, 417 F.3d 97, 103 (1st Cir. 2005).  As aptly explained in *Felton*—upon which the defendant relies to no avail—referring to the defendant's self-described attack on "[t]he Kuffar In the[ir] [b]ack Yard" as an act of terrorism and extremism is "certainly an accurate lay use" of those terms, and "it is not easy to think of some softer description to summarize the gist of what the government's evidence suggest[s]."  *Id.*  Recognizing this, the defendant used the terms "terrorism," "terrorist," and "war on terror" in eleven separate questions in his proposed jury questionnaire.  (*E.g.*, Dkt. No. 104 at 9-10).

Similarly, the terms "improvised explosive device" and "IEDs" are accurate descriptions of the bombs the defendant constructed and planted in New York and New Jersey.  These are also technical terms, which the Government expects one or more of its experts will use to identify and

19

describe the types of bombs the defendant made.  *See, e.g.*, *United States* v. *Sheehan*, 838 F.3d 109, 116 (2d Cir. 2016) (describing expert testimony that IED means a device "that it is not commercially made, and . . . contain[s] an explosive main charge, an electrical fuzing system, a main charge container, and a concealment chamber").  The Government should not be prevented from accurately describing some of the weapons the defendant used to carry out his terrorist attack.  Moreover, the terms "improvised explosive device" and "IED" are no more prejudicial or shocking than the objects they describe:  shrapnel-laden devices designed by the defendant to maximize death, injury, and destruction.  Accordingly, the defendant's motion to preclude the Government from using terrorism- and IED-related terms at trial and in the Indictment should be denied.

## V.  The Defendant's Proposed Procedures for Jury Selection Contravene Well-Established Practices

As a matter of procedure as well as substance, the defendant's proposals for jury selection are inconsistent with well-established practices in this District.  The defendant has not identified a persuasive basis for any of these departures, and they should be rejected.

### A.  The Defendant's Proposed Questionnaire Is Inappropriate and Overbroad

The prevailing practice in this District, and the appropriate approach to jury selection in this case, is to use a focused, concise questionnaire to identify bases for for-cause challenges and strikes that will increase the efficiency of the oral *voir dire* process.  *See United States* v. *Rahman*, 189 F.3d at 121 (noting that trial judge may refuse to pursue parties' proposed inquiries "provided the *voir dire* covers the subjects that may arise in the case to ensure that jurors will be impartial" (internal quotation marks omitted)).  There are three areas of potential for-cause challenges that the questionnaire should be designed to identify:  (i) personal connections to the defendant's

attack; (ii) personal bias that would prevent a juror from being fair and impartial; and (iii) scheduling hardship or inability to serve on a jury.

The Government's proposed questionnaire targets these categories and is based on questionnaires used in this District in a number of recent high-profile terrorism cases, including *United States* v. *Fawwaz*, No. 98 Cr. 1023 (LAK) and *United States* v. *Mostafa*, No. 04 Cr. 356 (KBF). (*See* Exs. D (*Fawwaz*), E (*Mostafa*)). The defendant's proposed questionnaire is much broader, and counsel has not even proposed questions for oral *voir dire*. *See United States* v. *Treacy*, 639 F.3d 32, 47 (2d Cir. 2011) (noting court's refusal to use a questionnaire on the basis that "'during the *voir dire*, a huge amount of time will be spent explaining to a juror why he or she misunderstood the question in the questionnaire or finding out that . . . the way he interpreted it was not the way the lawyers interpreted it'" (quoting Judge Rakoff)). The defendant's effort to minimize the importance of oral *voir dire* to the jury-selection process should be rejected, as it hinders the Court and the parties from fully assessing potential jurors' in-person responses and considering whether rehabilitation is appropriate. *See United States* v. *Quinones*, 511 F.3d 289, 299 (2d Cir. 2007) ("[V]oir *dire* ordinarily contemplates seeing the jurors and hearing them speak . . . ." (collecting cases)).

The defense's proposed questionnaire also contains numerous questions that are confusing, duplicative, and/or inappropriately prejudicial. (*E.g.*, Questions 36/37/95/96, 78/101, 62/82, 69/70/71, 82/84, 87/89, 90/91, 102/103/104/105/108/109). Question 111, for example, states incorrectly that evidence relating to motive is "not . . . evidence of a crime." The defendant argues in his motion papers that "travel to Pakistan/Afghanistan, or Islam" are "irrelevant," and that evidence relating to these topics would be "a ploy to convince the jury that he is guilty by

21

association." (Def. Mem. at 21, 32). But he proposes to bring all of these issues to the attention of potential jurors in Question 90. *See United States* v. *Treacy*, 639 F.3d at 47 ("[A] district court may find that warning a jury against an improper bias may be more effective in some cases than inquiring about that bias."). The defendant's proposed questionnaire also seeks improperly to probe potential jurors regarding several other irrelevant and prejudicial topics, such as the "war on terrorism" and counterterrorism policy (*e.g.*, Questions 22-24, 33), immigration (Questions 35, 110), prosecutorial charging decisions (Questions 76, 77), post-sentencing rehabilitation (Question 81), and the penalties faced by the defendant (Question 115). *See Treacy*, 639 F.3d at 47 (affirming district court's refusal in securities fraud case to "specifically interrogate jurors about corporate malfeasance in general"). Finally, the defendant's proposed questionnaire places undue focus on potential jurors' religious beliefs in Questions 18 and 19. *See Rahman*, 189 F.3d at 121-22 (describing more circumscribed approach to "inquiry into ethnic and religious prejudice"); *United States* v. *Salameh*, 152 F.3d at 120-21 (affirming *voir dire* involving single oral question by judge asking potential jurors to "describe your religious views"). These inquiries are unnecessarily invasive, as the focus should be on whether potential jurors' beliefs about Islam prevent them from serving. And for all of these reasons, the Court should reject the defendant's proposed questionnaire and proceed with a document more specifically focused on the appropriate objectives of this component of jury selection.

## B.   The Court Should Not Permit Attorney-Directed Questioning of Potential Jurors

The defendant also seeks to have his attorneys put questions to potential jurors during the *voir dire* process because, in his view, allowing questions from the Court alone "runs the risk that jurors will be less forthcoming." (Dkt. No. 104). His concern is not well-founded.

The Second Circuit has observed that there are "many articles relating the abuses of attorney-controlled [*v*]*oir dire*, which suggest that a reasonable inquiry into the essentials raised in the particular case should be sufficient, and that the trial judge should retain the discretion to apply limits."  *United States* v. *Barnes*, 604 F.2d 121, 142 n.10 (2d Cir. 1979); *see also United States* v. *Dennis*, 183 F.2d 201, 227 (2d Cir. 1950) (Hand, J.) (referring to attorney-conducted *voir dire* "sometimes extending for weeks on end").  Judge Weinfeld also indicated—based on "more than three decades of judicial service"—that he was "persuaded beyond peradventure of doubt" that court-driven *voir dire* was the appropriate way to complete jury selection "expeditiously and with full protection of a defendant's constitutional right to an impartial jury," even in cases involving "the widest publicity . . . over extended periods of time."  *United States* v. *Wilson*, 571 F. Supp. 1422, 1428 (S.D.N.Y. 1983) (citing *Barnes*).  Judge Weinfeld expressed concern that attorney questioning is sometimes used as "a calculated effort to establish a rapport with a juror or jurors in the hope of encouraging partiality in favor of the client."  *Id.*  There is also a risk that improper questions from attorneys will contaminate the entire venire if they are not pre-screened by the Court.  Indeed, this appears to be the objective of the defendant's proposed written inquiries relating to so-called "overcharging," potential penalties, or the sentencing objective of rehabilitation.  Consistent with this authority, every recent terrorism-related case identified by the Government that has been tried in this District—including *United States* v. *Siddiqui*, No. 08 Cr. 826 (RMB) (S.D.N.Y. 2010)—has relied exclusively upon Court-conducted *voir dire*.[11]  The

---

[11] *See, e.g.*, *United States* v. *El Gammal*, No. 15 Cr. 588 (ER) (S.D.N.Y. 2017); *United States* v. *Fawwaz*, No. 98 Cr. 1023 (LAK) (S.D.N.Y. 2015); *United States* v. *Mustafa*, No. 04 Cr. 356 (KBF) (S.D.N.Y. 2014); *United States* v. *Abu Ghayth*, No. 98 Cr. 1023 (LAK) (S.D.N.Y. 2014); *United*

defendant's contention that the attorneys are more capable than the Court of eliciting truthful responses from potential jurors is flawed and, in any event, an unpersuasive basis for rejecting the great weight of the authority counseling against attorney-driven *voir dire*.

### C.   The Defendant's Proposed Schedule Should Be Rejected

The defendant has proposed a schedule for jury selection that would entail administering the questionnaires during the week of October 2, 2017, and commencing oral *voir dire* on October 9.   This schedule would almost certainly result in substantial and unnecessary delay in the commencement of the trial.  (*See* Dkt. No. 104-2 at 33 (proposed defense questionnaire noting that jurors will need to be available "through the beginning (or middle) of November")).   The Government, on the other hand, proposes that the questionnaires be administered no later than the week of September 18, so that oral *voir dire* can begin on October 2.  (*See* Dkt. No. 104-3 at 1).

The Government's proposed schedule seeks to avoid juror-hardship issues relating to Veterans Day (November 10) and Thanksgiving (November 23).   The proposed schedule also factors in additional time prior to October 2 in the event the defendant renews his motion for a change of venue during jury selection, as happened in *Tsarnaev* and *Fawwaz*, or pursues mandamus relief in the Court of Appeals during jury selection, as in *Tsarnaev*.  *See United States* v. *Tsarnaev*, 780 F.3d 14 (1st Cir. 2015); *United States* v. *Fawwaz*, No. 98 Cr. 1023 (LAK), 2015 WL 400621 (S.D.N.Y. Jan. 20, 2015).   In both cases, it took several weeks to administer the

---

*States* v. *Nayyar*, No. 09 Cr. 1037 (RWS) (S.D.N.Y. 2012); *United States* v. *Bout*, No. 08 Cr. 365 (SAS) (S.D.N.Y. 2012); *United States* v. *al Kassar*, No. 07 Cr. 354 (JSR) (S.D.N.Y. 2009); *United States* v. *Kassir*, No. 04 Cr. 356 (JFK) (S.D.N.Y. 2009); *United States* v. *Sabir*, No. 05 Cr. 673 (LAP) (S.D.N.Y. 2007); *United States* v. *Stewart*, No. 02 Cr. 395 (JGK) (S.D.N.Y. 2004).

questionnaires.  Although commencing jury selection in September 2017 may detract from the time available for other aspects of trial preparation, that is a cost borne equally by both of the four-attorney teams that represent the parties in this case.  Accordingly, the Government respectfully submits that the prudent course is to begin the administration of the questionnaires by September 18, and to commence oral *voir dire* on October 2.

<u>**CONCLUSION**</u>

For the foregoing reasons, the defendant's motions *in limine* should be denied.

Dated:  New York, New York
        July 20, 2017

                                        Respectfully submitted,

                                        JOON H. KIM
                                        Acting United States Attorney
                                        Southern District of New York
                              By:       ___/s/_____
                                        Emil J. Bove III
                                        Shawn G. Crowley
                                        Andrew J. DeFilippis
                                        Nicholas J. Lewin
                                        Assistant United States Attorneys

Cc:     Defense Counsel
        (Via ECF)

25