HAD9RAH1

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        16 CR 760 (RMB)

5   AHMAD KHAN RAHIMI,

6              Defendant.

7   ------------------------------x

8                                       New York, N.Y.
                                        October 13, 2017
9                                       9:18 a.m.

10
    Before:
11
                      HON. RICHARD M. BERMAN,
12
                                           District Judge
13                                         and a jury

14                         APPEARANCES

15  JOON H. KIM
         Acting United States Attorney for the
16       Southern District of New York
    EMIL BOVE
17  ANDREW DeFILIPPIS
    SHAWN CROWLEY
18       Assistant United States Attorneys

19

20  FEDERAL DEFENDERS OF NEW YORK
         Attorneys for Defendant
    SABRINA SHROFF
21  MATTHEW LARSEN
    MEGHAN GILLIGAN
22  RACHEL MARTIN

23  ALSO PRESENT:  Special Agent Joanna Maroudas, FBI
    Paralegal Ayushe Misra, U.S. Attorney's Office
24  Paralegal Dante O'Connell, Federal Defenders of NY
    Investigator Anna Finkel, Federal Defenders of NY

25

HAD9RAH1

1                 (Trial resumed; jury not present)

2                 THE COURT:  So, for the attorneys, we gave you an

3        additional copy of the jury instructions this morning.  There

4        are -- I had found a couple of things that needed to be

5        changed.  I don't think there's anything really substantive.

6                 So I'm happy to go through them with you if you want

7        to hear them.  I think there's one on your table, right?

8                 So let me quickly run through them.  They're really

9        very minor, I think.  So on page six, for example, on the

10       second full paragraph I deleted the phrase "the explosive

11       device of" I think that's just randomly there, doesn't belong.

12                And then on -- down on the same page, stipulations I

13       struck "and/or testimony."  Incidentally, I changed on line

14       five, the word "charges" to "charge."

15                On page seven I took a comma out in the seventh line

16       after the word "function."

17                And on page nine the seventh line of the first full

18       paragraph I think the word should be "matter" instead of

19       "manner."

20                Then the next to the last line I think the word should

21       be "crimes" plural instead of "crime."

22                On 13, line 4, I inserted "or she" is an expert after

23       "he is an expert."

24                On page 21, in the paragraph that begins "first," on

25       the next line I think it should be "of," facility of interstate

HAD9RAH1

1    commerce.

2         Page 29, in the second full paragraph, at the end of

3    that line I think it should be "crimes" plural instead of

4    crime.

5         And here on 31 there's a few changes.  So, first, I

6    took out the first three lines, which is the definition of

7    explosion.  The operative word here is "explosive" and that is

8    defined.  There is no use of explosion I don't think in this

9    charge.

10        And then down in, toward the bottom, the last full

11   paragraph, "I have already defined," the phrase I think that

12   should be there, "affecting interstate or foreign commerce for

13   you," instead of "interstate commerce."

14        And then on the top of page 32, where it currently

15   says "damage the building" it should be "damage any building,

16   vehicle, or real or personal property."  I've changed it to

17   read that way.

18        Then in the first two full paragraphs I've changed the

19   word "just" to "previously."

20        On page 37 in the -- toward the bottom of the page I

21   took out the phrase "I have just described for you," because I

22   didn't.

23        On page 39, in the fifth line up from the bottom, I

24   changed "any" to "either."

25        And on page 44, in similar acts, the third line, I

HAD9RAH1

1    changed that to be the "conduct charged" instead of "the

2    charge."

3             And then five lines up from the bottom should be

4    "crimes" plural.

5             Then on page 45 in the second full paragraph, third

6    line it should be "acts" plural instead of "act."

7             I think that's about it.

8             MR. BOVE:  Thank you, Judge.

9             THE COURT:  Yes.

10            MR. BOVE:  Just one issue to raise with respect to the

11   deletion on page 31 of the definition of explosion.  I -- this

12   was in the parties' joint requested charge and I think it was

13   out of place in the submission that we made to the Court and we

14   agree that it should be taken out from page 31.  But we think

15   that it does make sense to include it when your Honor first

16   defines explosive under Count Three.  So I think right now in

17   the charge.

18            THE COURT:  What page and line?

19            MR. BOVE:  25, line 4 is the end of the definition --

20   is the reference to explosion in the definition of explosive.

21            THE COURT:  Page 25, line 4.

22            Yes.  May cause an explosion.

23            MR. BOVE:  So we would ask that rather than deleting

24   the definition of explosion, you just move that definition up

25   to page 25.

HAD9RAH1

1              THE COURT:  After the word explosion?

2              MR. BOVE:  That makes sense to us, Judge.  Thank you.

3              THE COURT:  Is that okay with you?

4              MR. LARSEN:  We think it's self-explanatory.  We agree

5    with the Court's position.

6              THE COURT:  Any other comment?  Anything from the

7    defense?

8              You know what, I think -- I think I'm going to leave

9    it out because all it says is explosion is defined as commonly

10   understood and really what we're talking about there is

11   explosive, even there.  So I don't think there's any harm in

12   not including it, unless somebody feels really strongly about

13   it.  Is that okay?

14             MR. BOVE:  That's fine with us, Judge.

15             THE COURT:  Is that okay?

16             MR. LARSEN:  Yes.

17             THE COURT:  So the jury is here.  We're going to call

18   them in.

19             (Continued on next page)

20

21

22

23

24

25

1          (Jury present)

2          THE COURT:  Please be seated everybody.  And we turn

3     to the defense for summation.

4          MS. SHROFF:  The government warned you yesterday.  We

5     warned you to look out for a cover story.  Ladies and gentlemen

6     of the jury, we have no cover story for you.  At the very

7     beginning of this trial we told you we are not here to

8     challenge every witness and every exhibit.  And we hope that

9     you feel that we kept our word to you.  There were 52

10    witnesses.  Of the 52 witnesses, we cross-examined 25.

11         And as we told you at the beginning of this case, this

12    case hits close to home.  And I was not paying you lip service

13    when I said that.  We did not then and we do not now question

14    the pain, the hurt that each one of those victims felt.  And

15    because we do not doubt the pain and because we accept and feel

16    every part of their hurt, we did not question them, not once.

17         But there were parts of the government's case that we

18    questioned, and the parts of the government's case that we

19    questioned, we questioned them not to distract you.  I hope you

20    also know that.

21         We questioned them -- we questioned those witnesses

22    because it is our right.  It is not just a right but it is our

23    duty.  It is my duty because those questions and the answers

24    that came from those questions allow me to talk to you now and

25    tell you why there are reasons, many reasons to doubt the

HAD9RAH1                    Summation - Ms. Shroff

1    government's case on the 27th Street counts.

2            Those are Counts Two, Five, and Eight of the

3    indictment.  And you should find Mr. Rahimi not guilty on

4    Counts Two, Five, and Eight.

5            So let me talk to you about these three counts.  These

6    three counts accuse Mr. Rahimi of attempting to use a bomb.

7    And as Judge Berman will instruct you, the crime of attempt

8    requires proof, proof beyond a reasonable doubt that the

9    defendant intended to commit a specific offense.

10           Here, in this case that means that the government must

11   prove, it must be proved that Mr. Rahimi intended to set off

12   those bombs that he left on 27th Street and, as the judge

13   will tell you, proof of that intent on each count must be

14   beyond all reasonable doubt.

15           Reasonable doubt is the most difficult of burdens to

16   shoulder.  And for Counts Two, Five, and Eight, and Judge

17   Berman will explain this to you further, if you acquit, as you

18   should, on Counts Two and Five you must also acquit on Count

19   Eight.  In other words, because the government will fail to

20   meet their burden of proof on Two and Five, on Counts Two and

21   Five of the indictment, they also fail to meet their burden on

22   Count Eight.

23           So let me explain what I'm talking about.  The

24   government has the burden of proving far more than Mr. Rahimi

25   possibly or probably intended to use the 27th Street bomb.

1    In fact, the government must prove that he had such an intent

2    beyond all reasonable doubt.  That means that if there is even

3    one reason, one reason alone to doubt whether he truly intended

4    to use the bomb on 27th Street, the government has, in fact,

5    failed to carry their burden of proof.

6            As I said before, this is my opportunity to review the

7    evidence and the lack of evidence with you and show you the

8    reasons to doubt.

9            Now, let's start with the most obvious of facts, the

10   most obvious reason you should doubt.  The bomb on 27th

11   Street was never used.  You know that because the bomb did not

12   go off.  There was no device used on 27th Street.

13           Now in his summation yesterday Mr. Bove called

14   Mr. Rahimi a sophisticated bombmaker, a sophisticated bombmaker

15   who understands how to put these things together and what they

16   will do.

17           You don't have to take my word for it.  You can ask

18   Judge Berman to give you the transcript.  The government said

19   to you such was Mr. Rahimi's sophistication that he planned the

20   Seaside Park and the 23rd Street bombings for months and

21   carried them out with tactical precision.  Mr. Bove pointed to

22   a lot of evidence to support that claim, the claim that they

23   made to you.

24           And if you credit that claim, if you credit what

25   Mr. Bove said to you in his opening statement yesterday, then

1    you must also credit the evidence showing that Mr. Rahimi is

2    someone who knows how to use a bomb if he wants to.

3            So the fact that the 27th Street bomb did not go off

4    is your first reason to doubt whether Mr. Rahimi wanted or

5    intended it to be put to use on 27th Street.

6            Now, Mr. Bove was absolutely right.  He was absolutely

7    right when he told you that a bomb does not have to go off for

8    somebody to be guilty of attempting to use it.  But he was

9    wrong.  He was very wrong, absolutely and totally wrong when he

10   told you that the 27th Street bomb did not go off because two

11   men who found that suitcase handled the bomb in ways that the

12   defendant hadn't and in doing so they dislodged one of the

13   wires, one of the parts of the fusing system.

14           There is no such evidence in this case.  It is

15   speculation from the government and, as Judge Berman will tell

16   you, you cannot and should not base your verdict on

17   speculation.  Not only is it speculation, not only is the

18   government's evidence and argument of yesterday unsupported by

19   the evidence, it is, in fact, contradicted by the very evidence

20   they introduced here.

21           Not only is there no evidence that one of the two men

22   dislodged the wires, the government's own evidence disproves

23   the arguments that they made yesterday to you that the wires

24   were dislodged.  And what was that evidence and who did it come

25   from?  That evidence came from Detective Hallik.

1    Now you all remember Detective Hallik so let's just

2    talk about Detective Hallik.  Detective Hallik is the man who

3    testified, you remember.  He testified that he had worked with

4    bombs for years in Afghanistan, Iraq, and now in New York, for

5    the New York police department bomb squad.  He is the member of

6    the NYPD bomb squad who diffused the 27th Street bomb.

7    Now, how do we know that?  We know that because the

8    government called him as their witness and had him testify to

9    that.  And what else did he testify to?  He testified that when

10    he arrived at 27th Street, you remember he was specifically

11    called to respond to 27th Street, he was shown a picture of

12    the pressure cooker that was at 27th, the device.

13    And what did Detective Hallik say?  He said the first

14    thing we noticed, the first thing -- and remember, he told you

15    he is trained, he's methodical.  He's precise.  He is careful.

16    And he has spent years honing that skill, the skill of

17    observation and evaluation.  He is touching what he called one

18    of the most dangerous devices.  So you know he was careful.

19    He testified that when he first arrived on 27th

20    Street he was shown a photo of the pressure cooker that was

21    there.  He said, and I quote, "The first thing we noticed was

22    there was a cellphone attached to the pressure cooker and wires

23    attached to the cellphone inside the lid of the pressure

24    cooker."  It's not my witness.  It's their witness.

25    Take a look at the testimony, ladies and gentlemen.

1    The first thing Detective Hallik noticed was the cellphone with

2    the wires attached to the pressure cooker.  And what does he

3    tell us that he did after that?  He observed the device and,

4    after the observation, after he took a careful look at the

5    device, he decided on a plan of attack.  That is what he told

6    you.

7        Detective Hallik then went on to explain to all of you

8    that he used a robot to remove the cellphone from the pressure

9    cooker.  He testified, "As I was removing the cellphone, the

10   wires connected to the cellphone going to the lid of the

11   device, they tightened.  They got taught and then snap."  It

12   was then and only then that the wires snapped.  It was then and

13   only then that those wires were dislodged.

14       It is the man who actually diffused the 27th Street

15   bomb, the NYPD bomb squad technician who tells you that he

16   remembers very clearly -- he remembered very clearly that the

17   cellphone wires were attached to the pressure cooker and

18   because they were attached they were tightened when he used the

19   robot to pull the cellphone away and that is when the wires

20   snapped.

21       Ladies and gentlemen of the jury, the wires had not

22   been dislodged before then as the government claimed before you

23   for the first time yesterday.  The wires were there and they

24   were attached.

25       You remember what Detective Hallik told you, what

1    Detective Hallik told you when he was asked about why diffusing

2    the bomb took so long.  What did he say?  He said you don't

3    want to rush.  You do not want to rush my job.  He's absolutely

4    right.  You don't want to rush his job.  Why?  Because he's

5    trained to take his time.  He's trained to observe, to take a

6    look at the device, observe it thoroughly, map out a plan, and

7    then put that plan in action.  And he did precisely that at the

8    scene.  He took his time, was very methodical, and this very

9    methodical person clearly remembered and clearly testified

10   under oath that the phone wires were still attached to the

11   pressure cooker and based on that observation he mapped out a

12   game plan.

13          So that is how we know from Detective Hallik that

14   there is no truth to the government's argument of yesterday and

15   that argument is proven wrong by the government's own witness.

16          Now you must be wondering, you must be wondering why

17   I'm highlighting for you the fact that the wires were still

18   attached to the device.  Doesn't that mean -- doesn't that mean

19   that the bomb was still capable of going off?  The answer is

20   yes.  In fact, even if the wires had been cut the bomb still

21   would have been capable of being used.  But the fact that the

22   bomb was capable of being used does not mean that Mr. Rahimi

23   intended to use it.

24          Now the law draws a line.  It draws a line between

25   acts that are intentional and acts that are callous, acts that

HAD9RAH1                      Summation - Ms. Shroff

1    are dangerous, and even acts that are horribly callous and

2    dangerous.  And, believe me, we know.  We know that that is a

3    very difficult line to walk sometimes, especially when the

4    allegations are such as the allegations in this case, and they

5    are hard to listen to.

6         So, look, you can despise Mr. Rahimi for doing

7    something so heinous as leaving a bomb on 27th Street on a

8    public street in the middle of New York City.  You could.  But

9    leaving a bomb on a public street isn't what Counts Two, Five,

10   and Eight of the indictment allege.  Counts Two Five and Eight

11   of the indictment charge Mr. Rahimi with attempting to use the

12   bomb, use the bomb on 27th Street.

13        And, again, at the risk of repeating myself attempt

14   requires not just leaving a bomb on the street.  It requires

15   the government to prove to you beyond a reasonable doubt that

16   leaving the bomb on a street with the intent that it go off.

17        So, the first reason to doubt Mr. Rahimi's intent is

18   the fact that the 27th Street bomb did not, in fact, go off.

19        Now, the government has told you, it has said

20   repeatedly that the Seaside Park and the 23rd Street

21   explosion show that Mr. Rahimi is a sophisticated bombmaker.

22   They spent a lot of time telling you that.  And they put in a

23   lot of evidence before you yesterday making just that point.

24   They want you to take as a given that Mr. Rahimi is someone who

25   knows how to use a bomb when he wants to.  So the fact that the

1    27th Street bomb did not go off tells you that Mr. Rahimi had

2    no such intent.

3         Now what else tells you that he did not have the

4    intent to set off a bomb on 27th Street?  The alarm.  Let's

5    talk about this alarm supposedly set for 9 p.m. or, as Agent

6    DeFusco called it, the countdown timer.  The government tells

7    you to take as a given, they tell you accept it as true that

8    the cellphone was set to vibrate at 9 p.m.  Take it is what

9    they said.  But I tell you there are serious reasons to doubt

10   that that fact is, in fact, correct.

11        First, 9 p.m. came and went.  No bomb went off.  There

12   was no explosion.

13        Now you heard testimony from Special Agents Mcfarlane

14   and DeFusco.  If there had been an alarm set at 9 o'clock, what

15   would have happened?  They told you -- these are, again, their

16   experts who told you -- they told you that if an alarm had been

17   set for 9 o'clock, then at 9 o'clock the phone would have

18   vibrated.  That vibration would have sent an electrical charge

19   through the wires, through the Christmas light, which would

20   have ignited the chemicals and made the bomb explode.

21        But that didn't happen.  So ask yourself.  Why not?

22   Well, we know it isn't because of the two men who purportedly

23   dislodged the wires.  And it isn't because there was anything

24   wrong with the phone.  And you know there was nothing wrong

25   with the phone.  Why do you know there was nothing wrong with

HAD9RAH1                    Summation - Ms. Shroff

1    the phone?  Because they paraded witness after witness telling

2    you just that.  You remember all of the FBI agents, all of the

3    FBI agents who testified about that phone, starting with

4    Special Agent Enyart.  She testified that she had the phone.

5    She got the phone from 27th Street.  You remember the

6    pictures.  She had them laid out on the ground.  She moved them

7    from one spot to another but didn't take a photo of the phone

8    open.  But she did testify that she got the phone from 27th

9    Street, flipped it open, and saw that the power was on.  She

10   specifically told you -- they called her, remember, after

11   Special Agent Leung.  They called Jill Enyart to tell you.  And

12   that agent was credentialed top to bottom.  And they gave you

13   her credentials, all of the other investigations that she had

14   participated in.

15          So, according to them, and I ask you to accept what

16   the government is saying about her qualifications, she is well

17   trained, she is precise, she knows what she's doing.  She's a

18   special agent of years of experience they told you.  And what

19   did she tell you?  She told you when she turned the phone off

20   it was powered.  The power was on.  Special Agent Enyart noted

21   that the phone was in working order.

22          What did she do with the phone?  She put it in the

23   cardboard box, gave it to another agent, and that agent drove

24   that phone to the FBI lab in Quantico, Virginia.  And, there,

25   they handed over that phone to Agent Mcfarlane and Agent

1    DeFusco.  And both their teams, Agent Mcfarlane's team and

2    Agent DeFusco's team worked on that phone and performed every

3    test imaginable.  They subjected that phone to all kinds of

4    tests.

5            They told you that had the alarm been set and had it

6    gone off as programmed, it would cause the vibrate motor to

7    send a charge through the wires, up the Christmas tree light.

8    And they conducted forensic tests.  They conducted the forensic

9    exams to see if anyone had done that by either calling or

10   texting that phone because they also told you -- the

11   government's own experts told you this -- they told you that

12   they could activate the vibrate motor by doing just that, by

13   calling or texting that phone.

14           So let's go back to the evidence they introduced.

15   Fifty-two witnesses and there is no evidence whatsoever that

16   there were any calls or any texts to that phone.  We saw no

17   evidence of any alarm going off.  None at all.  All we heard

18   was the claim from the government that an alarm had been set

19   for 9 p.m.  And, again, ask yourself, please:  What was that

20   claim based on?  That claim was based on something that Agent

21   Mcfarlane never mentioned in his direct testimony.

22           So I asked him during my cross-examination.  It turns

23   out Mr. Mcfarlane based that claim on an unnamed software

24   program, an unnamed software program written by the FBI, a

25   program that only the FBI uses.  No one knows anything else

1  about that program.  No one else is allowed to peer review it.

2  And nobody else can test it.  Nobody else can find out how it

3  is written or how it is run or whether it's properly written or

4  properly run.  You just have to take their word for it.

5           So I ask you:  Isn't it possible -- isn't it possible

6  that this unnamed, untested, unpeer-reviewed program just did

7  not get it right?  If it had been right and there had been a

8  9 p.m. alarm, then an alarm would have gone off at 9 p.m.  And

9  that alarm would have caused pressure.  And that pressure would

10  have caused the explosion.  And that we know did not happen

11  here.  That is one more reason for you to doubt.

12           And there is yet another reason, ladies and gentlemen

13  of the jury.  It is reason to doubt, even if we assume that

14  there was actually an alarm set for 9 o'clock and, again, I

15  take you back to Agent Mcfarlane.  Agent Mcfarlane admitted

16  that he did not know if that 9 p.m. alarm was, in fact,

17  overridden.  I just want you to recall.  Recall that the 9 p.m.

18  alarm, assuming that it existed at all, it was set -- it was

19  set to go off everyday.  It wasn't set to go off specifically

20  on that day, September 17.

21           And recall that Agent Mcfarlane also told you -- he

22  also admitted that he had no idea and there is no record

23  evidence to tell you who set the alarm, when the alarm was set,

24  or, in fact, it ever was set.  From this, again, Judge Berman

25  will instruct you, you can logically infer that Mr. Rahimi

1    overrode that alarm because he simply did not want to use the

2    bomb on 27th Street.

3            Now you might wonder why Mr. Rahimi would do that,

4    right.  I mean the government has pointed to a lot of evidence

5    that Mr. Rahimi set off the bombs at Seaside Park and 23rd

6    Street and he did so after years of reading and mulling over

7    violent rhetoric from the *Inspire* magazine and lectures of

8    people like Anwar al-Awlaki.

9            But the government really cannot have it both ways.

10    If the government is right in its claims of Mr. Rahimi being a

11    sophisticated bombmaker with only evil in his heart on a

12    mission to kill, then he would have detonated the bomb on

13    27th Street.  He did not.

14            And the evidence suggests one reason why, one

15    additional reason why.  And like the Seaside Park blast there

16    is no evidence that Mr. Rahimi was present for that or heard

17    about it or heard it.  But the evidence does show that he heard

18    the 23rd Street explosion.

19            Several witnesses, none of which we cross-examined,

20    testified, testified as to how loud that explosion was, the

21    sound of the explosion.  Jane Schreibman, the person who called

22    911 and lives three blocks away on 26th Street, she told us.

23    She told us that she heard what turned out to be a bomb on

24    23rd Street when she was on 26th street and thought it must

25    be thunder.  Considering that she heard it, Mr. Rahimi heard it

HAD9RAH1                    Summation - Ms. Shroff

1    too.  The evidence shows he was somewhere, right.  He was

2    somewhere between 23rd and 27th when the 23rd Street

3    explosion occurred.

4            And after he heard that explosion on 23rd Street,

5    the one fact that even the government cannot dispute, is that

6    there were no more explosions.  None.  There was no explosion

7    on 27th Street.  And if you believe the government,

8    Mr. Rahimi had every chance to make that happen.  He could have

9    set the alarm.  He could have called that phone.  He could have

10   texted that phone.  Each of those three things would have set

11   that bomb off.  And you know that did not happen because the

12   bomb did not go off.

13           Now they also showed you a video.  Now what we saw on

14   that video, contrary to what the government wants you to

15   believe, was Mr. Rahimi abandoning that pressure cooker on

16   27th Street.  Not because Mr. Rahimi was stopped by someone

17   not because of a technical defect.  He did so because he chose

18   to.  And that choice was made after he heard the blast on

19   23rd Street.

20           We saw 40 minutes of that video.  For 40 minutes of

21   Mr. Rahimi sitting and thinking.  He was sitting and thinking

22   over what he truly intended to do.  And whatever you decide,

23   whatever you decide that he did on 23rd Street, he did not,

24   did not attempt to use any bomb or any device on 27th.

25           Now the government when they showed you that video

HAD9RAH1                    Summation - Ms. Shroff

1    yesterday called those 40 minutes pauses, pauses that

2    Mr. Rahimi took to stick to his schedule, to stick to his

3    bombing schedule is what they told you.

4         But, ladies and gentlemen, really they cannot have

5    it -- the government cannot have it both ways.  If those were

6    just pauses to accommodate a sophisticated bombmaker's

7    schedule, then he would have used the bomb.  But he did not.

8    He chose not to.  And there is your lack of intent.

9         Now there is even more reason to doubt, more reason to

10   doubt Mr. Rahimi had any alleged intent and that is what he did

11   after he left 27th Street.

12        Now, as you know -- and again there is no doubt of the

13   evidence here -- after leaving 27th Street Mr. Rahimi still

14   had -- and they've told you this over, and over, and over

15   again -- he still had with him a backpack full of six pipe

16   bombs.  Six more chances to set off bombs, six more chances to

17   cause harm, if he had intended to do that.

18        But he did not set off a single one of those six

19   bombs.  Not in Penn Station.  Not anywhere else in Manhattan.

20   Not anywhere on the trains that he took back to get back to

21   New Jersey.  And not anywhere in Elizabeth, New Jersey.

22        And the government has again repeatedly emphasized for

23   you the extreme dangerousness of carrying those pipe bombs

24   around the city in crowded places such as Penn Station.  And we

25   agree.  I mean of course it is dangerous.  It's extremely

1   dangerous.  And extremely uncalled for.  But don't let the

2   government confuse you with this.  The risk, and undoubtedly

3   there is a risk, the risk that one of those bombs might have

4   gone off is not proof that Mr. Rahimi intended it to go off.

5   You may not substitute that for intent.

6           So what does he do when he gets to Elizabeth?  When he

7   arrived at Elizabeth he dropped the backpack in the trash

8   outside the station and, again, very significantly he did not

9   light the fuse.

10          And you know, again through the government's

11  witnesses, that to set off those bombs you have to light the

12  fuse.  But not a single one was lit.  There is no -- there is

13  no debate about that.  The record evidence is clear.  Not one

14  was lit.  No fuse was lit.

15          We did hear how the robot accidentally detonated one

16  of those pipe bombs.  And they testified that they could have

17  gone off and that one accidentally did, in fact, go off.  But,

18  again, that is not proof that Mr. Rahimi intended it to go off.

19  And it certainly isn't proof that he intended the 27th Street

20  bomb to go off.

21          Now, look, there was a passage of time and Mr. Rahimi

22  had every opportunity to use the bomb on 27th Street.  He did

23  not.  And do not -- do not let the government in their rebuttal

24  tell you or suggest, as it did in its opening, that this was

25  not for lack of trying.

1              As we know from the evidence, the two men didn't stop

2      him.  There was nothing wrong with the cellphone.  Those are

3      not the reasons.  So let's review the reasons we have so far to

4      doubt whether Mr. Rahimi ever intended the bomb to go off.

5              The bomb never goes off.

6              Second, the bomb never went off despite Mr. Rahimi

7      having countless opportunities to use it.

8              Third, the bomb never went off despite there being

9      nothing standing in Mr. Rahimi's way.  And we've seen -- I've

10     already told you this -- there were no wires that were

11     dislodged and nothing was wrong with that phone.

12             Fourth, the claim of the 9 p.m. alarm being set comes

13     from the FBI's untested software program and quite possibly got

14     things wrong given that nothing happened at 9 p.m.

15             Fifth, even if that program was right and even if

16     there was an alarm, they told you that -- their own witness

17     told you that Mr. Rahimi could have overridden that alarm.  And

18     quite possibly that is true because the alarm didn't go off.

19             So these are all reasons to doubt Mr. Rahimi's intent.

20             And then there are six more reasons.  There are six

21     more reasons when you think of the chances he had and refused

22     to set off those six pipe bombs.

23             A sophisticated bombmaker, any sophisticated bombmaker

24     who is intent on setting off that explosive and killing as many

25     people as possible would simply light the fuse and leave.  If

1    he really wanted to kill as many people as possible as the

2    government would have you believe, he would not have passed up

3    the opportunity to do so to set off those six pipe bombs.

4         But Mr. Rahimi did pass up that opportunity.

5         Now, again, in their main summation yesterday the

6    government listed for you some of the things that it says,

7    according to them, show Mr. Rahimi's intent with the 27th

8    Street bomb.  I think I've responded to all of them.  I've

9    talked to you about the 9 p.m. alarm.  And I'm not going to go

10   over that because I've done it already.

11        But the government has also cited the fact that

12   Mr. Rahimi left that bomb on the street and from that they ask

13   you to say that he had that intent.  But, again, I've already

14   told you leaving the bomb on a street is not enough.

15   Callousness, carelessness, is not intent.  No matter what they

16   say on their rebuttal do not confuse that with intent.

17        They also told you that you can infer -- you should,

18   they said, in fact, infer this intent.  And then they talked to

19   you quite a bit about how the pressure cooker was packed with

20   BBs and shrapnel.  You remember they brought you that little

21   pressure cooker here.  And they said to you that that obviously

22   means -- that was the word he used, "obviously," obviously

23   means that Mr. Rahimi intended to use it.  Mr. Bove came up to

24   you, to the jury box, to the sill here and he pretended to put

25   it together for you, put that dangerous device and said it

HAD9RAH1                    Summation - Ms. Shroff

1    obviously shows Mr. Rahimi's intent.

2              Whenever the government says "obviously," you should

3    take a hard look at what the government uses and means for that

4    word.  To say "obviously" to satisfy their burden to try and

5    meet the standard that is as demanding as proof of a reasonable

6    doubt, you should reject their invitation.

7              The government also talked to you and made several

8    references to the dangerousness of the bomb and the good luck,

9    the miracle that it did not go off accidentally.  Again, that's

10   not intent.  Of course a bomb was dangerous.  It's a bomb.  It

11   was dangerous.  And, of course, of course we're grateful that

12   it did not go off.  But that does not take you to -- that does

13   not mean the government has met its burden of proof on whether

14   or not Mr. Rahimi intended to use that bomb.  If he had that

15   intent for all of the time that passed, for his trip from

16   New York to New Jersey he could have, he would have set off

17   that bomb.  Nothing stood in his way.

18             Finally, where they started, the government started

19   with what they call Mr. Rahimi's letter, the letter, the

20   letter -- his written confession.  But, again, that is just yet

21   another attempt to try and confuse on the issue of intent.

22   What matters is not what Mr. Rahimi wrote in that notebook but

23   what he did and what he did not do, what he did not do on

24   27th Street and thereafter.  He did not use the bomb.  He did

25   not set off the bomb.  He did not detonate the bomb on 27th

1    Street.  And he did not set off any one of those six pipe

2    bombs.

3            Look, from all of the evidence that you've heard here

4    and from all of what the government has told you about

5    Mr. Rahimi, you have no reason to do him any favors.  Okay.

6    And we're not asking you to do Mr. Rahimi any favors.  What

7    we're asking you to do is simply what you have already agreed

8    to do, why we all chose you to serve as jurors here, what you

9    said you would do, and that's all really I'm asking you to do.

10           I'm simply asking you to hear the arguments I have

11   made today and to then hold the government to their burden of

12   proof beyond a reasonable doubt.

13           Now, they also told you yesterday in deliberating on

14   the counts charged that you should use your common sense.  I

15   say that to my 14-year-old all the time.  Of course, use your

16   common sense.  What does your common sense tell you here?  Your

17   common sense tells you that this is a man who knows how to

18   detonate a bomb and if he wanted to he would have.  He would

19   have done so on 27th Street and he would have done so with

20   the additional six pipe bombs that he had.

21           At any point over the next day-and-a-half, he had a

22   day-and-a-half as he made his way through three busy bus train

23   stations, traveling back to New Jersey, at any point the whole

24   day-and-a-half more he could have set off any one of those

25   seven bombs and he did not.  There would have been seven more

1    explosions, and there were not.

2            Now you already know this but I will repeat it here.

3    Mr. Rahimi is facing some very serious charges with respect to

4    the 23rd Street and whatever you decide on 23rd Street

5    charges, whatever you decide on those charges, there are still

6    multiple reasons for you to doubt his guilt on Counts Two,

7    Five, and Eight.  He is not guilty on Counts Two, Five, and

8    Eight.

9            So I'm done.  I have not sought to distract you.  And

10   I hope we kept our word of what we said at the opening.  And

11   this is a difficult case.  It is a difficult case for all of

12   us.  We are really all New Yorkers.

13           And I am going to sit down now because I'm done with

14   my argument to you.  And the government gets another chance.

15   They do.  They get to get up now and they get one more round,

16   their rebuttal summation.  And when they do I really do not

17   know what they will say and I have no way to get back up and,

18   you know, it never fails, no matter how many times you stand up

19   in front of a jury, when you sit back down you always say to

20   yourself:  I should have is said this, or I should have

21   mentioned that, I forgot this.

22           But I am confident that you who have been listening to

23   all of us, every one of us carefully and thoroughly, and I

24   thank you for listening to me, that you have the answers to

25   rebut anything that Mr. DeFilippis throws at me after I sit

HAD9RAH1                    Rebuttal - Mr. DeFilippis

1    down.  You've listened to all of the facts.  And I know that

2    you will be able to answer anything he says on the points that

3    I have raised in my summation to you this morning.

4           You have all the answers and all the answers take you

5    to one place and one place alone on Counts Two, Five, and

6    Eight.  On Counts Two, Five, and Eight he, Mr. Rahimi, is not

7    guilty.

8           I really do thank you very much for listening to me

9    and serving as jurors today.

10          THE COURT:  Thank you, Ms. Shroff.

11          Counsel.

12          MR. DeFILIPPIS:  Thank you, your Honor.

13          Ladies and gentlemen, what you just heard was a cover

14   story.  And it was a cover story straight out of the al-Qaeda

15   playbook.

16          Ladies and gentlemen, you saw video after video in

17   this case in which the defendant walked away, walked away from

18   the crimes he was committing, his terrorist attack, walking

19   away from one bomb to plant another bomb, walking away so he

20   wouldn't get caught before the attack was complete, walking

21   away so that he wouldn't get hurt while others bled, walking

22   away from the victims he targeted, the innocent men, women, and

23   children he tried to kill.  And today, ladies and gentlemen,

24   the defendant is trying to walk away one last time from that

25   bomb on 27th Street.

HAD9RAH1                    Rebuttal - Mr. DeFilippis

1              Ladies and gentlemen, he's admitting what he can't

2     deny and he's denying what he can't admit.  He can't deny the

3     overwhelming evidence, the mountains of evidence that he

4     planted that bomb on 23rd Street and knew it would go off,

5     wanted it to go off.  And now he's trying to slither out of

6     what he wanted to do on 27th Street because your common sense

7     tells you what he wanted to do on 27th Street, ladies and

8     gentlemen.  You heard today a partial confession through

9     Ms. Shroff that everything else you saw and heard about that

10    day happened and it happened because he wanted to.

11             And it's an insult to your common sense to think that

12    this is a case of half intent, that is a case of cold feet.

13    This was not cold feet, ladies and gentlemen.  This was cold

14    and calculating attack.  This was cold blood.

15             Now, ladies and gentlemen, as I said this was a cover

16    story.  We're going to walk through just exactly why it's a

17    cover story, why you know, why the common sense, why your

18    common sense and the evidence shows you that it was a cover

19    story.

20             Let's look first, ladies and gentlemen, on the

21    instructions, the source, the inspiration that the defendant

22    follows and planned to carry out these attacks.  *Inspire*

23    magazine.  Al-Qaeda's magazine.  It says "Have a convincing

24    cover story for anything suspicious.  The story needs to be

25    good enough to convince a jury if you ever get that far."

HAD9RAH1                    Rebuttal - Mr. DeFilippis

1          Ladies and gentlemen, you have paid close attention.

2     You've been attentive and carefully looked at, listened to the

3     evidence.  And I know that the defense's argument is not going

4     to be enough to convince you because the defendant is guilty of

5     each and every count in that indictment.

6          So let's go through Ms. Shroff's arguments one by one.

7     And let's first consider the idea that the defendant somehow

8     set out from his house that morning with a series of bombs,

9     nine bombs in his backpack, and that he somehow only wanted

10    some of them to go off.  He wanted to do a partial attack,

11    carry around a bunch of bombs that only some would explode.

12         That's ridiculous, ladies and gentlemen.  That is

13    ridiculous.  You saw the image of him leaving Elmora that

14    morning, 5:09 a.m. on his way to Seaside Park where he would

15    detonate a bomb.  And after that another bomb on 23rd Street.

16    And after that another bomb planted on 27th Street.  You know

17    that his plan was set before he walked out the door that day

18    because he walked out the door that day with all the equipment

19    he needed to carry out the attack he wanted to.

20         Now, ladies and gentlemen, the defense has made a big

21    point of the fact that that 27th Street bomb did not go off

22    and has implied to you that that is itself a

23    get-out-of-jail-free card, a legal defense.  It is not a legal

24    defense, ladies and gentlemen.  The fact that the bomb didn't

25    go off has nothing to do with whether the defendant attempted

1    to commit the attack on 27th Street.

2              Why?  I expect the judge is going to instruct you that

3    as long as the defendant took substantial steps in furtherance

4    of his crime he's guilty of attempt.  You didn't just see the

5    defendant take the substantial steps.  You saw him take step,

6    after step, after step as he went through Penn Station carrying

7    that bomb, as he went through the streets of Manhattan carrying

8    that bomb, as he planted the one on 23rd Street and took more

9    steps, bringing it to its ultimate destination, as he turned

10   and looked at that hotel across the street encased in glass

11   windows and left the bomb there on 27th Street across the

12   street from an outdoor restaurant.

13             Ladies and gentlemen, if the defendant hadn't intended

14   that bomb to go off, if he hadn't intended to kill people, he

15   could have done any number of things.  He could have taken it

16   back with him.  He could have called 911.  He could have

17   announced to the world that he no longer wanted to carry out

18   these attacks.  He didn't do that.

19             He left that bomb there with high explosives, HMTD,

20   explosives that Robert Mothershead, the government's expert,

21   told you and that David DeFusco, the government's other expert

22   told you, could detonate, could explode through friction,

23   through jostling, through movement.  He left it there knowing

24   that.

25             Now, ladies and gentlemen, the defense has said that

HAD9RAH1                      Rebuttal - Mr. DeFilippis

being reckless is not -- that being reckless is not enough.
And I want to bring up to you a slide that you saw yesterday
about Count Five.  That's the attempted destruction of property
count pertaining to the 27th Street bomb.

Ladies and gentlemen, there are three elements.

That the defendant used an explosive in an attempt to
destroy property.

Ladies and gentlemen, by placing that bomb there alone
knowing it contained high -- HMTD a high explosive, black
powder, another explosive, by placing it there in the middle of
busy Manhattan, he attempted to use it.  He attempted to use it
as he approached there to place it there.  He took substantial
steps to put people in grave danger.  And how do you know
that's enough?

Because if you look at the third element as to whether
the defendant acted maliciously, that is satisfied.  I expect
the judge will instruct you if he used an explosive with the
intent to cause damage or harm, or in a reckless disregard to
the likelihood of damage or harm.

Ladies and gentlemen, your common sense tells you he
intended to cause damage and harm.  If the defendant had his
way, there would have been bodies on the street on 27th
Street.  That's what he wanted at 23rd Street.  That's what
he wanted on 27th Street.

But let's take the defense's ridiculous argument and

1    entertain it for a moment.  Let's say all he intended to do was

2    place this bomb there.  Let's say you didn't hear from Agent

3    DeFusco or Michael Mcfarlane, two of the government's experts

4    who described to you how the Christmas tree light was perfectly

5    configured so that if it received the electric charge it would

6    go off.

7              Let's pretend you didn't hear any of that.  Let's

8    pretend all you knew was that this defendant walked up to that

9    mailbox, placed this bomb there knowing what he put in it.

10    That's enough.  He attempted to use it.  He placed it there.

11    So, ladies and gentlemen, your job is not as difficult as the

12    defense has tried to make it sound.

13              Now let's get a little bit more specific about some of

14    the arguments they made.

15              You heard a lot of talk about this alarm.  And it was

16    difficult to hear from the defense's argument whether -- did

17    they intend you to believe that the alarm was set or it wasn't?

18    In the beginning Ms. Shroff said it was set for 9 p.m.  And

19    then she talked about Mr. Mcfarlane's report and tried to cast

20    doubt on it because it was based on an FBI program.

21              Ladies and gentlemen, your common sense tells you it

22    makes complete sense that that alarm was set for 9 p.m. and it

23    makes complete sense that the defendant wanted it to go off.

24    Why?  Because you saw the scheduled precision that he acted

25    with as he planted the other bomb.  He showed up a little bit

1  early on 23rd Street and he sat on those church steps.

2          Now Ms. Shroff wants you to believe that that's

3  because he was thinking about what he wanted to do.  Ladies and

4  gentlemen, he wasn't thinking about what he wanted to do.  He

5  wasn't getting cold feet.  As Mr. Bove explained to you, that

6  bomb went off at 8:30.  It had a cellphone attached to it.  You

7  saw it, the little scraps of LG cellphone from that phone.  You

8  know that that phone was set for 8:30 and he wanted to leave

9  about a half-hour so that he could walk away, walk away from

10  that bomb, so he was in safety, while other people felt the

11  blast, and go on to 27th Street.  And again, ladies and

12  gentlemen, he waited, he paused, and then he placed the bomb.

13  You know that a 9 p.m. alarm showing up wasn't a wake-up alarm.

14  You know that alarm was intended to make that bomb go off.

15          Now you heard a lot of discussion about these two men,

16  Mr. Bove's assertion yesterday that these two men who came up

17  to the bomb jostled it likely disarming it.  Now, Ms. Shroff

18  was simply misguided and perhaps didn't understand the

19  configuration of this bomb.

20          MS. SHROFF:  Objection.

21          THE COURT:  Overruled.

22          MR. DeFILIPPIS:  If we could bring up Government

23  Exhibit 302-6.

24          Ladies and gentlemen, Ms. Shroff was very focused on

25  the wires on the outside of this bomb and she made a big

HAD9RAH1                    Rebuttal - Mr. DeFilippis

1    pointed of fact that Detective Hallik, when he defused the

2    bomb, when he detached those wires, that they couldn't have

3    been detached before because that's what Detective Hallik did.

4              Ladies and gentlemen, Mr. Bove was not referring to

5    those wires here, the wires on the outside of the bomb.  There

6    were wires -- the wires went into the phone.  There were wires

7    inside the pot attached to the Christmas tree lights.  There

8    were any number of reasons why jostling this by those two men

9    could disarm this bomb, prevent it from doing what the

10   defendant wanted it to do.

11             Ladies and gentlemen, it is a ridiculous assertion to

12   say that the defendant would carry six bombs in a backpack, two

13   bombs in luggage, bring them to the site, to one site, let that

14   bomb go off -- Ms. Shroff conceded that he heard that bomb go

15   off -- let it go off and then place another one in a place just

16   crowded enough to cause damage and he hoped death but not so

17   crowded that it wouldn't be discovered in time he hoped.

18             Ladies and gentlemen, it was a miracle that those two

19   men just happened to walk by, expose this bomb and allow Jane

20   Schreibman to pick it up, to call 911, the very thing that this

21   defendant would have done if he really had gotten cold feet, if

22   he didn't want that bomb to go off.  That's not what the

23   defendant did.  He left that bomb there.  He walked it there

24   knowing what it contained and under the law that is enough for

25   him to have used it, excuse me -- to attempt to use that bomb.

1          Now another definition that you'll be asked to

2    consider in the jury instructions, ladies and gentlemen, is a

3    destructive devise.  Was this a destructive device?  Is the

4    defendant guilty of carrying a destructive device in his

5    attempt to set off the bomb at 27th Street?

6          Ladies and gentlemen, this is my point about the HMTD,

7    about the Mothershead testimony you heard about how volatile

8    and dangerous it is.  That bomb was a destructive device,

9    ladies and gentlemen.  It includes any explosive bombs in a

10   device is considered a destructive device so long as it is

11   capable of exploding.  No plausible argument there, ladies and

12   gentlemen.  No discussion.  The defendant attempted to use a

13   destructive device on 27th Street.

14         Now, ladies and gentlemen, the defense also argued

15   that the government can't have it both ways.  They argue that

16   the defendant knew how to set off a bomb if he wanted to.  He

17   was sophisticated.  He would have if he wanted to.  That

18   argument does not pass the smell test, ladies and gentlemen.

19   You read his journal.  "Bombs will be heard in the streets."

20   Bombs.  Not one bomb.

21         The defendant knew how to build a bomb.  He spent

22   months in his bedroom making that HMTD which was found in his

23   bedroom.  He spent months with that black powder.  He knew how

24   to make a bomb but, as you heard from Mr. Mcfarlane,

25   Mr. DeFusco, they're extremely technically complicated.  There

1    are any number of reasons why a bomb might not go off.  Why

2    after designing it with all the proper circuitry, with an

3    igniter, with a fuel why the bomb might not go off.  And the

4    question for you is:  Was that the design of the bomb?  Was

5    that a miracle that saved lives but not a miracle of the

6    defendant's making?

7              And I want to remind of you Government Exhibit 303-1A.

8              Ladies and gentlemen, this is the cellphone that was

9    on that bomb, the cellphone that bore his fingerprint on the

10   inside of that phone, right where the wire is connected to make

11   its murderous circuitry work.

12             So you know that in the months he planned this attack

13   he took scientific precision and care to construct these

14   devices, to make sure they worked.  He made every effort to

15   make these tools of murder and jihad.

16             And it makes no sense to think that he would

17   successfully plant a bomb in Seaside Park, one that went off.

18   It makes no sense to think he wouldn't hear or know that that

19   bomb went off.  That was his plan.  Obviously he would check.

20   He would know before moving on to the second phase of his plan

21   whether the first one went off.  And Ms. Shroff concedes he

22   knew that the second one went off.  So they want you to believe

23   that a man who spent months constructing these devices, getting

24   instruction from al-Qaeda's playbook, from ISIS, that he

25   suddenly decided he didn't want them to go off.  It doesn't

HAD9RAH1                    Rebuttal – Mr. DeFilippis

1    pass the smell test, ladies and gentlemen.  It's not true.

2              Now, another argument they made in this regard is

3    about these Elizabeth bombs, the six bombs found near the train

4    station.  And once again, ladies and gentlemen, this is a

5    pathetic defense.  They want you to believe that the fact that

6    he left six pipe bombs with high explosives at a train station

7    two hours before rush hour, the fact that he left them there is

8    a defense, shows he didn't want to kill people, that he didn't

9    want that 27th Street bomb to go off.

10             Now the fuses on those bombs, it's true, they weren't

11   lit.  But, again, ladies and gentlemen what was in those bombs?

12   HMTD.  You heard Agent DeFusco tell you how even the slightest

13   movements of those bombs, to that material, is like smacking a

14   cobra.  You may do it once, twice, three times, nothing will

15   happen.  But it's not something that you should do.

16             Ladies and gentlemen, the reason the defendant didn't

17   light those bombs is because after stalking through Manhattan,

18   planting his bombs, the core part of his attack was complete.

19   He carried those bombs back to Penn Station.  You saw the video

20   of him with the backpack.  If he no longer wanted to carry out

21   his jihad, he wouldn't have done that.  He waited before he

22   went back to New Jersey.  Remember, it was the next afternoon

23   before he went back.  Because he knew that if he were to go

24   immediately through Penn Station, an area full of police and

25   security, he knew he might get caught.  And those bombs, the

way they were designed, they were different.  They weren't

bombs to plant and leave.  They were bombs he could use if the

police were to come after him, use them like grenades.  He

could use them to fend off an attack in case people came for

him.  Ladies and gentlemen, they do not negate in any way the

defendant's intent for the 27th Street bomb to go off.

Now at the end of the day, ladies and gentlemen, we've

asked you throughout this trial to use your common sense.

We've asked you to look at the evidence.  And the evidence here

is overwhelming.  The defendant planned a methodical,

calculated and cold-blooded attack, an attack that began with

his radicalization in 2012, that continued in that summer of

2016, as he carefully constructed these bombs, as he made his

way to Seaside Park, as he made his way into Manhattan to

23rd Street and then onto 27th Street.

Ladies and gentlemen, this is a cover story.  It

doesn't matter whether 27th Street bomb, how it was

configured, whether that configuration was ultimately

successful.  A bank robber who goes into a bank holds up the

teller and his gun doesn't work, he's still a bank robber.  A

kidnapper who takes his victim and the victim gets away at the

last minute, he's still a kidnapper.  The fact that the

defendant's plan failed on 27th Street is not a defense.

And I submit to you, ladies and gentlemen, that the

most powerful evidence of his intent is what you saw at 23rd

HAD9RAH1                    Rebuttal - Mr. DeFilippis

Street.  In carrying out those acts, the defendant answered the
call of ISIS, the call of al-Qaeda.  His duty, as he saw it,
was jihad and his goal was to kill as many New Yorkers as he
could.

         Ladies and gentlemen, that was his duty as he saw it.
Now it's your time.  It's time for you to do your duty as
jurors.  And here in this American courtroom you have one job
and one call and that is to render a fair and impartial verdict
based on the evidence and the evidence alone.  That's what you
promised to do when you raised your hand in front of this Court
and each other.  You promised to do justice, a form of justice
that the defendant certainly wasn't willing to provide the
victims of his bombings.

         Ladies and gentlemen, it's a heavy duty.  It's an
important duty, but in some ways your job here is easy.  That's
because the evidence just doesn't leave any room for the
conclusion that the defense is asking you to draw.  Every bit
of the defendant's action, every bit of his planning, every bit
of his execution on that day tells you, shows you, proves to
you that he wanted more bloodshed, more destruction.

         There was no doubt, ladies and gentlemen, in the voice
of Vicky Feria as she got up on that stand and told you how the
defendant's bombs made her family drop in terror, shattering
her windows, but not her will to go on despite her
disabilities.

1          There was no doubt in the voice of Helena Ayeh who was

2     feet away from being killed by that huge dumpster, nearly lost

3     her eye but got through the night with the help of a stranger

4     who told her to pray.

5          There was no doubt in the testimony of Tsitsi Merritt

6     when she told you through tears how she looked at her

7     ten-year-old son lifeless and unresponsive in the back of a

8     car.

9          There was no doubt in Cort Cheek's description of the

10    quote "doomsday" he saw from his wheelchair.

11         And there was no doubt, ladies and gentlemen, in the

12    testimony of NYPD Detective Jason Hallik who disarmed the

13    defendant's bomb, the bomb he wanted to go off, and prevented

14    another doomsday on 27th Street.

15         Ladies and gentlemen, in carrying out his jihad, his

16    holy war, the defendant violated each and every count of that

17    indictment, each and every one.  And in carrying out your

18    duties as jurors you should reach the one conclusion that's

19    consistent with the law, with the evidence, and with justice,

20    which is that the defendant is guilty as charged.

21         THE COURT:  Thanks a lot.

22         (Continued on next page)

23

24

25

HADQRAH2

1          THE COURT:  (Continued) What is next is the jury

2     charge or jury instructions.  They take a good hour or so,

3     maybe a little bit more.  Why don't we take a really short

4     break, and then we will get to that.  Thanks.

5          (Jury recessed)

6          MR. LARSEN:  Your Honor, we have some issues to raise

7     without the jury, or should we do that now?

8          THE COURT:  It's a very strange time to raise issues.

9          MR. LARSEN:  There are objections to the government's

10    rebuttal.

11         THE COURT:  I will hear them later.

12         MR. LARSEN:  We are making them because we think they

13    require, at minimum, instructions to the jury.

14         THE COURT:  I don't understand that, actually, because

15    rebuttal is just argument of lawyers; it's not fact of any

16    kind, and if you had them, you probably should have asked for a

17    sidebar while he was making them.  I'm not entertaining legal

18    issues at this time.

19         MR. LARSEN:  You're refusing to entertain our

20    objections?

21         THE COURT:  No, I'm asking you to put them in writing

22    and submit them to me in the proper fashion.  I'm not doing it

23    on the fly at this point in time.  I'm going to bring in the

24    jury, and I'm going to give them the jury instructions.

25         MR. LARSEN:  I feel obliged to raise issues, your

HADQRAH2

1    Honor.

2              THE COURT:  Well, I know you do, but I just gave you

3    the answer.

4              MR. LARSEN:  We've made --

5              THE COURT:  I just gave you the answer, counsel.

6    Enough is enough.

7              MR. LARSEN:  So I understand the Court will not hear

8    an oral objection?

9              THE COURT:  Get the jury, please.

10             MS. SHROFF:  Your Honor, I'm sorry, I need one minute

11   with Mr. Larsen.

12             THE COURT:  We are calling the jury in right now.

13             (Jury present)

14             THE COURT:  Everybody please be seated.

15             We are up to the point, as I said before, when I read

16   to you the final jury instructions or charges.  They are, and

17   often are, they are in this case, rather lengthy.  It's

18   probably going to take at least about an hour or so to get

19   through them.  You are certainly free and welcome to take notes

20   if you wish, but you should know that it is my practice to give

21   each of the jurors a verbatim copy of the instructions that I'm

22   going to read to you to take into the jury room.  I think that

23   may help in your deliberations.

24             Generally, so you get a sense of what I am about to

25   read, there are two overall types of instructions:  Those that

we use in virtually every case and those that explain the

specific eight counts in this case.  In my opinion, in

understanding these counts, those charges that relate to the

counts in the case and the elements of each count, they are

somewhat technical in nature and that's why I think you may be

helped by having these written instructions later on for your

deliberations.

So you have now heard all of the evidence in the case,

as well as the final arguments of the lawyers for both sides.

My duty at this point is to instruct you as to the law.  It is

your duty to accept these instructions of law and apply them to

the facts as you determine them, just as it has been my duty to

preside over the trial and decide what testimony and what

evidence is relevant under the law for your consideration.

On these legal matters, you must take the law as I

give it to you.  If any attorney has stated a legal principle

different from any that I state to you in my instructions, it

is my instructions that you must follow.

You should not single out any instruction as alone

stating the law, but you should consider my instructions as a

whole when you retire to deliberate in the jury room.  As I

said before, you will receive a copy of these instructions

along with a verdict sheet to be filled out by the jurors, and

to take that with you also into the jury room.  Your decision,

your verdict, must be unanimous.

HADQRAH2

1        You should not, any of you, be concerned about the

2    wisdom of any rule that I state regardless of any opinion that

3    you may have as to what the law may be or ought to be.  It

4    would violate your sworn duty to base a verdict upon any other

5    view of the law than the one I give you.

6        Your role, as I have said earlier, since the first day

7    we met, is to consider and decide the fact issues in this case.

8    You, the members of the jury, are the sole and exclusive

9    determiners of the facts.  You pass upon the evidence; you

10    determine the credibility or believability of the witnesses;

11    you resolve whatever conflicts may exist in the testimony; you

12    draw whatever reasonable inferences and conclusions you decide

13    to draw from the facts as you have determined them; and you

14    determine the weight of the evidence as well.

15        In determining the facts, you must rely on your own

16    independent recollection of the evidence.  What the lawyers

17    have said in their opening statements and in their closing

18    arguments, in their objections or in their questions is not

19    evidence, nor is anything I may have said during the trial or

20    may say during these instructions about a fact issue to be

21    taken instead of your own independent recollections.  What I

22    say is not evidence.  In this connection, remember that a

23    question put to a witness is never evidence.  It is only the

24    answer that is evidence.  But you may not consider any answer

25    as to which I sustained an objection or that I may have

directed you to disregard or that I may have directed be struck from the record.

        If there is any difference or contradiction between what any lawyer has said in their arguments to you and what you decide the evidence showed or between anything I may have said and what you decide the evidence showed, it is your view of the evidence -- not the lawyers' and not mine -- that controls.

        I also ask you to draw no inference from the fact that upon occasion I may have asked questions of certain witnesses. These questions were intended only for clarification or to move things along, and certainly were not intended to suggest any opinions on my part as to the verdict you should render or whether any of the witnesses may have been more credible than any other witnesses. It is important that you understand that I wish to convey no opinion as to the verdict you should render in this case, and that if you nevertheless believe that I did convey an opinion, you would not be obliged in any way to follow it.

        In determining the facts, you must weigh and consider the evidence without regard to sympathy, prejudice or passion for or against any party and without regard to what the reaction of the parties or the public might be to your verdict. I will later discuss with you how to pass upon the credibility of the witnesses.

        We've talked about the indictment in this case. The

HADQRAH2

1    indictment is not evidence.  It merely describes the charges or

2    counts made against the defendant, of which there are eight.

3    It is a set of accusations.  It may not be considered by you as

4    evidence of the guilt of the defendant.  Only the evidence or

5    lack of evidence decides that issue.

6            A copy of the indictment will be furnished to you when

7    you begin your deliberations along with these instructions and,

8    by the way, along with the exhibits in this case.

9            Count One of the indictment charges the defendant with

10   using a weapon of mass destruction in connection with his

11   alleged involvement with a pressure cooker device that

12   detonated on September 17, 2016 on 23rd Street in Manhattan.

13   Throughout my instructions, I will refer to this as the 23rd

14   Street device.

15           Count Two charges the defendant with using a weapon of

16   mass destruction and attempting to use a weapon of mass

17   destruction in connection with his alleged involvement with a

18   pressure cooker device that was recovered on September 17, 2016

19   from 27th Street in Manhattan.  Throughout my instructions, I

20   will refer to this as the 27th Street device.

21           Count Three charges the defendant with bombing a place

22   of public use in connection with his alleged involvement with

23   the 23rd Street device.

24           Count Four charges the defendant with destroying

25   property by means of an explosive in connection with his

HADQRAH2

1    alleged involvement also with the 23rd Street device.

2            Count Five charges the defendant with attempting to

3    destroy property by means of an explosive in connection with

4    his alleged involvement with the 27th Street device.

5            Count Six charges the defendant with transporting an

6    explosive in interstate commerce in connection with his alleged

7    involvement with both the 23rd and 27th Street devices.

8            Counts Seven and Eight charge the defendant with using

9    and carrying a destructive device during and in relation to a

10   crime of violence or possessing a destructive device in

11   furtherance of a crime of violence.  Count Seven relates to the

12   defendant's alleged possession and use of the 23rd Street

13   device, and Count Eight relates to the defendant's alleged

14   possession and use of the 27th Street device.

15           Let's talk a minute about evidence.  The evidence from

16   which you are to decide what the facts consist of include:

17           First, the sworn testimony of witnesses on both direct

18   and cross-examination;

19           Second, the documents and exhibits that were received

20   into evidence;

21           And, third, any stipulations of fact.

22           Nothing else is evidence.

23           You should draw no inference or conclusion for or

24   against any party by reason of lawyers making objections or my

25   rulings on such objections.  Counsel have not only the right

HADQRAH2

1    but the duty to make legal objections when they think that such

2    objections are appropriate.  You should not be swayed for or

3    against either side simply because counsel for any party has

4    chosen to make an objection, nor should you be swayed by any

5    ruling I made on an objection.  Whether or not I may have

6    sustained more objections for one side or the other has no

7    bearing on your function to consider all of the evidence that

8    was admitted during the trial.

9         Further, please do not concern yourself with what was

10   said at sidebar conferences or during my discussions with

11   counsel, nor does it make any difference whether any lawyer or

12   I asked for a sidebar conference.  Those discussions related to

13   rulings of law and not to matters of fact.

14        At times I may have admonished a lawyer or a witness

15   or directed a witness to be responsive to questions or to keep

16   his or her voice up.  At times I may have questioned a witness

17   myself or made comments to a lawyer.  Any questions that I

18   asked or instructions or comments that I gave were intended

19   only to move things along or to clarify the presentation of

20   evidence and to bring out something which I thought may have

21   been unclear.  You should draw no inference or conclusion of

22   any kind, favorable or unfavorable, with respect to any witness

23   or any party in the case by reason of any comment, question or

24   instruction of mine, nor should you infer that I have any views

25   as to the credibility of any witness, as to the weight of the

HADQRAH2

1    evidence or as to how you, the jury, should decide any issue

2    that is before you.  That is entirely your role.

3          The defendant has pled not guilty to the charges in

4    the indictment.  As a result of his plea of not guilty, the

5    burden is on the prosecution, as you've heard; that is to say,

6    the government, to prove the defendant's guilt beyond a

7    reasonable doubt.  This burden never shifts to the defendant

8    for the simple reason that the law never imposes upon a

9    defendant in a criminal case the burden or duty of testifying

10   himself or calling any witnesses or of locating or producing

11   any evidence.

12         The law presumes the defendant to be innocent of the

13   charges against him.  I, therefore, instruct you that the

14   defendant is to be presumed by you to be innocent when the

15   trial began and throughout your deliberations and until such

16   time, if it comes, that you as a jury are unanimously satisfied

17   that the government has proved him guilty beyond a reasonable

18   doubt.

19         The presumption of innocence alone is sufficient to

20   acquit the defendant unless you as jurors are unanimously

21   convinced beyond a reasonable doubt of his guilt, after a

22   careful and impartial consideration of all of the evidence in

23   this case.  If the government fails to sustain its burden as to

24   the defendant, you must find him not guilty.

25         So what about reasonable doubt?  I have said that the

HADQRAH2

1   government must prove the defendant guilty beyond a reasonable

2   doubt, and the question naturally is, what is reasonable doubt?

3   The words alone almost define themselves.  It is a doubt based

4   upon reason and common sense.  It is a doubt that a reasonable

5   person has after carefully weighing all of the evidence.  It is

6   a doubt which would cause a reasonable person to hesitate to

7   act in a matter of importance in his or her personal life.

8   Proof beyond a reasonable doubt must, therefore, be proof of

9   such a convincing character that a reasonable person would not

10  hesitate to rely and act upon it in the most important matters

11  of his or her own affairs.  A reasonable doubt is not a caprice

12  or a whim.  It is not a speculation or a suspicion.  It is not

13  an excuse to avoid the performance of an unpleasant duty.  And

14  it is not sympathy.

15          In a criminal case, the burden is at all times upon

16  the government to prove guilt beyond a reasonable doubt.  The

17  law does not require the government to prove guilt beyond all

18  possible doubt.  Proof beyond a reasonable doubt is sufficient

19  to convict.  The burden never shifts to the defendant, as I

20  said, and that means that it is always the government's burden

21  to prove each of the elements of the crimes charged beyond a

22  reasonable doubt.

23          If after fair and impartial consideration of all the

24  evidence you have a reasonable doubt, it is your duty to acquit

25  the defendant.  On the other hand, if after fair and impartial

HADQRAH2

1    consideration of all of the evidence you are satisfied of the

2    defendant's guilt beyond a reasonable doubt, you should vote to

3    convict.

4            You have had the opportunity now to observe all of the

5    witnesses, including expert witnesses.  It is now your job to

6    decide how believable each witness was in his or her testimony.

7    You are the sole determiners of the credibility of each witness

8    and of the importance of witness testimony.

9            So how do you determine where the truth lies?  Well,

10   you should use all the tests for truthfulness that you would

11   use in determining matters of importance to you in your

12   everyday lives.  You should consider any bias or hostility that

13   a witness may have shown for or against any party as well as

14   any interest the witness has in the outcome of the case.  It is

15   your duty to consider whether the witness has permitted any

16   such bias or interest to color his or her testimony.

17           You should consider the opportunity that the witness

18   had to see, to hear, and to know the things about which they

19   testified, the accuracy of their memory, their candor or lack

20   of candor, their intelligence, the reasonableness and

21   probability of their testimony and its consistency or lack of

22   consistency, and its corroboration or lack of corroboration

23   with other believable testimony.  You watched the witnesses

24   testify.  Everything a witness said or did on the witness stand

25   counts in your determination.  How did the witness appear?

HADQRAH2

What was the witness' demeanor while testifying?  Often it is
not what people say but how they say it that moves us.

In deciding whether to believe a witness, keep in mind
that people sometimes forget things.  So you need to consider
whether in such a situation the witness' testimony reflects an
innocent lapse of memory or an intentional falsehood, and that
may depend on whether it has to do with an important fact or
with only a small detail.  It is not the number of witnesses
called in a case but rather their credibility when called to
the witness stand that is directly at issue.

In addition, the fact that a witness may be employed
as a law enforcement official does not mean that his or her
testimony is deserving of more or less consideration or greater
or lesser weight than that of an ordinary witness.

If you find that any witness has willfully testified
falsely as to a material fact; that is, material meaning an
important matter, the law permits you to disregard completely
the entire testimony of that witness upon the principle that
one who testifies falsely about one material fact is likely to
testify falsely about everything.  But you are not required to
consider such a witness as totally unworthy of belief.  You may
accept so much of the witness' testimony as you deem true and
disregard what you feel is false.  As the sole judges of the
facts, you must decide which of the witnesses you will believe,
what portion of their testimony you accept and what weight you

HADQRAH2

1    will give to it.

2          Let's just talk a minute about expert testimony.

3    You've heard from what we call expert witnesses:  Aaron Zelin

4    was one.  He talked about terrorist groups.  He's an expert in

5    that field.  Abdelmajid Fouad, an English-Arabic translation

6    expert; DJ Fife, a fingerprint expert; Michael McFarlane, an

7    electronics device forensic expert; heather LaSalle, a DNA

8    analysis expert; Robert Mothershead, a forensic chemical

9    analysis expert; and David DeFusco, an explosives analysis

10   expert.  An expert is allowed to express his or her opinion on

11   matters about which he or she has specialized knowledge and

12   training.  Expert testimony is presented to you on the theory

13   that someone who is experienced in the field can assist you in

14   understanding the evidence or in reaching an independent

15   decision on the facts.

16         In weighing the expert's testimony, you may consider

17   the expert's qualifications, his or her opinions, his or her

18   reasons for testifying, as well as all of the other

19   considerations that ordinarily apply when you are deciding

20   whether to believe a witness' testimony.  You may give expert

21   testimony whatever weight, if any, you find it deserves in

22   light of all of the evidence in the case.  You should not,

23   however, accept this witness' testimony merely because he or

24   she is an expert, nor should you substitute it for your own

25   reason, judgment and common sense.  The determination of the

HADQRAH2

facts in this case, as I've said before, rests solely with you, the jurors.

There are two kinds of evidence: One is called direct evidence and the other is circumstantial evidence. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally experienced through his or her senses. So, something seen, something felt, something touched, something heard or something tasted. Direct evidence may also be in the form of an exhibit where the fact to be proven is its present existence or condition.

Circumstantial evidence is evidence which tends to prove a disputed fact by proof of other facts. There is a simple example of circumstantial evidence that is often cited by myself and other judges.

Assume that when you came into the courtroom this morning the sun was shining and it was a nice day. Assume that the courtroom blinds are drawn, as they are, and you cannot look outside. Assume further that as you are sitting here, someone walked into the courtroom with an umbrella that was dripping wet. Then a few minutes later another person also entered the courtroom with a wet umbrella. Now, you cannot look outside of the courtroom windows because, as I said, the blinds were drawn and so you cannot see directly whether or not it is raining, so you have no direct evidence of that fact. But on the combination of facts which I've asked you to assume,

HADQRAH2

it would be reasonable for you to conclude that it had been
raining.

That is all there is to circumstantial evidence.  You
infer on the basis of reason and experience and common sense
from one established fact the existence or non-existence of
some other fact.  The matter of drawing inferences from facts
in evidence is not a matter of guesswork or speculation.  An
inference is a logical, factual conclusion which you might
reasonably draw from other facts that have been proved.
Circumstantial evidence is of no less value than direct
evidence.  The law makes no distinction between direct evidence
and circumstantial evidence but simply requires that your
verdict must be based on all of the evidence that's been
presented to you.

Now we are going to move to the eighth counts in this
case.  Let's talk first about Counts One and Two.  They relate
to the use and attempted use of a weapon of mass destruction.

The federal law that defendant is charged with
violating in Counts One and Two is a provision of the United
States Code referred to as 18 United States Code Section
2332a(a)(2) and that section provides as follows.  I'm going to
quote it and then I'm going to explain it to you.  So it says
that:  A person who, without lawful authority uses ... or
attempts to use a weapon of mass destruction ... against any
person or property within the United States and either -- I'm

HADQRAH2

going to give you four options here -- either (1) the mail or
any facility of interstate or foreign commerce is used in
furtherance of the offense; or (2) such property is used in
interstate or foreign commerce or in an activity that affects
interstate or foreign commerce; or (3) any perpetrators travels
in or causes another to travel in interstate or foreign
commerce in furtherance of the offense; or (4) the offense, or
the results of the offense, affect interstate or foreign
commerce; or, in the case of an ... attempt ... would have
affected interstate or foreign commerce, such a person has
committed a crime.

To satisfy its burden of proof with respect to the
crimes charged in Count One and Count Two, each count specifies
one crime, so in connection with Counts One and Two, the
government must under this statute that I've just read to you,
establish the following four elements beyond a reasonable
doubt.

First, that the defendant knowingly used, or, with
respect to Count Two, attempted to use, a weapon of mass
destruction.

Second, that the defendant knowingly used or attempted
to use a weapon of mass destruction against a person or against
real or personal property in the United States.

Third, that the defendant did not have lawful
authority to use or attempt to use the weapon of mass

HADQRAH2

1       destruction.

2               Fourth is also an either/or situation.  Fourth, either

3       (1) the mail or any other facility of interstate commerce was

4       used in furtherance of the crime; or (2) the property involved

5       was used in interstate or foreign commerce or in an activity

6       that affects interstate or foreign commerce; or (3) the

7       defendant traveled in interstate commerce in furtherance of the

8       crime; or (4) the offense or the results of the offense

9       affected interstate or foreign commerce.

10              So I have just described four elements.  You may think

11      I did it in detail.  I'm going to describe in more detail each

12      of those four elements.

13              The first element:  The use or attempted use of a

14      weapon of mass destruction.

15              So the first element that the government must prove

16      beyond a reasonable doubt is that the defendant knowingly used

17      or attempted to use a weapon of mass destruction.  A weapon of

18      mass destruction for the purpose of Counts One and Two is

19      defined to include, among other things, any explosive or

20      incendiary bomb or similar device.

21              The word "knowingly" means that the act was done

22      voluntarily and intentionally and not because of a mistake or

23      an accident or mere negligence or some other innocent reason.

24              The word "unlawfully" simply means contrary to law.

25      The defendant need not have known that he was violating any

particular law or rule.  The defendant need only have been
aware of the generally unlawful nature of his acts.

Count One charges the defendant with using a weapon of
mass destruction in connection with the 23rd Street device.
Count Two charges the defendant with both using a weapon of
mass destruction and attempting to use a weapon of mass
destruction in connection with the 27th Street device.

If you find that the government has proven beyond a
reasonable doubt that the defendant did, in fact, use a weapon
of mass destruction with respect to Count Two, then you do not
have to consider the question of whether the defendant also
attempted to use a weapon of mass destruction.  If, however,
you find that the government has not proven beyond a reasonable
doubt that the defendant used a weapon of mass destruction, you
must then consider with respect to Count Two whether the
government has proven that the defendant attempted to use a
weapon of mass destruction.

In order to find the defendant guilty on Count Two
under an attempt theory, the government must prove beyond a
reasonable doubt the following two items, two things:

First, that the defendant intended to commit the crime
charged, as I have and will describe that crime to you; and

Second, the defendant willfully took some action that
was a substantial step in an effort to bring about or
accomplish the crime.

HADQRAH2

1          Mere intention to commit a specific crime does not
2    amount to an attempt.  To convict the defendant of an attempt,
3    you must find beyond a reasonable doubt that the defendant
4    intended to commit the crime charged and that he took some
5    action that was a substantial step toward the commission of the
6    crime.  In determining whether the defendant's actions amounted
7    to a substantial step toward the commission of the crime, you
8    must distinguish between mere preparation on the one hand and
9    the actual doing of the criminal deed on the other.
10          Mere preparation, without more, is not an attempt.  On
11    the other hand, some preparations when taken together may
12    amount to an attempt.  The question for you to decide is
13    whether the acts of the defendant clearly indicate a willful
14    intent to commit the crime and whether those acts are a
15    substantial step in a course of conduct planned to culminate in
16    the commission of the crime.
17          If you find, therefore, that the government has proven
18    beyond a reasonable doubt that the defendant knowingly used a
19    weapon of mass destruction, or with respect Count Two, that he
20    attempted to use a weapon of mass destruction, then the first
21    element of this offense is satisfied.
22          Conversely, if you find that the government has not
23    proven beyond a reasonable doubt that the defendant knowingly
24    used a weapon of mass destruction or with respect to Count Two,
25    that he attempted to use a weapon of mass destruction, then the

HADQRAH2

first element of the offense is not satisfied.

So the second element:  The second element used or attempted to be used against property within the United States. The second element that the government must prove beyond a reasonable doubt for purposes of both Counts One and Two is that the weapon of mass destruction described in each count was knowingly used or, with respect to Count Two, was attempted to be used against a person or against real or personal property within the United States.

I have already defined the terms "knowingly" and "attempt" for you.  Those definitions apply here as well.

The United States for the purposes of these offenses include the 50 states of the United States, the District of Columbia and the commonwealths, territories and possessions of the United States.

"Property" includes, among many other things, land and buildings.

If you find, therefore, that the government has proven beyond a reasonable doubt that the weapon of mass destruction was knowingly used or attempted to be used against a person or against real or personal property within the United States, the second element of the offenses charged in Counts One and Two is satisfied.

Conversely, if you find that the government has not proven beyond a reasonable doubt that the weapon of mass

HADQRAH2

destruction was knowingly used or attempted to be used against

a person or against real or personal property within the United

States, then the second element of the offenses charged in

Counts One and Two is not satisfied.

The third element:  The defendant did not have lawful

authority to use or attempt to use the weapon of mass

destruction.

The third element that the government must prove

beyond a reasonable doubt for the purpose of Counts One and Two

is that the defendant did not have lawful authority to use or

attempt to use the weapon of mass destruction related to each

count.

Lawful authority in this context would require that a

person be expressly permitted and authorized by law to possess

and use a weapon of mass destruction.

Thus, if you find that the government has proven

beyond a reasonable doubt that the defendant did not have

lawful authority to use or attempt to use the weapon of mass

destruction described in each count, the third element of

Counts One and Two is satisfied.

Conversely, if you find that the government has not

proven beyond a reasonable doubt that the defendant did not

have lawful authority to use or attempt to use the weapon of

mass destruction described in each count, then the third

element of Counts One and Two is not satisfied.

HADQRAH2

1          And the fourth element is relating to interstate

2     commerce.  So the fourth element that the government must prove

3     beyond a reasonable doubt for purposes of both Counts One and

4     Two relates to interstate commerce and is called a

5     jurisdictional element.  As I said or attempted to say before,

6     there are four ways that the government must meet its burden as

7     to this element of Counts One and Two.  Let me try and explain

8     each of those.

9          First, the government may prove that the mail or other

10    facility of interstate commerce was used in furtherance of the

11    crime.

12         The term "interstate commerce" means commerce which

13    affects more than one state.  It includes commercial activity

14    between any place in one state and another place outside that

15    state.  It also includes commerce activity wholly within one

16    state and another place outside that state.  It also includes

17    commercial activity wholly within one state but which has a

18    substantial affect on commerce between or among the states.  It

19    also includes any movement or transportation of people,

20    including the defendant, goods or merchandise from one state to

21    another.

22         The term "facility of interstate commerce" includes

23    any means of transportation and communication.  So that is one

24    aspect of satisfying the jurisdictional element.

25         The second is that the government may prove that the

HADQRAH2

1    property involved; that is, the property targeted by the weapon

2    of mass destruction, was itself used in interstate or foreign

3    commerce or in an activity that affects interstate or foreign

4    commerce.

5        A third way that the government may prove that the

6    defendant traveled in interstate commerce -- I'm sorry.  The

7    third manner is that the government may prove that the

8    defendant traveled in interstate commerce in furtherance of the

9    crime.

10        Or, fourth, the government may prove that the offense

11    or offenses or the results of the offenses affected interstate

12    or foreign commerce.  It is only necessary the government prove

13    beyond a reasonable doubt that the crime had some minimal

14    effect on interstate commerce.  It is not necessary to find

15    that the defendant knew or intended that his actions would

16    affect interstate commerce.

17        The government does not need to prove each of these

18    four alternatives.  It need only prove one.  But you must as a

19    jury unanimously determine as to which one you think has been

20    proven.

21        If you find, therefore, that the government has proven

22    beyond a reasonable doubt any one of these four alternatives

23    regarding interstate commerce, then the fourth element of the

24    offense is satisfied.

25        Conversely, if you find that the government has not

HADQRAH2

proven beyond a reasonable doubt any one of these four

alternatives, then the fourth element of the offense is not

satisfied.

          Now we move to Count Three, termed bombing a place of

public use.  The federal law that the defendant is charged with

violating in Count Three is a provision of the United States

Code designated 18 U.S.C. Section 233f, and that provision

provides as follows.  So I will read, as I did before, the text

and then try to explain each element more fully.

          Whoever unlawfully delivers, places, discharges or

detonates an explosive or other lethal device in, into or

against a place of public use ... with the intent to cause

death or serious bodily injury or ... with the intent to cause

extensive destruction of such a place, where such destruction

results in or is likely to result in major economic loss [has

committed a crime if] ... the offense takes place in the United

States and ... [either] the offense is committed in an attempt

to compel another state or the United States to do or abstain

from doing any act ... [or] a victim is a national of another

state or a stateless person.

          To satisfy its burden of proof with respect to the

crime charged in Count Three, the government must establish

each of the following four elements beyond a reasonable doubt:

          First, that the defendant knowingly delivered, placed,

discharged or detonated an explosive in, into or against a

HADQRAH2

place of public use in the vicinity of W. 23rd Street in New
York City.

Second, that the defendant did so either intending to
cause death or serious bodily injury or intending to cause
extensive destruction of a place of public use, where extensive
destruction results in, or was likely to result in, major
economic loss.

The third element of this offense is that the offense
took place in the United States.

And the fourth element is that either the offense was
committed in an attempt to compel the United States to do or to
abstain from doing any act or that the victim is a national of
another country.

So, as is my practice, we are going to go into these
elements in somewhat more detail.

So the first element:  Knowing delivery, placement,
discharge or detonation of an explosive device, in, into or
against a place of public use.  What does that mean?

The first element that the government must prove
beyond a reasonable doubt for the purpose of Count Three is
that the defendant knowingly delivered or placed or discharged
or detonated an explosive judge in, into or against a place of
public use in the vicinity of W. 23rd Street in New York City.

The term "place of public use" means those parts of
any building, land, street or other location that are

HADQRAH2

accessible or open to members of the public whether

continuously, periodically or occasionally and also encompasses

any commercial, business, cultural, historical, entertainment,

recreational or similar place that is so accessible and open to

the public.

        The term "explosive" means "gunpowders or powders used

for blasting, all forms of high explosive, blasting materials,

fuses (other than electrical circuit breakers), detonators and

other detonating agents, smokeless powders ... and any chemical

compounds, mechanical mixture or device that contains any

oxidating and combustible units or other ingredients, in such

preparations, quantities or packing that ignition by fire, by

friction, by concussion, by percussion or by detonation of the

compound, mixture or device or any part thereof may cause an

explosion."  Also included within the statute's definition of

"explosive" is "dynamite and all other forms of high explosives

... any bomb, grenade, missile or similar device and ... any

incendiary bomb or grenade, fire bomb, or similar device,

including any device which ... consists of or includes a

breakable container including a flammable liquid or compound

and a wick composed of any material which, when ignited, is

capable of igniting such flammable liquid or compound and ...

can be carried or thrown by one individual acting alone."

        If you find, therefore, that the government has proven

beyond a reasonable doubt that the defendant knowingly

HADQRAH2

delivered or placed or discharged or detonated a explosive in, into or against a place of public use, then the first element of this offense charged in Count Two is satisfied.

Conversely, if you find that the government has not proven beyond a reasonable doubt that the defendant knowingly delivered or placed or discharged or detonated an explosive in, into or against a place of public use, then the first of element of this offense charged in Count Three would not be satisfied.

The second element:  The intent to cause death, serious bodily injury or extensive destruction.

The second element that the government must prove beyond a reasonable doubt for the purpose of Count Three is that the defendant committed the crime either intending to cause death or serious bodily injury or intending to cause extensive destruction in a place of public use where extensive destruction results in, or was likely to result in, major economic loss.

As you can see, there are two alternative ways the government may prove this element:  First, by proving that the defendant committed the crime intending to cause death or serious bodily injury.  Or, second, by proving that the defendant committed the crime with the intent to cause extensive destruction to a place of public use where that destruction resulted in, or was likely to result in, major

HADQRAH2

1    economic loss.  The government does not need to prove both of

2    these types of intent.  It need only prove one.  But you must

3    be unanimous as to which, if either, type of intent you find.

4        The term "serious bodily injury" means bodily injury

5    which involves any one of the following:  A substantial risk of

6    death or extreme physical pain, or protracted and obvious

7    disfigurement, or protracted loss or impairment of the

8    functions of a bodily member, organ, or mental faculty.

9        If you find, therefore, that the government has proven

10   beyond a reasonable doubt either of the two types of intent

11   that I have just described to you, then the second element of

12   the offense is satisfied.

13       Conversely, if you find that the government has not

14   proven beyond a reasonable doubt either of the two types of

15   intent I have just described to you, then the second element of

16   the offense is not satisfied.

17       The third element:  That the offense took place in the

18   United States.

19       The third element that the government must prove

20   beyond a reasonable doubt for the purpose of Count Three -- we

21   are still talking about Count Three -- is that the offense took

22   place in the United States.

23       I have already defined "United States" for you and

24   that same definition applies here.

25       Thus, if you find that the government has proven

HADQRAH2

1    beyond a reasonable doubt that the offense took place within
2    the United States, then the third element of the offense is
3    satisfied.

4            Conversely, if you find that the government has not
5    proven beyond a reasonable doubt that the offense took place
6    within the United States, the third element of the offense is
7    not satisfied.

8            Fourth element:  That the offense was committed to
9    compel the United States to do or to abstain from doing any act
10   or that a victim is a national of another country or state.
11   "State" here means country.

12           The fourth element that the government must prove
13   beyond a reasonable doubt for purposes of Count Three is either
14   that:  The offense was committed in an attempt to compel the
15   United States to do or to abstain from doing any act, or that
16   the victim is a national of another state as defined just a
17   minute ago.

18           As you can see, there are two alternative ways the
19   government may prove this element.  First, the government may
20   prove that the offense was committed in an attempt to compel
21   the United States to do or to abstain from doing any act.  Or,
22   second, the government may prove that the victim of the offense
23   is a national of another state.

24           The government does not need to prove both of these
25   alternatives, but you must agree unanimously that the

HADQRAH2

1    government has proven beyond a reasonable doubt at least one of

2    them.

3             For purposes of Count Three, the term "national of

4    another state" means, among other things, a citizen of another

5    country.

6             If you find, therefore, that the government has proven

7    beyond a reasonable doubt either of these two alternatives as I

8    have just explained them to you, the fourth element of the

9    offense is satisfied.

10            Conversely, if you find that the government has not

11   proven beyond a reasonable doubt either of these two

12   alternatives as I've just explained them to you, then the

13   fourth element of the offense is not satisfied.

14            Let's do Counts Four and Five, and then we are going

15   to take a lunch break, and then after that lunch break, I will

16   do the rest of the counts:  Count Six, Count Seven, Count Eight

17   and then some more general instructions.  Let's talk about

18            Counts Four and Five termed destruction and attempted

19   destruction of property by means of explosives.

20            The federal law that defendant is charged with

21   violating in Counts Four and Five is a provision of the United

22   States Code titled 18 United States Code 2332f and it provides

23   in relevant part:

24            Whoever maliciously damages or destroys, or attempts

25   to damage or destroy by means of ... an explosive, any

HADQRAH2

building, vehicle or other real or personal property used in

interstate or foreign commerce or in any activity affecting

interstate or foreign commerce [is guilty of a crime].

To satisfy its burden of proof with respect to the

crimes charged in Counts Four and Five, the government must

establish each of the following three elements beyond a

reasonable doubt:

The first element is that the defendant used an

explosive to damage or destroy, or in an attempt to damage or

destroy, property.

Second, that the property was used in or affecting

interstate or foreign commerce.

Third, that the defendant acted maliciously.

So let's take each element one at a time, each of

those three elements.

The first element:  Use of an explosive to damage or

destroy, or attempt to damage or destroy, property.

For purposes of Counts Four and Five the first element

that the government must prove beyond a reasonable doubt is

that the defendant used an explosive to damage or destroy, or

in an attempt to damage or destroy, property.

Remember that Count Four charges the defendant with

destruction and attempted destruction of property by means of

an explosive in connection with the 23rd Street device.  So for

this count, you must find that the government has proven beyond

HADQRAH2

1    a reasonable doubt either that the defendant either damaged or

2    destroyed property or that he attempted to damage or destroy

3    property.  The government does not have to prove both.  It need

4    only prove one or the other, but you must be unanimous as

5    jurors as to which, if either, you choose.

6          Count Five charges the defendant with attempted

7    destruction of property by means of an explosive in connection

8    with the 27th Street device.  So, with respect to Count Five,

9    the government must prove beyond a reasonable doubt that the

10   defendant used an explosive in an attempt to damage or destroy

11   property.

12         I have already defined "explosive" to you in my

13   instructions relating to Count Three, and you can refer to that

14   in the written instructions that you will have.

15         I have already also defined the concept of "attempt"

16   to you in my instructions in Count Two, and I refer you to

17   those instructions here as well.

18         If you find, therefore, that the defendant damaged or

19   destroyed or attempted to damage or destroy property by means

20   of explosives, then the first element of Counts Four and Five

21   is satisfied.

22         Conversely, if you find that the government has not

23   proven beyond a reasonable doubt that the defendant damaged or

24   destroyed, or attempted to damage or destroy, property by means

25   of explosives, the first element of Counts Four and Five is not

HADQRAH2

satisfied.

So the second element:  That the property was used in or affecting commerce.

The second element that the government must prove beyond a reasonable doubt for the purposes of Counts Four and Five is that the property was used in or affecting interstate or foreign commerce.

I have already defined "affecting interstate or foreign commerce" for you in connection with my instructions on Counts One and Two, and I refer you to those instructions here for the definitions.

For the purposes of Counts Four and Five, the government does not have to prove that the materials used to destroy or damage any building, vehicle, or real or personal property were in or affecting interstate commerce.  The government also does not have to prove that the defendant knew that the property was actively used for some commercial purpose.

If you find, therefore, that the government has proven beyond a reasonable doubt that the property in question comes within the definition of "property used in or affecting interstate commerce" as I have previously described that to you, then the second element of Counts Four and Five would be established.

Conversely, if you find that the government has not

HADQRAH2

1  proven beyond a reasonable doubt that the property in question

2  comes within the definition of "property used in or affecting

3  interstate commerce" as I have previously described it to you,

4  then the second element of Counts Four and Five would not be

5  satisfied.

6        The third element:  Malicious intent.

7        The third element that the government must prove

8  beyond a reasonable doubt for purposes of both Counts Four and

9  Five is that the defendant acted with malicious intent.

10        To act with malicious intent means to act either

11  intentionally or with a willful disregard of the likelihood

12  that damage will result, and not mistakenly or carelessly.  In

13  order to find the defendant guilty, you must find that the

14  defendant used the explosive with the intent to cause damage or

15  harm or that he did so recklessly and without regard to the

16  likelihood that such damage or harm would result.

17        So we have just been talking about Counts Four and

18  Five.  With respect to Count Four alone, this additional

19  instruction, and this will be reflected on your verdict sheet

20  as well.

21        So, with respect to Count Four only, if, and only if,

22  you find that the government has proven beyond a reasonable

23  doubt the above three elements, then you must consider one

24  additional question with regard to Count Four:  Has the

25  government also proven beyond a reasonable doubt that the

HADQRAH2

defendant's conduct; that is, his alleged planting and
detonation of the 23rd Street device directly or proximately
resulted in injury to another person.

"Directly caused" means that the conduct of the
defendant directly resulted in an injury to another person.

"Proximately caused" means that there was a sufficient
causal connection between the act of the defendant and the
injury of another person.  An act is a proximate cause if it
was a substantial factor in bringing about or actually causing
injury; that is, if the injury was a reasonably foreseeable
consequence of the defendant's act.

Personal injury means any injury, no matter how
temporary or severe.  It includes physical pain as well as any
burn, cut, abrasion, bruise, disfigurement, illness or
impairment of a bodily function.

For purposes of this inquiry, it is not relevant
whether the defendant intended for his unlawful conduct to
cause injury to another person.  The question being asked of
you here is, having already found beyond a reasonable doubt
that the defendant committed the offense alleged in Count Four
of the indictment, do you additionally find that his unlawful
conduct in fact caused injury to another person.

I will note now that before you retire to
deliberate -- I think I referred to this before, but I will
mention it right here -- I am going to provide you with a

HADQRAH2

1    verdict sheet or verdict form.  That is the form that you will

2    use to record your verdict.  You will see when you get into the

3    jury room that there is a question on the verdict form that

4    asks you to record if you vote to convict the defendant on

5    Count Four asks you an additional question, whether you

6    unanimously find that the government has additionally proven

7    beyond a reasonable doubt that the defendant's unlawful conduct

8    caused injury to another person.

9            So I think we are going to stop here for a break.  I

10   have to do Counts Six, Seven and Eight and then some additional

11   instruction.  This is a good time to take a lunch break.  So I

12   am going to give you today until 2:00.  You have two hours.  If

13   you want to use the cafeteria, you may.

14           I'm sorry.  I'd forgotten.  So we've got lunch for you

15   ordered.  I think it's going to arrive, if it hasn't, by 12:30,

16   somewhere around there.  So we are not finished with the

17   instructions so you are not to deliberate.  You may go out

18   after you eat or whenever you like, but be back at 2:00.  All

19   right?  See you later.

20           (Jury recessed)

21           THE COURT:  Ms. Shroff, Mr. Rahimi wished to leave

22   around 12:00, as I understood.

23           MS. SHROFF:  I appreciate that, your Honor.  Could he

24   leave?

25           THE COURT:  Yes.

HADQRAH2

1          MR. LARSEN:  Your Honor, would the Court --

2          THE COURT:  Would you just relax for a minute,

3     Mr. Larsen.  Please be seated.

4          Before I thought it was inappropriate to raise an

5     objection at the end of rebuttal.  I said you could write

6     something to me, what your objection was, and I'm going to

7     reiterate that.  If you would like to preview what you are

8     going to write, I would like what you are going to write to be

9     here in an hour and to give the government an opportunity to

10    respond in writing if they wish.  But I will hear a preview of

11    your objections.

12         MR. LARSEN:  There are three grounds for our

13    objections, your Honor.  In its rebuttal argument, the

14    government misstated the law, attempted to shift the burden to

15    the defense, and misstated the facts in front of the jury.

16         First on misstating the law, the government said, "As

17    long as Mr. Rahimi took a substantial step, he is guilty of

18    attempt.  Leaving the bomb on the street, under the law that is

19    enough for attempt."

20         As your Honor has instructed the jury, that is not

21    enough for attempt.  There are two elements for attempt.  There

22    is substantial step and intent.  The government misstated the

23    law and did so grossly, and on the element that we are alleging

24    the government failed to prove beyond a reasonable doubt,

25    that's our defense.

HADQRAH2

1          Secondly --

2          THE COURT:  Hold on.  These are arguments that go to

3    the rebuttal?

4          MR. LARSEN:  Indeed.

5          THE COURT:  So, one is that the Mr. DeFilippis

6    misstated the law?

7          MR. LARSEN:  Yes, the requirements for finding by

8    attempt.  He mentioned only the substantial step requirement

9    stating, "As long as he took a substantial step, he is guilty.

10   Leaving the bomb on the street, under the law that is enough

11   for attempt."

12         THE COURT:  OK, I got it.

13         MR. LARSEN:  Secondly, your Honor, with respect to

14   Count Five, he also misstated the law.  He focused on the third

15   element, the malicious intent element and said essentially that

16   recklessness or carelessness suffices.  He, however, ignored

17   the first element of Count Five, which your Honor just

18   described in his charge, which is attempt, and that charge

19   properly states that attempt is defined under Count Two as

20   requiring both substantial step and intent.

21         That's on page 30 of the jury instructions.

22         Next, your Honor, burden shifting.

23         THE COURT:  This is three?

24         MR. LARSEN:  Yes.  At the beginning or near the

25   beginning of the rebuttal the government stated, that "the

HADQRAH2

1    defense argument will not be enough to convince you."  As the

2    government well knows, defendant has no burden to convince the

3    jury of anything.  The defendant only as to point out the holes

4    in the government's case and its failure to prove guilt beyond

5    a reasonable doubt.  The government shifted the burden.

6              Next, your Honor --

7              THE COURT:  I thought you said you only had three?

8              MR. LARSEN:  This is the final one.

9              THE COURT:  Four?

10             MR. LARSEN:  That was the second one, your Honor.  The

11   Count Five misstated --

12             THE COURT:  Wait.  Wait.  Wait.

13             MR. LARSEN:  First is the misstatement as to the

14   requirements for attempt.

15             THE COURT:  Yes, I got that.

16             MR. LARSEN:  Second is the misstatement of the law

17   with regard to Count Five.

18             THE COURT:  I got that.

19             MR. LARSEN:  Third which I will now describe -- excuse

20   me.  Third is the burden shifting.  I misspoke.  I'm sorry.

21             THE COURT:  I thought so.

22             MR. LARSEN:  Third is the burden shifting.

23             Fourth, your Honor, was the misstatement of facts and

24   inflaming of the jury.  In this area the government referred to

25   grenades, bank robbery, kidnapping, Ms. Merritt's lifeless son.

HADQRAH2

1    These are all gross misstatements of fact.  Ms. Merritt's son

2    was not lifeless.  There was no bank robbery in this case, no

3    kidnapping, no grenades in this case.

4         He then referenced the testimony of the victims of the

5    23rd Street blast and said that "there was no doubt from their

6    testimony that Mr. Rahimi must be guilty of all the charges."

7    Obviously, the 23rd Street victims speaking of the injuries

8    that they sustained do not go to the elements of the 27th

9    Street count, certainly not by beyond a reasonable doubt.

10   These misstatements of fact were designed solely to inflame the

11   jury, especially since they came at the end of rebuttal.

12        We would ask for two things, your Honor.  We would ask

13   for a mistrial, and failing that, we would ask for your Honor

14   to reference these statements and explain to the jury that they

15   were improper statements of law and fact and that the jury is

16   to follow your Honor's instructions as given.

17        THE COURT:  Do you want to put that in writing or do

18   you want to rest on what you've just said?

19        MR. LARSEN:  We can rest on that, your Honor.

20        THE COURT:  Do you want to respond or do you want to

21   respond in writing?

22        MR. BOVE:  We'd be happy to respond now, Judge.

23        In the context of a rebuttal summation, the government

24   is not required to cite each and every element.  Mr. DeFilippis

25   elected during his rebuttal summation --

HADQRAH2

1    THE COURT:  You're talking about the law of attempt

2    now?

3    MR. BOVE:  Yes, I'm talking about the law of attempt

4    and the law relating to Count Five.

5    THE COURT:  Let's do one at a time.  He did, so let's

6    just do one at a time.

7    MR. BOVE:  With respect to the law --

8    THE COURT:  Mr. Larsen said that Mr. DeFilippis

9    misstated the law of attempt.

10    MR. BOVE:  That's incorrect.  He simply elected to

11    focus on one component of attempt, which is the substantial

12    step requirement.

13    Moreover, and in any event, the Court's instructions

14    cured any problem with the argument that was made, both in that

15    they correctly described the law of intent and instructed the

16    jury multiple times that the arguments of lawyers to the extent

17    they depart from what your Honor is instructing them are to be

18    disregarded.

19    THE COURT:  Also in the instruction it says if any

20    lawyer stated the law different from what I've stated, it's my

21    statement that governs.

22    MR. BOVE:  You said that immediately after the

23    rebuttal summation.

24    THE COURT:  And Count Five?  A misstatement of Count

25    Five.

HADQRAH2

1          MR. BOVE:  Same two responses, your Honor.  First, the

2     rebuttal elected to focus on the maliciousness element of Count

3     Five.  That's not improper.  We're allowed to pick what we want

4     to focus on in rebuttal.  In any event, your Honor instructed

5     the jury in the manner you just described.

6          THE COURT:  And then burden shifting.

7          MR. BOVE:  The argument --

8          THE COURT:  I'm not exactly sure what burden got

9     shifted, but -- I mean, what burden is alleged to have been

10    shifted, Mr. Larsen?

11         MR. LARSEN:  The burden of proof beyond a reasonable

12    doubt.

13         THE COURT:  You think that Mr. DeFilippis --

14         MR. LARSEN:  Excuse me.  The burden on the government

15    to prove guilt.  Mr. DeFilippis said, "The defense argument

16    won't be enough to convince you," implying the defense has a

17    burden of convincing the jury that Mr. Rahimi is innocent.

18    That is not the law.

19         MR. BOVE:  That is not at all what was implied in that

20    argument.  The point of that argument was, as I said twice

21    yesterday to the jury, that they should be scrutinizing what

22    the defense is saying to them and that this argument was not

23    convincing.  In any event, your Honor is and will continue to

24    instruct the jury about the burden of proof and where it rests.

25         THE COURT:  I think there's one more.

HADQRAH2

1          MR. BOVE:  And, Judge, if I could just add, that term

2     "convince" was actually right out of the evidence that was on

3     the screen at the time from *Inspire* magazine about a story to

4     convince the jury.  It was a reference to that.

5          Finally, on the alleged misstatements of fact, the

6     references to I believe bank robbery and kidnapping were by

7     analogy.  They were clearly by analogy and, therefore,

8     appropriate in the context of rebuttal summation.

9          And the government's summary of Ms. Merritt's

10    testimony, your Honor heard it yesterday, that's a fair

11    inference from what she described about the state of her son

12    after the bomb went off and blew out the back window of the

13    car.

14         THE COURT:  OK.  I'll think about it.  Why don't you

15    come back at 1:30 and I'll give you a ruling then.

16         MR. BOVE:  Thank you, Judge.

17         We also have made the government's exhibits that are

18    in evidence available to the extent the defense wants to

19    inspect them.  We've got a laptop available.  They are here in

20    the courtroom.

21         THE COURT:  Those are all the exhibits?

22         MR. BOVE:  Yes, Judge, sitting on that cart with the

23    binders.  There is a laptop that we've obtained that has no

24    files on it other than the software necessary for the jurors to

25    review videos that are in evidence.  The defense is welcome to

HADQRAH2

1    inspect that as well.  We spoke with Ms. Murray during one of

2    the breaks about providing an indictment with the forfeiture

3    allegation redacted.  We'll bring that up when we come back.

4           And if there is anything else the Court needs for

5    purposes of deliberations, please let us know, and we'll get

6    that together.

7           THE COURT:  So I am, as you know, a little more, but

8    not that much more, than halfway through.  So when they come

9    back, I will complete the instructions and then depending where

10   we are time-wise, they will begin their deliberations.

11          Nice to see you.  See you later.

12          (Luncheon recess)

13        (Continued on next page)

14

15

16

17

18

19

20

21

22

23

24

25

HAD9RAH3

1                    (Jury not present)

2              THE COURT:  So let's just spend a couple of minutes on

3    the defense application made after the lunch break today.  So

4    this was an application for mistrial, and I'm trying to think

5    how to phrase this.  The best way I can think of is that --

6    maybe I'm old school, no doubt, but in my experience an

7    application for a mistrial is serious business, although I must

8    say in this case the defense has been making such an

9    application at almost seems like at the drop of a hat, and I

10   haven't yet to be able to find any reasonable basis for

11   granting such a serious motion in the applications before today

12   and in the application today.  So today's application for a

13   mistrial regards the government's rebuttal.  I think it's no

14   different than the other applications and, that is to say, it

15   has no merit that I could discern.

16             But over the lunch break I was looking at jury

17   instructions and transcripts, etc., and I was unable to

18   locate -- I hope you don't think this is impolite -- but I

19   couldn't find an ounce of merit to support that application.

20   But I will give this the benefit of the doubt.

21             My first instinct this morning or at the break was

22   that we have this in writing.  And so I think that was the

23   correct instinct.  If the defense has something serious to say

24   in support of an application for a mistrial, then you can do it

25   in writing by 7 p.m. tonight and the government can respond by

HAD9RAH3

1    noon tomorrow and then I will give you a ruling.

2              MR. LARSEN:  Judge, if I may clarify.  We understand

3    your ruling denying our mistrial application.  We did ask in

4    the alternative that the jury be instructed the specific --

5              THE COURT:  I don't think you're hearing me.  I don't

6    think you're hearing me.

7              MR. LARSEN:  We understand that the mistrial --

8              THE COURT:  I think you're not listening or whatever.

9    I said that my preliminary reaction was that there is no merit

10   to the application.  But I'm giving you, I guess, the benefit

11   of the doubt.  And as my instinct was this morning, that if you

12   have something serious to say about the rebuttal, whether

13   you're seeking a mistrial or a further instruction, whatever it

14   is you're seeking, you put it in writing and you cite relevant

15   authorities and then I'll take a look at it.  I'm not going to

16   jump every six minutes on your behalf you know when you stand

17   up and yell mistrial.  So that's the way we're going to deal

18   with it.

19             (Continued on next page)

20

21

22

23

24

25

HAD9RAH3

1          (Trial resumed; Jury present; time noted:  2:23 p.m.)

2          THE COURT:  Before we broke, I had given instructions

3    with respect to Counts One through Five and we were up to

4    Number Six.  So that's where I'm going to pick up.  So Count

5    Number Six has to do with interstate transportation and receipt

6    of explosives.

7          The federal law that the defendant is charged with

8    violating in Count Six is a provision in the United States

9    Code, referred to as 18 United States Code Section 844(d) which

10   says in relevant part the following:

11         Whoever transports or receives, or attempts to

12   transport or receive, in interstate or foreign commerce any

13   explosives with the knowledge or intent that it will be used to

14   kill, injure, or intimidate any individual or unlawfully to

15   damage or destroy any building, vehicle, or other real or

16   personal property is guilty of a crime.

17         To satisfy the burden of proof with respect to the

18   crime charged in Count Six, the government has to establish

19   each of the following three elements beyond a reasonable doubt:

20         First, that the material involved was an explosive.  I

21   already defined for you the term explosive in my instructions

22   with respect to Count Three, and I refer you to those

23   instructions here.

24         Second, that the defendant transported or received an

25   explosive in interstate commerce, or attempted to do so.  That

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

HAD9RAH3

1    is, you must determine whether an explosive was, in fact,

2    transported between one state and another because of the

3    defendant's actions, or whether the defendant attempted to move

4    an explosive between one state and another.  I have already

5    defined for you the term interstate commerce and explained the

6    concept of attempt and refer you to those instructions here.  I

7    further note that the government does not need to prove that an

8    explosive was both received and transported in interstate

9    commerce.  It need only prove one or the other and that an

10   explosive was either transported or received.  But you, the

11   jurors, must be unanimous as to which, if either, you select.

12        And the third element is that the defendant acted with

13   the knowledge or intent that the explosive would be used to

14   injure or intimidate any individual, or would be unlawfully

15   used to damage or destroy any building, vehicle, or other real

16   or personal property.  Once again, the government need only

17   prove one of these, but you must be unanimous as to which one,

18   if either, that you choose.

19        Also, I note that here you do not need to find that

20   the explosive actually injured or intimidated a person, or that

21   the explosive was actually used to unlawfully damage a building

22   or property.  Rather, you need only to find that the defendant

23   acted with the knowledge or intent that the use of the

24   explosive would have any of those effects.

25        So, in this -- with regard to this count there's also

HAD9RAH3

1    a special interrogatory, we call it, or one additional question

2    raised and applies to Count Six.  And the instruction about

3    that interrogatory -- interrogatory just means question in this

4    regard -- the instruction is that if, but only if you find that

5    the government has proven beyond a reasonable doubt each of the

6    three elements of Count Six, then you must consider one

7    additional question:  Has the government proven beyond a

8    reasonable doubt that the defendant's conduct directly or

9    proximately resulted in injury to another person?

10           I have already defined the terms directly and

11   proximately and injury for you in connection with my

12   instruction on Count Four and you should refer to those

13   definitions there.

14           As I've already explained to you with respect to Count

15   Four, the verdict form we will use to record your verdict will

16   also include the question of whether, if you vote to convict

17   the defendant on Count Six, you unanimously find that the

18   government has proven beyond a reasonable doubt that the

19   defendant's conduct directly and proximately caused injury to

20   another person.

21           So now we come to Counts Seven and Eight, deal with

22   them together.  And then I have some more what you might call

23   more general instructions after that.  But we'll be finished

24   with the counts in the indictment once we finish this, Counts

25   Seven and Eight.

HAD9RAH3

1           This refers to the use of a destructive device during

2      and in relation to a crime of violence.

3           The federal law that the defendant is charged with

4      violating in Counts Seven and Eight is a provision in the

5      United States Code at 18 United States Code Section 924(c)(1).

6      And that statute states as follows:

7           A person who, during and in relation to any crime of

8      violence for which the person may be prosecuted in a court of

9      the United States, uses or carries a destructive device is

10     guilty of a crime.

11          To satisfy the burden of proof with respect to the

12     crimes charged in Counts Seven and Eight, the government must

13     establish each of the following two elements beyond a

14     reasonable doubt.

15          First, that the defendant committed a crime of

16     violence for which he may be prosecuted in a court of the

17     United States;

18          Second, that the defendant knowingly used or carried a

19     destructive device during and in relation to the commission of,

20     or knowingly possessed a destructive device in furtherance of,

21     the specific crimes of violence.

22          So two elements.  Let's go into those two elements in

23     a little bit more detail.  First, the first element, which is

24     commission of the predicate crime or the crime of violence.

25          Counts Seven and Eight, for both of them, the first

HAD9RAH3

1    element that the government has to prove beyond a reasonable

2    doubt is that the defendant committed a crime of violence for

3    which he might be prosecuted in a court of the United States.

4            The defendant in this case is charged in Count Seven

5    of the indictment with committing three specific crimes of

6    violence for which he might be prosecuted in a court of the

7    United States and those three are:  Use of a weapon of mass

8    destruction as set forth in Count One; bombing a place of

9    public use as set forth in Count Three; and destruction of

10   property by means of explosion in Count Four.

11           So I instruct you that each of these crimes -- Count

12   One, Count Three, and Count Four -- is a crime of violence for

13   which the defendant can be, and is here being, prosecuted in a

14   court of the United States.  It is for you, the jurors, to

15   determine whether the government has proven beyond a reasonable

16   doubt that the defendant committed any of those crimes as

17   charged.

18           You need not find that the defendant committed all

19   three counts, that is, each of Counts One, Three, and Four.

20   Rather, it is sufficient if you find that the defendant

21   committed either Count one, Count Three, or Count Four or some

22   combination of more than one of those counts.

23           If upon all of the evidence you find that the

24   government has proven none of Counts One, Three, or Four beyond

25   a reasonable doubt, then you are required to return a verdict

HAD9RAH3

1    of not guilty on Count Seven.  In other words, Count Seven is

2    to be considered only if you first found the defendant guilty

3    of either Count One, Count Three, Count Four, or some

4    combination of more than one of those counts.

5          In reaching your verdict on Count Seven, you may

6    consider the evidence of Counts One, Three, and Four only for

7    the purpose of determining whether the elements of Count Seven

8    have been satisfied.

9          Got it.

10         So now let me talk about Count Eight.  The defendant

11   is charged in Count Eight of the indictment with committing two

12   specific crimes of violence for which he might be prosecuted in

13   a court of the United States and those two are:  Attempted use

14   of a weapon of mass destruction as set forth in Count Two; and

15   attempted destruction of property by means of explosion as set

16   forth in Count Five.

17         So I instruct you that each of these crimes -- Count

18   Two and Count Five -- is a crime of violence for which the

19   defendant can be, and is here being, prosecuted in a court of

20   the United States.  It is for you to determine, however,

21   whether the government has proven beyond a reasonable doubt

22   that the defendant committed either of those crimes as charged.

23         You need not find that the defendant committed both

24   counts, both crimes, that is, Counts Two and Five.  Rather, it

25   is sufficient if you find that the defendant committed either

HAD9RAH3

1    Count Two or Count Five.

2              If upon all of the evidence you find that the

3    government has proven neither Counts Two or Five beyond a

4    reasonable doubt, then you are required to return a verdict of

5    not guilty on Count Eight.  In other words, Count Eight is to

6    be considered only if you first found or find that the

7    defendant is guilty of either Count Two or Count Five or both

8    Count Two and Count Five.

9              In reaching your verdict on Count Eight, you may

10   consider the evidence of Counts Two and Five only for the

11   purpose of determining whether the elements of Count Eight have

12   been satisfied.

13             So that's the first element.

14             The second element of Counts Seven and Eight relates

15   to use or carrying of a destructive device during, in relation

16   to or in furtherance of a crime of violence.

17             So this second element is that the government must

18   prove beyond a reasonable doubt for purposes of Count Seven and

19   Count Eight that the defendant knowingly used or carried a

20   destructive device during and in relation to one of the

21   specified crimes of violence, or the defendant knowingly

22   possessed a destructive device in furtherance of the commission

23   of one of the specified crimes of violence.

24             A destructive device is defined by the statute to

25   include, among other things, any explosive bombs.  It is also

HAD9RAH3

defined to include any combination of parts either designed or

intended for use in converting any device into any destructive

device and from which a destructive device may be readily

assembled.  A device is considered a destructive device for

purposes of Counts Seven and Eight so long as it is capable of

exploding.  And that is true even if the device could not

explode in the way its maker intended because, for example, it

lacked some component.

In this case there has been evidence presented

regarding the nature and characteristics of the 23rd Street

and 27th Street devices.  It is for you, the jurors, to

determine from all of the evidence whether each of these

devices was a destructive device.

To prove that the defendant used the destructive

device, the government must prove beyond a reasonable doubt an

active employment of the destructive device by the defendant

during and in relation to at least one of the specified crimes

of violence.  This does not mean that the defendant must have

actually detonated the destructive device, although that

obviously would constitute use of that device.

In order to prove that the defendant carried the

destructive device, the government must prove beyond a

reasonable doubt that the defendant had the device within his

control in such a way that it furthered at least one of the

specified crimes of violence, or that the destructive device

HAD9RAH3

1    was an integral part of the commission of at least one of the

2    specified crimes of violence.

3        To prove that the defendant possessed the destructive

4    device in furtherance of a crime of violence, the government

5    must prove that the defendant had possession of the device and

6    that such possession was in furtherance of at least one of the

7    specified crimes of violence.  Possession means that the

8    defendant either had physical possession of the device on his

9    person, or that he had dominion and control over the place

10    where the device was located and had the power and intention to

11    exercise control over the device.  To possess a destructive

12    device in furtherance of the crime means that the device helped

13    forward, advance or promote the commission of the crime.  The

14    mere possession of the destructive device at the scene of the

15    crime is not sufficient under this definition.  The device must

16    have played some part in furthering the crime in order for this

17    element to be satisfied.

18        To satisfy this element, you must also find that the

19    defendant carried or used the destructive device knowingly.

20    This means that he carried the device purposely and voluntarily

21    and not by accident or mistake.  It also means that he knew

22    that the weapon was a destructive device.  However, the

23    government is not required to prove that the defendant knew

24    that he was breaking the law.

25        So we got through the substantive counts.  So now just

HAD9RAH3

1    a few more -- ten minutes, fifteen minutes more of more generic

2    instructions.

3         One has to do with multiple counts.

4         As I mentioned to you at the beginning, the defendant

5    is charged with eight counts in the indictment.  Each count

6    charges the defendant with a different crime.  You must

7    consider each count of the indictment separately, and you must

8    return a separate verdict on each count.  The case on each

9    count stands or falls upon the proof or lack of proof on that

10   count.  Your verdict on any count should not control your

11   decision on any one other count, except, as I previously

12   instructed you with regards to Counts Seven and Eight.

13        At the end I'm going to go through the verdict sheet

14   and explain how that relates to these instructions.

15        The next topic is called venue.  So in addition to all

16   of the elements that I have described, with respect to each

17   count charged in the indictment, you, the jurors, must consider

18   the issue of venue, namely, whether any act in furtherance of

19   the unlawful activity occurred within the Southern District of

20   New York.  And the Southern District of New York includes

21   Manhattan.

22        If the crime charged was committed in more than one

23   district, venue is proper in any district in which the crime

24   was begun, continued, or completed.  Thus, venue will lie in

25   the Southern District of New York if you find that any part of

HAD9RAH3

1    the crime took place here.

2            The government's burden of proof with respect to

3    establishing venue under each count of the indictment is by

4    what's called a preponderance of the evidence.  To prove

5    something by a preponderance of the evidence means to prove

6    that something is more likely true than not true.  It is

7    determined by considering all of the evidence and deciding

8    which evidence is more convincing.  If the evidence appears to

9    be equally balanced, or if you cannot say on which side it

10   weighs heavier, you resolve the question of venue against the

11   government.

12           If you find that venue has not been proven, then you

13   must find the defendant not guilty as to that count.

14           Similar acts.  We discussed this during the course of

15   the trial.  The government has offered evidence tending to show

16   that on different occasions in Seaside Park and Elizabeth,

17   New Jersey the defendant engaged in conduct similar to the

18   conduct charged in the indictment in this case.

19           In that connection, I remind you that the defendant is

20   not on trial for committing those acts not alleged in the

21   indictment.  Accordingly, you may not consider this evidence of

22   the similar act as a substitute for proof that the defendant

23   committed the crimes charged.  Nor may you consider this

24   evidence as proof that the defendant has a criminal personality

25   or bad character.  The evidence of other similar acts was

admitted for a much more limited purpose and you may consider
it only for that limited purpose.

If you determine that the defendant committed the acts
charged in the indictment and the similar acts as well, then
you may, but you need not, draw an inference that in doing the
acts charged in the indictment, the defendant acted knowingly
and intentionally and not because of some mistake, accident, or
other innocent reason.

Evidence of a similar act may not be considered by you
for any other purpose.  Specifically, you may not use this
evidence to conclude that because the defendant committed the
other acts he must also have committed the acts charged in the
indictment.

Publicity.  Your verdict must be based solely on the
evidence presented in this courtroom in accordance with my
instructions.  You must disregard completely any report that
you may have read in the press, seen on TV or on the internet,
or heard on the radio, assuming there were such reports.
Indeed, it would be unfair to consider such reports, since they
are not evidence and the parties have no opportunity to
contradict their accuracy or otherwise address them.

In short, it would be a violation of your oath as
jurors to allow yourselves to be influenced in any manner by
such publicity.

The next instruction relates to what are called

HAD9RAH3

1    particular investigative techniques not required.

2            You have heard reference in the arguments of defense

3    counsel in this case to the effect that certain investigative

4    techniques were not used by the government.  There is no legal

5    requirement that the government prove its case through any

6    particular means.

7            Your concern is to determine whether, on the evidence

8    or lack of evidence, the guilt of the defendant has been proven

9    beyond a reasonable doubt for each count.

10           You have heard evidence during the trial that

11   witnesses have discussed the facts of the case and their

12   testimony with the lawyers before the witnesses appeared in

13   court.

14           Although you may consider that fact when you are

15   evaluating a witness's credibility, you should keep in mind

16   that there is nothing either unusual or improper about a

17   witness meeting with lawyers before testifying so that the

18   witness can be aware of the subjects he or she will be

19   questioned about, focus on those subjects, and have the

20   opportunity to review relevant exhibits before being questioned

21   about them.  Such consultation helps conserve your type and the

22   Court's time.  In fact, it would be unusual for a lawyer to

23   call a witness without having such a consultation beforehand.

24           Again, the weight you give to the fact or the nature

25   of the witness's preparation for his or her testimony and what

HAD9RAH3

1    inferences you draw from such preparation are matters

2    completely within your, the jurors', discretion.

3         In this case you also heard evidence in the form of

4    stipulations of fact.  A stipulation of fact is an agreement as

5    we earlier discussed between the parties that a certain fact is

6    true and you should regard such agreed facts as true.

7         The defendant in this case chose not to testify.

8    Under our Constitution, a defendant has no obligation to

9    testify or to present any evidence because it is the

10    government's burden to prove a defendant guilty beyond a

11    reasonable doubt.  A defendant is never required to prove that

12    he or she is innocent.

13         Therefore, you must not attach any significance to the

14    fact that the defendant did not testify.  No adverse inference

15    against the defendant may be drawn by you because he or she did

16    not take the witness stand, and you may not consider it in any

17    way in your deliberations in the jury room.

18         In determining whether the government has proven the

19    charges beyond a reasonable doubt, you should not consider the

20    question of possible punishment in the event you were to find

21    the defendant guilty on one or more counts.  Under our system

22    sentencing, or punishment, is exclusively the function of the

23    Court.  It is not your concern and you should not give any

24    consideration to that issue in determining what your verdict

25    will be.

HAD9RAH3

1          Charts, summaries, and drawings.

2          Some charts, summaries, and drawings were shown to you

3     to make the other evidence more meaningful and to aid you in

4     considering the evidence.  These charts, summaries, and

5     drawings are no better than the testimony or the documents upon

6     which they are based and are not themselves independent

7     evidence.  Therefore, you are to give no greater consideration

8     to these charts, summaries or drawings than you would give to

9     the evidence upon which they are based.

10          It is for you to decide whether the charts, summaries,

11    or drawings correctly present the information in the testimony

12    or the documents on which they were based.  You are entitled to

13    consider the charts, summaries and drawings if you find that

14    they are of assistance to you in analyzing the evidence and

15    understanding the evidence.

16          You have heard testimony about evidence that was

17    seized in various searches.  Evidence obtained from these

18    searches was properly admitted in this case and may be properly

19    considered by you.  Whether you approve or disapprove of how it

20    was obtained should not enter into your deliberations because I

21    now instruct you that the government's use of this evidence is

22    entirely lawful.

23          Under your oath as jurors you are not to be swayed by

24    sympathy.  You are to be guided solely by the evidence in this

25    case, and the crucial question that you must ask yourselves as

HAD9RAH3

1    you sift through this evidence is:  Has the government proven

2    its case beyond a reasonable doubt?  You are to determine this

3    solely on the basis of the evidence and subject to the law as I

4    have explained it to you.

5         You have heard the testimony of various members of law

6    enforcement.  The fact that a witness may be employed by the

7    government as a law enforcement official or employee does not

8    mean that his or her testimony is necessarily deserving of more

9    or less consideration or greater or lesser weight than that of

10    an ordinary witness.

11         At the same time, it is quite legitimate for defense

12    counsel to try to attack the credibility of a law enforcement

13    witness on the grounds that his or her testimony may be colored

14    by a personal or professional interest in the outcome of the

15    case.

16         It is your decision, the juror's decision, after

17    reviewing all of the evidence whether to accept the testimony

18    of the law enforcement or government employee witness, as it is

19    with every other type of witness, and to give that testimony

20    the weight you find it deserves.

21         Now, ladies and gentlemen, you are about to go into

22    the jury room and begin your deliberations.  We'll talk about

23    timing in a minute.  All of the evidence and exhibits other

24    than the dumpster will be given to you at the start of

25    deliberations.  If you want any of the testimony read back or

HAD9RAH3

1     the video clips played, or if you wish to view the dumpster,

2     you may also request that.  I'll do my best to arrange for you

3     to see all of that evidence that you request.  Please remember

4     that if you do ask for testimony, the reporter must search

5     through his or her notes and the lawyers must agree on what

6     portions of testimony may be called for, and if they disagree I

7     must resolve those disagreements.  That can be a time consuming

8     process.  So please try to be as specific as you possibly can

9     in requesting portions of the testimony, if you, in fact, you

10    do.

11         Your requests for testimony -- in fact any

12    communications with the Court -- should be made to me in

13    writing, signed by your foreperson -- I'll come to that in a

14    minute -- and given to one of the marshals who will be outside

15    the jury room.  In any event, do not tell me or anyone else how

16    the jury stands on any issue until after a verdict is reached.

17         Some of you have taken notes during parts of the

18    trial.  You were free to do that.  But please recall my earlier

19    instruction regarding note-taking.  Notes can be helpful to

20    focus a note-taker's attention and may aid the recollection of

21    the note-taker but they are not themselves evidence in the

22    case.  Notes should be used solely to refresh the note-taker's

23    recollection of the testimony, and are not a substitute for the

24    transcript of the testimony, which has been taken down verbatim

25    by the court reporter.  And please remember that if notes were

HAD9RAH3

1    taken of the lawyers' arguments, the lawyers' arguments, as

2    I've said several times, are not evidence.

3           The government, to prevail, must prove the essential

4    elements of any crime charged beyond a reasonable doubt, as I

5    hopefully explained to you in these instructions.  If it

6    succeeds, your verdict should be guilty; if it fails, your

7    verdict should be not guilty.

8           A verdict must be unanimous.  Your verdict must

9    represent the considered judgment of each juror; whether your

10   verdict is guilty or not guilty, it must be unanimous.

11          Your function is to weigh the evidence in the case and

12   determine whether or not the defendant is guilty, solely upon

13   the basis of such evidence.

14          Each juror is entitled to his or her opinion; each

15   should, however, exchange views with his or her fellow jurors.

16   That is the very purpose of jury deliberation -- to discuss and

17   consider the evidence; to listen to the arguments of fellow

18   jurors; to present your individual views; to consult with one

19   another; and to reach an agreement based solely and entirely

20   upon the evidence if you can do so without surrendering your

21   own individual judgment.

22          Each of you must decide the case for yourself, after

23   consideration with your fellow jurors of the evidence in the

24   case.

25          But you should not hesitate to change an opinion that,

HAD9RAH3

1      after discussion with your fellow jurors, appears incorrect.

2              If, after carefully considering the evidence and the

3      arguments of your fellow jurors, you hold a conscientious view

4      that differs from the others, you are not required to change

5      your position simply because you are outnumbered.

6              Your final vote must reflect your conscientious belief

7      as to how the issues should be decided.

8              So when you get into the jury room the first thing I'd

9      like you to do before you begin your deliberations is to select

10     someone from among you to be the foreperson.  Your foreperson

11     will preside over the deliberations and speak for you here in

12     open court.  The foreperson has no greater voice or authority

13     than any other jurors.  The foreperson will send out any notes

14     and, when the jury has reached a verdict, he or she will notify

15     the marshal that the jury has reached a verdict.

16             So the foreperson can literally be any of the jurors.

17     And I would like you to do that function at the outset, select

18     a foreperson; and then if the person selected could send me a

19     note early on just saying I have been selected as the

20     foreperson.

21             I'm also going to give you, as a said before, a

22     verdict sheet to be filled out by the jury.  The purpose of the

23     questions on the form is to help us, that is to say the Court

24     and the attorneys, to understand what your findings are.  I

25     will hand this form to Christine who will give it to you so

HAD9RAH3

1   that you may record the decision of the jury with respect to

2   each question.

3        No inference is to be drawn from the way the questions

4   are worded as to what the answer should be.  The questions are

5   not to be taken as any indication that I have any opinion as to

6   how they should be answered.  I have no such opinion, and even

7   if I did, as I've said before, it would not be binding on you.

8        Before the jury attempts to answer any question on the

9   verdict sheet you should read all the questions and make sure

10  that everybody understands each question.  Before you answer

11  the questions, you should deliberate in the jury room and

12  discuss the evidence that relates to the questions that you

13  must answer.  When you have considered the questions

14  thoroughly, and the evidence that relates to those questions,

15  record the answers to the questions on the form that I am

16  giving you.  And remember, all answers must be unanimous.

17       So it's no secret.  There are eight questions, one

18  question for each count.  And then you remember that two counts

19  have associated with it the possibility of an additional

20  question.  So there's a question 4(a) so to speak and a

21  question 6(a) if they are applicable in accordance with my

22  earlier instructions.

23       I am nearly finished with these charges and my

24  instructions to you and I thank you for your patience and

25  attentiveness not only today but throughout the trial.

HAD9RAH3

1          May I say this because I think -- not because I think

2     it's necessary but because it's the tradition in this court.  I

3     remind the jurors to be polite and respectful to each other, as

4     I'm sure you will be, in the course of your deliberations so

5     that each juror may have his or her position made clear to all

6     the others.  I also remind you once again that your oath is to

7     decide without fear or favor and to decide the issues based

8     solely on the evidence and my instructions on the law.

9          So if you could just sit still for one second I'll see

10    the lawyers at the sidebar just for a second.

11         I should mention it's just about three o'clock.  The

12    normal day is 4:45 we end.  So when you -- when the foreperson

13    sends me the note who the foreperson is it would be helpful if

14    you just indicate how long you want to deliberate today.  Okay.

15    I'll be with you in one minute.

16         (Continued on next page)

17

18

19

20

21

22

23

24

25

HAD9RAH3

```
 1                    (At the sidebar)
 2              THE COURT:  So the question is:  Does either side have
 3    any objections to the reading of the instructions as opposed to
 4    the substance of the instructions?
 5              MR. BOVE:  No, Judge.
 6              One practical issue.  The instructions indicated that
 7    the jurors would come out if they want to see video clips.  We
 8    do have --
 9              THE COURT:  No.  We didn't really say what we're going
10    to do.
11              MR. BOVE:  Okay.  A laptop is available.
12              THE COURT:  Let's wait and see.
13              You mean they're available to send in there?
14              MR. BOVE:  The videos are available and there's a
15    laptop available to have in the jury room for deliberations.  I
16    just wanted to make that clear.
17              THE COURT:  Let's wait and see.
18              Any objection?
19              MS. SHROFF:  No.
20              THE COURT:  Okay.
21              MS. SHROFF:  Your Honor, is the evidence going to go
22    in?
23              THE COURT:  Is which?
24              MS. SHROFF:  Is the evidence --
25              THE COURT:  Yes.
```

HAD9RAH3

1              MS. SHROFF:  I don't know who was planning to wheel it

2       in.

3              THE COURT:  You should definitely look through it.

4              MR. BOVE:  We did that at lunch, your Honor.

5              THE COURT:  Do it now.

6              MS. SHROFF:  We should do it now before the jury goes

7       into the --

8              (Continued on next page)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

HAD9RAH3

1           (In open court)

2           THE COURT:  So we'll give you copies of the

3    instructions and of the verdict sheet and we'll escort you to

4    the jury room.

5           Hold on one second.  Do we want to swear in the

6    marshal who is going to supervise the jury room.

7           (Marshal sworn).

8           THE COURT:  Marshal will you take the jurors.  Let's

9    say jurors one through twelve.  The first two rows.

10           The four in the back, if you could hold on for now.

11           (At 3:02 p.m., the jury retired to deliberate)

12           THE COURT:  Please be seated.

13           As it turns out you four jurors are alternates.  We

14    always have alternate jurors at the beginning of the trial.  We

15    never know if, as, and when they are going to be called into

16    service.  In this case it doesn't look like it.

17           So I will say it's okay to go home but I don't

18    technically discharge the alternates until we have a verdict

19    from the jury.  So there is the possibility that you could

20    still be called to help with deliberations.

21           So thank you again very much.  If you would go with

22    Christine she'll escort you out.  Thanks again.

23           (Alternates excused)

24           THE COURT:  Please be seated or not as you like.

25    We're just going to wait and hear from the jury.  You're

HAD9RAH3

1    welcome to stay or go as you like.

2         (Recess pending verdict)

HADQRAH4

1              (Jury note received 3:10 p.m.)

2              THE COURT:  We have a note first note from the jurors.

3     It says Juror No. 10 Eric Obenzinger has been selected as

4     foreperson, and we would like to deliberate until 4:30.

5              So at 4:30 I'll call them out, give them my

6     instructions for over the weekend how they should conduct

7     themselves, and then see everybody 9:15 on Monday.  Thanks a

8     lot.

9              (Recess pending verdict)

10                           (Jury note received 4:30 p.m.)

11             THE COURT:  We just got a note from the jurors that

12    says:  We would like another 30 minutes to deliberate.

13    Foreperson.

14             I'm going to say fine, if that's OK with you.

15             MR. BOVE:  Yes, your Honor.  Thank you.

16             MS. SHROFF:  If they want to, that's fine.

17             (Recess pending verdict)

18             (Jury note received 5:16 p.m.)

19             MR. LARSEN:  I got a note from the jury saying:

20             Judge, we are very near a consensus but would like

21    additional time.  Maybe return Monday for further

22    deliberations.

23             So my inclination is to respond:  Sure.  9:15 on

24    Monday.

25             Is that OK?

HADQRAH4

1          MS. SHROFF:  That's fine, your Honor.

2          MR. BOVE:  Yes, Judge.  Thank you.

3          (Jury present)

4          THE COURT:  Please be seated for a minute.  I got your

5    note, and I think you got my response.  9:15 Monday in the jury

6    room.  That would be fine.  That's October 16.  Let me give you

7    instructions for between now and then.

8          The first one is a little bit of a modified one that I

9    gave consistently during the week, and it is:  Do not talk to

10   each other about the case or about anyone who has anything to

11   do with it unless you are all together in the jury room.  So we

12   say no deliberation unless all the jurors are present.  So

13   don't do any further deliberation until you are all here on

14   Monday.

15         Second, do not talk with anyone else about this case

16   or about anyone who has anything to do with it until the trial

17   is ended and you have been discharged as jurors.  And by "talk"

18   I'm referring to email, text, tweeting, blogging and any type

19   of communication in any type of forum including Facebook, My

20   Space, Twitter, Instagram, Snapchat, etc.

21         Additionally, do not remain in the presence of other

22   persons who may be discussing this case face to face, orally or

23   online.  Anyone else includes members of your family and your

24   friends and embraces social media as well.  You may tell them

25   that you are a juror in a case, but don't tell them anything

HADQRAH4

1    else about the case until after you've been discharged by me.

2            Third, do not let anyone talk to you about the case or

3    about anyone who has anything to do with it.  And if someone

4    should try and talk to you about the case, please report that

5    to me immediately or Christine.  We will give you a number, a

6    contact number over the weekend for chambers in case you had to

7    get ahold of Christine or me.

8            Fourth, do not read any news or internet stories or

9    articles or blogs or listen to any radio or TV or cable TV or

10   internet reports about the case or about anyone who has

11   anything to do with it.

12           Fifth, do not do any type of research or any type of

13   investigation about the case on your own.  For example, don't

14   visit any of the scenes described during trial.

15           The parties, as I've said before, are entitled to have

16   you personally render a verdict in this case on the basis of

17   your independent evaluation of the evidence presented here in

18   the courtroom.  So obviously speaking to others about the case,

19   including your family, before you deliberate completely or

20   exposing yourself to evidence outside the courtroom in any way

21   would compromise your jury service and fairness to the parties.

22           Hold on one second.

23           (Pause)

24           THE COURT:  So Christine will remind you in the jury

25   room to leave your notes and information back there.  We will

HADQRAH4

1    safeguard it and we will have coffee and tea, etc. for you on

2    Monday.  Great.  Have a great weekend.

3              THE JURY:  Thank you.

4              (Jury recessed)

5              THE COURT:  Please be seated.

6              I think that's it.  And you should have a nice weekend

7    yourselves.  See you Monday.

8              (Deliberations continued September 16, 2017 at

9    9:15 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25